UNITED STATES DISTRICT COURT
EASTERN DISTRICT OF PENNSYLVANIA

| | |
|---|---|
| ──────────────────────── x | |
| SEAN ROSE and JAIME ROSE, : | |
| : | Case No. _____ |
| Plaintiffs, : | |
| : | |
| v. : | |
| : | |
| THE TRAVELERS HOME AND MARINE : | |
| INSURANCE COMPANY, : | |
| : | |
| Defendant. : | |
| ──────────────────────── x | |

**<u>NOTICE OF REMOVAL</u>**

Pursuant to 28 U.S.C. §§ 1441, 1446 and 1453(b), Defendant The Travelers Home and

Marine Insurance Company ("Travelers") hereby removes to this Court the action captioned as

*Sean Rose and Jaime Rose v. The Travelers Home and Marine Insurance Company,* Case  No.

190103305 on the docket of the Court of Common Pleas of Philadelphia County, Pennsylvania.

In support of its Notice of Removal, Travelers respectfully alleges that:

1.      On or about February 1, 2019, Plaintiffs Sean Rose and Jaime Rose commenced

the captioned action by filing a complaint in the Court of Common Pleas of Philadelphia County,

Pennsylvania.  A copy of all process, pleadings, orders and other papers served on Travelers in

the state court action is attached as <u>Exhibit A</u> hereto.

2.      The Complaint was served on Travelers by certified mail received by Travelers on

February 5, 2019.  This Notice of Removal is being filed within 30 days of service of process,

and is therefore timely under 28 U.S.C. § 1446(b).

3.      This Court has diversity jurisdiction under 28 U.S.C. § 1332(a) because Plaintiffs

and Travelers are citizens of different states, and the amount in controversy with respect to

Plaintiffs' individual claims exceeds $75,000, exclusive of interest and costs. This Court has supplemental jurisdiction over the claims of the putative class members pursuant to 28 U.S.C. § 1367, even if some of those claims are for less than $75,000. *See Exxon Mobil Corp. v. Allapattah Servs., Inc.*, 545 U.S. 546, 549 (2005).

4.   This Court also has jurisdiction under the Class Action Fairness Act of 2005 ("CAFA"), 28 U.S.C. § 1332(d), because this lawsuit is a "class action," as defined by CAFA, in which there is minimal diversity of citizenship, and the amount in controversy exceeds $5 million, as explained further below. This Court also has jurisdiction under 28 U.S.C. § 1453(b) because this lawsuit is a "class action" as defined by CAFA.

## PARTIES

5.   Plaintiffs Sean Rose and Jaime Rose are individuals domiciled in Blue Bell, Pennsylvania. (Complaint, ¶ 1.)

6.   Defendant Travelers is an insurance company organized under the laws of Connecticut with its principal place of business in Hartford, Connecticut. Travelers is not a citizen of any state other than Connecticut.

## PLAINTIFF'S ALLEGATIONS[1]

7.   Plaintiffs purchased a homeowners' insurance policy from Travelers for their home in Blue Bell, Pennsylvania. (Complaint, ¶ 5; Ex. A thereto.) They allege that, on or about August 7, 2018, water escaped from their home's plumbing system, resulting in damage to the premises. (*Id.*, ¶ 9.) They allege that "[t]he release of water from within the homes [sic] plumbing system, including but not limited to, the supply lines, drain lines, shower, shower pan,

---

[1] Travelers does not admit the underlying facts as alleged by Plaintiffs or as summarized herein. Travelers expressly denies any liability to Plaintiffs or the putative class. Travelers reserves its rights to challenge the legal sufficiency of the allegations in the Complaint.

and associated plumbing, is a covered loss under the policy." (*Id.*, ¶ 10.) Plaintiffs further allege that they made an insurance claim with Travelers for "this covered loss," and Travelers improperly denied the claim as excluded under the policy. (*Id.*, ¶¶ 11-21; Ex. B thereto.)

8.     Plaintiffs allege that "[s]olely as a result of Defendant's failure and refusal to pay benefits to Plaintiff as required under the Policy, Plaintiff has suffered loss and damage in an amount in excess of $50,000.00."[2] (*Id.*, ¶ 22.)

9.     Plaintiffs allege three causes of action individually: Count I alleges a claim for breach of contract, asserting that "Defendant has not paid to Plaintiff all of the policy benefits to which they are entitled under the Policy and has refused to provide funds sufficient to bring Plaintiff's home to pre-loss condition." (Id., ¶ 25.) Plaintiffs demand judgment on this cause of action alone "in an amount in excess of $50,000.00, together with interest and court costs." (*Id.*, ¶ 27.)

10.    Count II alleges a claim for bad faith conduct in violation of 42 Pa. C.S. § 8371 et seq., asserting that in various respects Travelers' interpretation of the policy and handling of the claim constituted bad faith. (Complaint, ¶¶ 29-30.) On this cause of action, Plaintiffs seek to recover "statutory damages including interest from the date the claim was made in an amount equal to the prime rate of interest plus 3%, court costs, attorney's fees, punitive damages and such other compensatory and/or consequential damages as are permitted by law." (*Id.*, ¶ 31.)

11.    Count III alleges a claim for violation of the Pennsylvania Unfair Trade Practices and Consumer Protection Law, 73 Pa. Stat. § 201-1 et seq., based on the same factual allegations. (Complaint, ¶¶ 33-35.) On this cause of action, Plaintiffs seek "compensatory damages, interest, costs of suit, damages for delay, counsel fees and treble and punitive damages as provided by

---

[2] Although there are two Plaintiffs, the Complaint uses the term "Plaintiff," singular, in various allegations.

law." (*Id.*, ¶ 35.)

12.      Plaintiffs also seek to bring this action as a class action under Pa. R. Civ. P. 1701 et seq. (Id., ¶ 36.) The proposed class is defined as follows:

> All property owners located within the Commonwealth of Pennsylvania who have been issued policies of insurance by Travelers that include Rot Coverage, and whose insured properties sustained a covered loss, where Travelers interpreted the portion of the policy advertised as Rot Coverage to not actually provide cover [for] Rot Damage.

(*Id.*, ¶ 37.) The Complaint further alleges that "[u]pon information and belief, the Class contains an excess of 10,000 located throughout the Commonwealth of Pennsylvania." (*Id.*, ¶ 38.)

13.      The Complaint alleges that "Plaintiff and all members of their Class have been refused payment based upon Travelers interpreting the portion of the Policy, advertised as Rot Coverages, as not actually covering rot damage despite the increased premium for this coverage." (*Id.*, ¶ 41(c).) The Complaint alleges that this constitutes a breach of contract under the policies issued to Plaintiffs and members of the proposed class, as well as alleged bad faith conduct and a violation of the Pennsylvania Unfair Trade Practices and Consumer Protection Law. (*Id.*, ¶ 41(d)-(f).)

14.      The Complaint includes a separate section entitled "CLASS CAUSES OF ACTION" that alleges three separate causes of action. The breach of contract claim (numbered as a second "Count I") alleges that "Travelers has breached its policies of insurance with Plaintiff and members of their Class by arbitrarily interpreting the portion of the Policy, advertised as Rot Coverage as not actually coverage [sic] rot damage despite the increased premium charged for this coverage." (Complaint, ¶ 45.) The bad faith claim on behalf of the proposed class (numbered as a second "Count II") pleads a violation of 42 Pa. Stat. Ann. § 8371 et seq., focused on the "rot coverage." (*Id.*, ¶¶ 49-50.) Plaintiffs allege that "Travelers' action in

4

interpreting the portion of the Policy, advertised as Rot Coverage as not actually covering rot damage despite the increased premium paid for this coverage, is frivolous and unfounded." (*Id.*, ¶ 50.) Plaintiffs seek to recover on this claim for "statutory damages including interest from the date the claim was made in an amount equal to the prime rate of interest plus 3%, court costs, attorney's fees, punitive damages and such other compensatory and/or consequential damages as are permitted by law." (*Id.*, ¶ 53.) The alleged class claims also include a claim for violation of the Pennsylvania Unfair Trade Practices and Consumer Protection Law (numbered as a second "Count III"). This claim incorporates the allegations of the other causes of action, and seeks "compensatory damages, interest, costs of suit, damages for delay, counsel fees and treble and punitive damages as provided by law." (*Id.*, ¶ 59.)

## TRADITIONAL DIVERSITY JURISDICTION

15.     Removal is proper under 28 U.S.C. § 1332(a) because Plaintiffs and Travelers are citizens of different states, and the amount in controversy on Plaintiffs' individual claims exceeds $75,000, exclusive of interest and costs. Plaintiffs are citizens of Pennsylvania, where they reside. (Complaint, ¶ 1.) Travelers is a citizen of Connecticut, where it is incorporated and has its principal place of business.

16.     The amount in controversy on Plaintiffs' individual claims exceeds $75,000. Plaintiffs allege that they sustained extensive damage to their home from release of water. (Complaint, ¶¶ 9-10.) The Complaint further alleges that "[s]olely as a result of Defendant's failure and refusal to pay benefits to Plaintiff as required under the Policy, Plaintiff has suffered loss and damage in an amount in excess of $50,000.00." (*Id.*, ¶ 22.)

17.     Plaintiffs also seek, on an individual basis, various extracontractual damages for the alleged statutory violations, including statutory damages, punitive damages and attorney's

fees under 42 Pa. C.S. § 8371, and treble damages, punitive damages and attorney's fees under 73 Pa. Stat. § 201-1 et seq. (Complaint, ¶¶ 31-32, 35.) It is well-established that such claims for extracontractual damages are considered in determining the amount in controversy. *See Frederico v. Home Depot*, 507 F.3d 188, 199 (3d Cir. 2007) (punitive damages and attorneys' fees potentially available under statute are included in determining amount in controversy); 42 Pa. C.S. § 8371 (providing for, inter alia, awards of punitive damages and attorney fees against an insurer "if the court finds that the insurer has acted in bad faith toward the insured"); 73 Pa. Stat. § 201-9.2 (providing for awards of "up to three times the actual damages sustained" and reasonable attorney's fees for statutory violation).

18.     Here, where Plaintiffs are claiming more than $50,000 solely on their breach of contract claim (Complaint, ¶ 22), a relatively modest amount of punitive damages, attorney's fees or treble damages easily satisfies the $75,000 jurisdictional threshold. *See McIntyre v. Hartford Underwriters Ins. Co.*, Civ. A. No. 18-4290, 2018 U.S. Dist. LEXIS 214833, *6-7 (E.D. Pa. Dec. 21, 2018) (explaining that "[w]here treble damages or attorney's fees are recoverable under statute, these types of damages are properly considered in determining whether the jurisdictional amount is satisfied," and that where the claim for compensatory damages was $47,780, "the availability of treble damages and attorney's fees makes clear that Plaintiff's demand exceeds the jurisdictional requirement of $75,000."); *Papurello v. State Farm Fire & Cas. Co.*, 144 F. Supp. 3d 746, 753 (W.D. Pa. 2015) (amount in controversy requirement was satisfied in putative class action where named plaintiffs sought $28,682.41 in compensatory damages plus punitive damages under 42 Pa. Stat. Ann. § 8371).

19.     Given that this Court has diversity jurisdiction under 28 U.S.C. § 1332(a) over the Plaintiffs' individual claims, this Court has supplemental jurisdiction over the claims of the

putative class members pursuant to 28 U.S.C. § 1367, even if some of those claims are for less than $75,000. *See Exxon Mobil Corp. v. Allapattah Servs., Inc.*, 545 U.S. 546, 549 (2005); *Papurello*, 144 F. Supp. 3d at 753-54.

## JURISDICTION UNDER CAFA

20.     Removal is proper under CAFA, 28 U.S.C. § 1332(d)(2), where, as here, a proposed class action involves minimal diversity of citizenship and an aggregate amount in controversy exceeding $5 million.  Removal is also proper under 28 U.S.C. § 1453(b) because this lawsuit is a "class action" as defined by CAFA.

21.     CAFA applies "to any class action before or after the entry of a class certification order by the court with respect to that action." 28 U.S.C. § 1332(d)(8).  This case is a "class action" under CAFA because it was brought under a state statute or rule, namely Pa. R. Civ. P. 1701 et seq., authorizing an action to be brought by one or more representative persons as a class action. *See* 28 U.S.C. § 1332(d)(1)(B); Complaint, ¶ 36.

### Minimal Diversity

22.     This case satisfies the minimal diversity requirement of CAFA because at least one member of the putative class is a citizen of a state different from at least one defendant. *See* 28 U.S.C. § 1332(d)(2)(A).  The named Plaintiffs are citizens of Pennsylvania. (Complaint, ¶ 1.) Travelers is a citizen of Connecticut. *See* Paragraph 6, *supra*.

### Amount in Controversy

23.     This case satisfies CAFA's amount in controversy requirement because the matter in controversy exceeds the sum of $5 million, exclusive of interest and costs.  28 U.S.C. § 1332(d)(2).  CAFA provides that "the claims of the individual class members shall be aggregated to determine whether the matter in controversy exceeds the sum or value of $5,000,000,

exclusive of interest and costs." *Id.*, § 1332(d)(6).  As the Supreme Court has explained, "the statute tells the District Court to determine whether it has jurisdiction by adding up the value of the claim of each person who falls within the definition of [the plaintiff's] proposed class and determine [sic] whether the resulting sum exceeds $5 million. If so, there is jurisdiction and the court may proceed with the case." *Standard Fire Ins. Co. v. Knowles*, 568 U.S. 588, 592 (2013). In determining the amount in controversy under CAFA, unless jurisdictional facts are contested, the question is "whether it is clear to a legal certainty that the plaintiff cannot recover the amount claimed." *Judon v. Travelers Prop. Cas. Co. of Am.*, 773 F.3d 495, 505 (3d Cir. 2014).

24.     Based on Plaintiffs' allegations, the amount in controversy for the proposed class claims exceeds $5 million. Plaintiffs define the proposed class as "All property owners located within the Commonwealth of Pennsylvania who have been issued policies of insurance by Travelers that include Rot Coverage, and whose insured properties sustained a covered loss, where Travelers interpreted the portion of the policy advertised as Rot Coverage to not actually provide cover [for] Rot Damage." (Complaint, ¶ 37.) Plaintiffs further allege that there are more than 10,000 class members. (*Id.*, ¶ 38.) In determining CAFA jurisdiction, such an allegation of the number of class members constitutes "an admission in favor of jurisdiction." *Judon*, 773 F.3d at 505. Plaintiffs further allege that "[t]he injuries suffered by Plaintiff[s] are typical of other members of the Class." (Complaint, ¶ 40(d).) *See Judon*, 773 F.3d at 507 ("In a class action, the class representative's claim(s) must be typical of the claims of the class. It is, therefore, not unreasonable to assume that Judon, as the proposed class representative, has damages that are typical of the class.") (citations omitted). Here, with respect to the "rot coverage" portion of Plaintiffs' individual claim (which also includes other damage such as ceiling damage, *see* Complaint, ¶ 16), the applicable policy limit was $5,000. (Complaint, Ex. A, Declarations.)

Based on Plaintiffs' allegations, their individual claim for the "rot" damage portion of their claim exceeds the $5,000 limit. (*See* Complaint, ¶¶ 9-10.) Given that it is reasonable to assume, for purposes of a jurisdictional analysis, that Plaintiffs' damages exceeding the $5,000 limit are "typical of the class," *Judon*, 777 F.3d at 507, and Plaintiffs' allegation of a class of more than 10,000 members may be treated as "an admission in favor of jurisdiction," *id.* at 505, the amount in controversy as alleged thus exceeds $5 million.

## Exceptions to CAFA Jurisdiction

25.     None of the exceptions to CAFA jurisdiction applies.  No defendant is  a citizen of the state in which the action was filed, i.e., Pennsylvania.  Accordingly, 28 U.S.C. §§ 1332(d)(3) and (d)(4) do not apply.  Section 1332(d)(5)(A) does not apply because no defendant is a State, State official or other governmental entity against which this Court may be foreclosed from ordering relief.  Section 1332(d)(5)(B) does not apply because the number of members of all proposed plaintiff classes in the aggregate exceeds 100, as set forth above.  Section 1332(d)(9) does not apply because Plaintiffs' claims do not involve securities or the internal affairs or governance of a corporation or other form of business enterprise.

26.     Accordingly, this Court has original jurisdiction under CAFA.

## REMOVAL PROCEDURE

27.     A copy of this notice of removal is being served upon all known counsel of record, along with a copy of the Notice of Filing of Notice  of Removal to Federal Court, which is being filed in the Court of Common Pleas of Philadelphia County, Pennsylvania.

28.     Pursuant to 28 U.S.C. § 1446(a), copies of all process, pleadings, orders and other papers served on Defendant in the state court action are attached as Exhibit A hereto.

**WHEREFORE**, Travelers hereby provides notice that this action is duly removed to this

Court.

Samuel J. Arena, Jr. (Pa. Attorney No. 38661)
Daniel T. Fitch (Pa. Attorney No. 53717)
STRADLEY RONON STEVENS & YOUNG, LLP
2005 Market Street, Suite 2600
Philadelphia, PA 19103
(215) 564-8000
(215) 564-8120 (fax)

*Attorneys for Defendant, The Travelers Home
and Marine Insurance Company*

## <u>CERTIFICATE OF SERVICE</u>

I, Daniel T. Fitch, do hereby certify that a true and correct copy of the foregoing Notice of Removal was served on March 7, 2019 via email and first class mail upon the following:

                Anthony DiUlio, Esquire
                WHEELER, DiULIO & BARNABEI P.C.
                One Penn Center - Suite 1270
                1617 JFK Boulevard
                Philadelphia, PA 19103
                Attorney for Plaintiffs, Sean Rose and Jaime Rose

                                        _____
                                        Daniel T. Fitch

# EXHIBIT A

Court of Common Pleas of Philadelphia County
Trial Division

# Civil Cover Sheet

For Prothonotary Use Only (Docket Number)

JANUARY 2019    003305

Filed and Attested by
PROTHONOTARY
02000267

| PLAINTIFF'S NAME | DEFENDANT'S NAME |
|---|---|
| SEAN ROSE | THE TRAVELERS HOME AND MARINE INSURANCE COMPANY |

| PLAINTIFF'S ADDRESS | DEFENDANT'S ADDRESS |
|---|---|
| 500 CINDY CIRCLE<br>BLUE BELL PA 19422 | ONE TOWER SQUARE<br>HARTFORD CT 06183 |

| PLAINTIFF'S NAME | DEFENDANT'S NAME |
|---|---|
| JAIME ROSE | |

| PLAINTIFF'S ADDRESS | DEFENDANT'S ADDRESS |
|---|---|
| 500 CINDY CIRCLE<br>BLUE BELL PA 19422 | |

| PLAINTIFF'S NAME | DEFENDANT'S NAME |
|---|---|
| | |

| PLAINTIFF'S ADDRESS | DEFENDANT'S ADDRESS |
|---|---|
| | |

| TOTAL NUMBER OF PLAINTIFFS | TOTAL NUMBER OF DEFENDANTS | COMMENCEMENT OF ACTION |
|---|---|---|
| 2 | 1 | ☒ Complaint      ☐ Petition Action      ☐ Notice of Appeal<br>☐ Writ of Summons   ☐ Transfer From Other Jurisdictions |

| AMOUNT IN CONTROVERSY | COURT PROGRAMS | | |
|---|---|---|---|
| ☐ $50,000.00 or less<br>☒ More than $50,000.00 | ☐ Arbitration<br>☐ Jury<br>☐ Non-Jury<br>☒ Other: CLASS ACTION | ☐ Mass Tort<br>☐ Savings Action<br>☐ Petition | ☐ Commerce     ☐ Settlement<br>☐ Minor Court Appeal   ☐ Minors<br>☐ Statutory Appeals   ☐ W/D/Survival |

| CASE TYPE AND CODE |
|---|
| C1 - CLASS ACTION |

| STATUTORY BASIS FOR CAUSE OF ACTION |
|---|
| |

| RELATED PENDING CASES (LIST BY CASE CAPTION AND DOCKET NUMBER) | | IS CASE SUBJECT TO<br>COORDINATION ORDER? |
|---|---|---|
| | **FILED<br>PRO PROTHY**<br><br>FEB 01 2019<br><br>M. BRYANT | YES      NO |

TO THE PROTHONOTARY:

Kindly enter my appearance on behalf of Plaintiff/Petitioner/Appellant: SEAN ROSE , JAIME ROSE

Papers may be served at the address set forth below.

| NAME OF PLAINTIFF'S/PETITIONER'S/APPELLANT'S ATTORNEY | ADDRESS |
|---|---|
| ANTHONY J. DIULIO | 1617 JFK BLVD<br>SUITE 1270<br>PHILADELPHIA PA 19103 |

| PHONE NUMBER | FAX NUMBER |
|---|---|
| (215)568-2900 | (215)568-2901 |

| SUPREME COURT IDENTIFICATION NO. | E-MAIL ADDRESS |
|---|---|
| 312763 | adiulio@jwheelerlaw.com |

| SIGNATURE OF FILING ATTORNEY OR PARTY | DATE SUBMITTED |
|---|---|
| ANTHONY DIULIO | Friday, February 01, 2019, 09:47 am |

FINAL COPY (Approved by the Prothonotary Clerk)

THIS IS NOT AN ARBITRATION ~~CASE~~. Attested by the
ASSESSMENT OF DAMAGES HEARING IS Records
JURY TRIAL DEMANDED. 01 ~~FEB 2019~~ :47 am

Attorney for Plaintiff(s)

**WHEELER, DIULIO & BARNABEI, P.C.**
BY:  Anthony DiUlio, Esquire
Attorney I.D. No.: 312763
One Penn Center - Suite 1270
1617 JFK Boulevard
Philadelphia, PA 19103
Phone: (215) 568-2900
Email: adiulio@wdblegal.com

| | |
|---|---|
| SEAN ROSE and JAIME ROSE<br>500 Cindy Circle<br>Blue Bell, PA 19422<br><br>vs.<br><br>THE TRAVELERS HOME AND MARINE<br>INSURANCE COMPANY<br>One Tower Square<br>Hartford, CT 06183 | COURT OF COMMON PLEAS<br>PHILADELPHIA COUNTY<br><br><br>DOCKET NO.<br><br>**CLASS ACTION**<br>**JURY TRIAL DEMANDED** |

## CIVIL ACTION COMPLAINT (1C - Contract)

### NOTICE

You have been sued in court. If you wish to defend against the claims set forth in the following pages, you must take action within twenty (20) days after this complaint and notice are served, by entering a written appearance personally or by attorney and filing in writing with the court your defenses or objections to the claims set forth against you. You are warned that if you fail to do so the case may proceed without you and a judgment may be entered against you by the court without further notice for any money claimed in the complaint or for any other claim or relief requested by the plaintiff. You may lose money or property or other rights important to you.

YOU SHOULD TAKE THIS PAPER TO YOUR LAWYER AT ONCE. IF YOU DO NOT HAVE A LAWYER, GO TO OR TELEPHONE THE OFFICE SET FORTH BELOW TO FIND OUT WHERE YOU CAN GET LEGAL HELP.

PHILADELPHIA BAR ASSOCIATION
Lawyer Referral Service
1101 Market St., 11th Floor
Philadelphia, PA 19107-2911
Telephone: 215-238-6333
Fax: 215-238-1159

### AVISO

Le han demandado a usted en la corte. Si usted quiere defenderse de estas demandas expuestas en las páginas siguientes, usted tiene veinte (20) días de plazo al partir de la fecha de la demanda y la notificación. Hace falta asentar una comparencia escrita o en persona o con un abogado y entregar a la corte en forma escrita sus defensas o sus objeciones a las demandas en contra de su persona. Sea avisado que si usted no se defiende, la corte tomará medidas y puede continuar la demanda en contra suya sin previo aviso o notificación. Además, la corte puede decidir a favor del demandante y requiere que usted cumpla con todas las provisiones de esta demanda. Usted puede perder dinero o sus propiedades u otros derechos importantes para usted.

LLEVE ESTA DEMANDA A UN ABOGADO IMMEDIATAMENTE. SI NO TIENE ABOGADO O SI NO TIENE EL DINERO SUFICIENTE DE PAGAR TAL SERVICIO. VAYA EN PERSONA O LLAME POR TELEFONO A LA OFICINA CUYA DIRECCION SE ENCUENTRA ESCRITA ABAJO PARA AVERIGUAR DONDE SE PUEDE CONSEGUIR ASISTENCIA LEGAL.
ASOCIACION DE LICENCIADOS DE FILADELFIA
Servicio De Referencia E Información Legal
1101 Market Street, 11th Floor
Filadelfia, Pennsylvania 19107
(215) 238-6333

Case ID: 190103305

THIS IS NOT AN ARBITRATION CASE.
ASSESSMENT OF DAMAGES REQUIRED.
JURY TRIAL DEMANDED.

**WHEELER, DIULIO & BARNABEI, P.C.**
BY: Anthony DiUlio, Esquire                                    Attorney for Plaintiff(s)
Attorney I.D. No.: 312763
One Penn Center - Suite 1270
1617 JFK Boulevard
Philadelphia, PA 19103
Phone: (215) 568-2900
Email: adiulio@wdblegal.com

SEAN ROSE and JAIME ROSE                    COURT OF COMMON PLEAS
500 Cindy Circle                            PHILADELPHIA COUNTY
Blue Bell, PA 19422
                                            DOCKET NO.
        vs.
                                            **CLASS ACTION**
THE TRAVELERS HOME AND MARINE              **JURY TRIAL DEMANDED**
INSURANCE COMPANY
One Tower Square
Hartford, CT 06183

## CIVIL ACTION COMPLAINT (1C - Contract)

### I.    THE PARTIES

1.    Plaintiffs, Sean Rose and Jaime Rose (collectively referred to as "Plaintiff"), is an adult individual residing at the address set forth above.

2.    Defendant, The Travelers Home and Marine Insurance Company (hereinafter "Travelers"), is a corporation duly organized and existing which is authorized to conduct business as an insurance company within the Commonwealth of Pennsylvania and maintains a place of business for that purpose at the address set forth above and issues policies of insurance within the City and County of Philadelphia.

3.    At all times material hereto, Travelers was acting by and through its duly authorized agents, servants, workmen or employees acting within the course and scope of their employment and on the business of said employer.

Case ID: 190103305

## II.   JURISDICTION

4.     This Court has jurisdiction over the subject matter and parties to this action pursuant to the Pennsylvania Rules of Civil Procedure, Rule 1701 et seq.

## III.   INDIVIDUAL PLAINTIFF'S CAUSE OF ACTION

5.     Defendant, in its regular course of business issued to Plaintiff a policy of insurance ("the Policy") covering Plaintiff's property located at the address set forth above. ("the Property").   A true and correct copy of the declarations page of said policy is attached hereto and incorporated herein as Exhibit "A".

6.     The policy of insurance issued by Travelers, to Plaintiff, contains "Limited 'Fungi', Other Microbes Or Rot Remediation" coverage.

7.     This coverage provides:

16. Limited "Fungi", Other Microbes Or Rot Remediation.
       a. If a loss caused by a Peril Insured Against results in "fungi", other microbes or rot, we will pay for:
              (1) Remediation of the "fungi", other microbes or rot. This includes payment for the reasonable and necessary cost to:
                     (a) remove the "fungi", other microbes or rot from covered property or to repair, restore or replace that property; and
                     (b) Tear out and replace any part of the building as needed to gain access to the "fungi", other microbes or rot;
       b. We will pay under this additional coverage only if:
              (1) The covered loss occurs during the policy period;
              (2) All reasonable means were used to save and preserve the property at the time of and after the covered loss; and
              (3) We receive prompt notice of the covered cause of loss that is alleged to have resulted in "fungi", other microbes or rot.
       c. The most we will pay under this additional coverage is the limit of liability shown in the Declarations for Limited "Fungi", Other Microbes Or Rot Remediation. This is the most we will pay for the total of all loss or costs regardless of the:
              (1) Number of location or items of property insured under this policy; or

(2) Number of losses or claims made.
d. This coverage does not increase the limit of liability that applies to the damaged property.

8.    Plaintiff paid additional premiums for this coverage.

9.    On or about 8/7/2018, while the Policy was in full force and effect, Plaintiff suffered direct physical loss and damage to the insured Property believed to be the result of a peril insured against under the Policy, specifically, escape of water from within the homes plumbing system, resulting in damage to the insured premises.

10.    The release of water from within the homes plumbing system, including but not limited to, the supply lines, drain lines, shower, shower pan, and associated plumbing, is a covered loss under the policy.

11.    Notice of this covered loss was given to Defendant in a prompt and timely manner and Plaintiff, at all relevant times, fully complied with all of the terms and conditions required by the Policy.

12.    Defendant initially denied the loss on October 17, 2018. A true and correct copy of this denial letter is attached hereto as Exhibit "B".

13.    In this denial letter, Defendant cited the language of the policy quoted above, indicating it knew of the "rot" coverage under the policy.

14.    Despite knowledge of the "rot" coverage, Defendant still denied this loss.

15.    Following the denial, Plaintiff contacted counsel to assist in the loss.

16.    Counsel, Anthony DiUlio, contacted Defendant to have the claim reopened, and provided notice that the damage to ceiling was in no way long term damage and that the claim rot was covered under the additional rot coverage of the policy.

17.     As part of the reopen, Defendant's representative and authorized agent, Janene Hartlieb, was sent to Plaintiff's home to conduct a recorded statement of Plaintiff, for which counsel for Plaintiff was present.

18.     Following that recorded statement, Ms. Hartlieb, as a representative and agent for Defendant, was asked questions regarding the rot coverage.

19.     Ms. Harlieb indicated that she was not aware of why there was rot coverage as there was no situation for which Travelers would pay for rot.

20.     Defendant, despite demand for benefits under the Policy, has refused, without legal justification or cause, and continues to refuse, to pay to Plaintiff monies owed for the damages suffered as a result of the Loss.

21.     As a direct and factual result of Defendant's breach of contract, Plaintiff has been denied the benefits of its bargain with Travelers.

22.     Solely as a result of Defendant's failure and refusal to pay benefits to Plaintiff as required under the Policy, Plaintiff has suffered loss and damage in an amount in excess of $50,000.00.

## COUNT I
### In Assumpsit - Breach of Contract

23.     Plaintiff incorporates by reference the facts and allegations contained in the foregoing paragraphs as though fully set forth hereinafter at length.

24.     Defendant is obligated by the terms of the contract to indemnify Plaintiff's loss.

25.     Despite submission of reasonable proof and demand for full and complete payment with respect to Plaintiff's Loss, Defendant has not paid to Plaintiff all of the policy benefits to which they are entitled under the Policy and has refused to provide funds sufficient to bring Plaintiff's home to pre-loss condition.

26.     Defendant's denial of coverage was made without a reasonable basis in fact.

27.     Defendant's refusal to indemnify Plaintiff's loss constitutes a breach of the

insurance contract.

WHEREFORE, Plaintiff demands judgment against Defendant in an amount in excess of

$50,000.00, together with interest and court costs.

## COUNT II
### CLAIM AS A RESULT OF TRAVELER'S VIOLATION OF
### 42 Pa.C.S.A. SECTION 8371

28.     Plaintiff incorporates by reference herein the averments set forth in the foregoing

paragraphs of Plaintiff's Complaint, as fully as though same were here set forth at length.

29.     Defendant has engaged in bad faith conduct toward Plaintiff with respect to its

adjustment of Plaintiff's covered loss in violation of 42 Pa.C.S.A. Section 8371 et seq.

30.     In furtherance of its bad faith and wrongful denial and refusal to pay benefits for

Plaintiff's covered loss, defendant acting by and through its duly authorized agent, servant,

workman or employees, has engaged in the following conduct:

    a.      by interpreting the portion of the Policy, advertised as "Additional

Coverages," as never being applied to a loss;

    b.      by selling additional coverage with the knowledge and belief that the

coverage would never be applied to a loss;

    c.      by misleading Plaintiff into believing that they had coverage for rot while

never intending to cover any rot damage.;

    d.      by misrepresenting to Plaintiff that they are being provided "Additional

Coverages," when in fact, coverage does not exist, when Defendant knew, or in the exercise of

reasonable care should have known, that such misrepresentation was wholly without legal or factual basis;

        e.      in unnecessarily and unreasonably compelling Plaintiff to institute this lawsuit to obtain policy benefits for a covered loss which Travelers should have paid promptly and without the necessity of litigation;

        f.      in unreasonably withholding a benefit due and owing under the policy issued by Travelers;

        g.      in acting unreasonably and unfairly in response to Plaintiff's claim.

        31.      For the reasons set forth above, Travelers has acted in bad faith and in violation of 42 Pa.C.S.A. Section 8371 rendering Travelers liable for statutory damages including interest from the date the claim was made in an amount equal to the prime rate of interest plus 3%, court costs, attorney's fees, punitive damages and such other compensatory and/or consequential damages as are permitted by law.

        32.      The practice of Travelers in interpreting the portion of the Policy, advertised as "Additional Coverages," despite the intention to never provide this additional coverage which is otherwise provided in this policy and was provided in previous policies, has been perpetrated by Travelers maliciously and in conscious disregard for the rights of its policyholders solely for the financial advantage of Travelers thereby rendering Travelers liable for punitive damages.

        WHEREFORE, Plaintiff demands judgment against Travelers for compensatory damages including costs, counsel fees, interest, punitive damages and such other relief as the Court may deem equitable and just.

## COUNT III
### CLAIM AS A RESULT OF TRAVELERS'S VIOLATION OF
### THE UNFAIR TRADE PRACTICES CONSUMER PROTECTION ACT

33.     Plaintiff incorporate by reference herein the averments set forth in the foregoing paragraphs of Plaintiff's Complaint as fully as though same were here set forth at length.

34.     Travelers, acting by and through its duly authorized agents, servants, workmen or employees acting within the course and scope of their employment and on the business of said employer, made material misrepresentations of fact concerning the nature and quality of the policy of insurance issued by Travelers for the sole purpose of inducing justifiable reliance by Plaintiff in the premiums for a policy of insurance which Defendant represented would protect Plaintiff's interest in the premises, when Defendant knew that these representations were false, fraudulent and misleading.

35.     Plaintiff justifiably relied upon the material misrepresentations made by Defendant concerning the nature and quality of the policy of insurance issued by Travelers and, as a result of such reliance, suffered those damages and losses set forth above.

WHEREFORE, Plaintiff demands judgment against Travelers for compensatory damages, interest, costs of suit, damages for delay, counsel fees and treble and punitive damages as provided by law.

### IV.     CLASS ACTION ALLEGATIONS

36.     This action is being brought by Plaintiff as a Class Action pursuant to Pennsylvania Rules of Civil Procedure, Rule 1701 et seq, on Plaintiff's own behalf and on behalf of a class of persons to which they belong as defined below.

37.     Members of Plaintiff's Class are defined as follows:

All property owners located within the Commonwealth of Pennsylvania who have been issued policies of insurance by Travelers that include Rot

Coverage, and whose insured properties sustained a covered loss, where
Travelers interpreted the portion of the policy advertised as Rot Coverage
to not actually provide cover Rot Damage.

38.     Upon information and belief, the Class contains an excess of 10,000 located

throughout the Commonwealth of Pennsylvania.

39.     Upon information and belief, the Class contains an excess of 10,000 located

throughout the Commonwealth of Pennsylvania.

40.     The claim of Plaintiff as a representative party is typical of the claims of the

Class, including, but not limited to the following:

        a.      A Class of persons insured by Travelers with property insurance policies

providing rot coverage who have suffered covered property damage or loss to their real property

where Travelers has interpreted the portion of the policy, advertised as Rot Coverage, to not

actually cover rot damage despite the increased premium for this coverage.

        b.      The misrepresentations, practices and policies of Travelers are typical of

the Class;

        c.      Plaintiff and members of the proposed Class have all been harmed by

similar or identical conduct by Travelers;

        d.      The injuries suffered by Plaintiff are typical of other members of the

Class.

41. There are questions of law or fact common to the Class, including, but not limited to

the following:

        a.      Plaintiff and all members of their Class have been issued property

insurance policies by Travelers, which include Rot Coverage;

b.      Plaintiff and all members of their Class have suffered covered property damage loss to insured property;

c.      Plaintiff and all members of their Class have been refused payment based upon Travelers interpreting the portion of the Policy, advertised as Rot Coverages, as not actually covering rot damage despite the increased premium for this coverage;

d.      Travelers has breached its policy of insurance with Plaintiff and members of their Class by interpreting the portion of the Policy, advertised as Rot Coverage as not actually covering rot damage despite the increased premium for this coverage;

e.      Travelers has acted in bad faith by interpreting the portion of the Policy, advertised as Rot Coverage as not actually covering rot damage despite the increased premium for this coverage;

f.      Travelers' limitation of the Rot coverage provision is deceptive thereby violating Pennsylvania's Consumer Protection Law.

42.     The interest of the Class will be fairly and adequately asserted and protected by the representative party and their counsel. First, Plaintiff has no conflict of interest in the maintenance of the Class Action. Second, Plaintiff's attorneys have more than 35 years of combined experience in handling and litigating complex homeowners' insurance coverage disputes and bad faith claims. Third, Plaintiff's attorneys have considerable Class Action experience. Finally, sufficient financial resources are available to assure that the interest of the Class will be protected.

43.     Adjudicating this controversy as a Class Action would be the fairest and most efficient method of resolution. Due to the large number of policyholders who have suffered identical losses, joinder would be impractical. Further, the prosecution of separate claims would

most likely create varying or inconsistent adjudications and incompatible standards of conduct. Lastly, common questions of law and fact predominate over any issues involving only individual Class members.

## V.   CLASS CAUSES OF ACTION

### COUNT I - BREACH OF CONTRACT

44.   Plaintiff incorporates by reference herein the facts and allegations contained in the foregoing paragraphs as fully as though same were here set forth at length.

45.   Travelers has breached its policies of insurance with Plaintiff and members of their Class by arbitrarily interpreting the portion of the Policy, advertised as Rot Coverage as not actually coverage rot damage despite the increased premium charged for this coverage.

46.   By reason of Travelers' breach of contract, Plaintiff and members of their Class have not received proper indemnification under their policies of insurance with Travelers. The amount due to each and every member of Plaintiff's Class will be determined.

WHEREFORE, Plaintiff demands judgment against Defendant in an amount in excess of $50,000.00, together with interest and court costs.

### COUNT II - BAD FAITH

47.   Plaintiff incorporates by reference herein the facts and allegations set forth in the foregoing paragraphs as fully as though same were here set forth at length.

48.   Travelers has engaged in bad faith conduct toward Plaintiff with respect to its adjustment of Plaintiff's covered loss in violation of 42 Pa.C.S.A. Section 8371 et seq.

49.   In furtherance of its bad faith and wrongful denial and refusal to pay benefits for Plaintiff's covered loss, Travelers acting by and through its duly authorized agent, servant, workman or employees, has engaged in the following conduct:

     a.     by interpreting the portion of the Policy, advertised as "Additional Coverages," as never being applied to a loss;

     b.     by selling additional coverage with the knowledge and belief that the coverage would never be applied to a loss;

     c.     by misleading Plaintiff into believing that they had coverage for rot while never intending to cover any rot damage.;

     d.     by misrepresenting to Plaintiff that they are being provided "Additional Coverages," when in fact, coverage does not exist, when Defendant knew, or in the exercise of reasonable care should have known, that such misrepresentation was wholly without legal or factual basis;

     e.     in unnecessarily and unreasonably compelling Plaintiff to institute this lawsuit to obtain policy benefits for a covered loss which Travelers should have paid promptly and without the necessity of litigation;

     f.     in unreasonably withholding a benefit due and owing under the policy issued by Travelers;

     g.     in acting unreasonably and unfairly in response to Plaintiff's claim.

50.     Travelers' action in interpreting the portion of the Policy, advertised as Rot Coverage as not actually covering rot damage despite the increased premium paid for this coverage, is frivolous and unfounded.

51.     Travelers' improper limitation of this benefit was done without any reasonable basis in law or fact and in reckless disregard of Travelers' fiduciary responsibility to treat Plaintiff and members of their Class in a fair and impartial manner.

52.     Finally, Travelers' conduct was motivated by financial self-interest and was accomplished with reckless indifference to the rights of Plaintiff and members of their Class.

53.     For the reasons set forth above, Travelers has acted in bad faith and in violation of Pa.C.S.A. Section 8371 rendering Travelers liable for statutory damages including interest from the date the claim was made in an amount equal to the prime rate of interest plus 3%, court costs, attorney's fees, punitive damages and such other compensatory and/or consequential damages as are permitted by law.

54.     The practice of Travelers in interpreting the portion of the Policy, advertised as Rot Coverage despite the intention to never provide this additional coverage has been perpetrated by Travelers maliciously and in conscious disregard for the rights of its policyholders solely for the financial advantage of Travelers thereby rendering Travelers liable for punitive damages.

55.     Travelers has engaged in bad faith conduct toward Plaintiff and members of their Class and have treated Plaintiff and members of their Class unreasonably with respect to the payment of benefits for their covered losses in violation of 42 Pa.C.S.A. Section 8371.

56.     As a result of Travelers' bad faith conduct, Plaintiff have been forced to commence the present litigation and have incurred and will incur costs, expenses and counsel fees.

WHEREFORE, Plaintiff demands judgment against Travelers for compensatory damages including costs, counsel fees, interest, punitive damages and such other relief as the Court may deem equitable and just.

## COUNT III – CONSUMER PROTECTION ACT

57.     Plaintiff incorporates by reference herein the facts and allegations set forth in the foregoing paragraphs as fully as though same were here set forth at length.

58.     Travelers, acting by and through its duly authorized agents, servants, workmen or employees acting within the course and scope of their employment and on the business of said employer, made material misrepresentations of fact concerning the nature and quality of the policy of insurance issued by Travelers for the sole purpose of inducing justifiable reliance by Plaintiff and members of their class in the premiums for a policy of insurance which Defendant represented would protect Plaintiff's and the members of their class's interest in the premises, when Defendant knew that these representations were false, fraudulent and misleading.

59.     Plaintiff and members of their class justifiably relied upon the material misrepresentations made by Defendant concerning the nature and quality of the policy of insurance issued by Travelers and, as a result of such reliance, suffered those damages and losses set forth above.

WHEREFORE, Plaintiff demands judgment against Travelers for compensatory damages, interest, costs of suit, damages for delay, counsel fees and treble and punitive damages as provided by law.

## VI.     REQUESTED RELIEF

60.     The following relief is requested by Plaintiff and members of Plaintiff's Class:

a.     certification of this case as a Class action;

b.     compensatory damages to Plaintiff in the amount of money due to Travelers interpreting the portion of the Policy, advertised as "Additional Coverages," as actually eliminating/limiting coverage which is otherwise provided in the policy and was provided in previous policies, and such compensatory damages to each member of the Class in an amount to be determined, including interest on said amounts for Plaintiff and members of their Class;

       c.      damages pursuant to Pennsylvania's Bad Faith Statute 42 Pa.C.S.A.

Section 8371;

       d.      an order of the Court declaring the rights of the respective parties;

       e.      litigation costs and counsel fees;

       f.      administrative costs and expenses incurred in the Class certification

process;

       g.      and such additional relief as the Court may deem necessary and proper.

WHEELER, DIULIO & BARNABEI, P.C.


BY: ___/s/ Anthony DiUlio_____
           ANTHONY DIULIO, ESQUIRE
           Attorney for Plaintiff(s)



---

*Complaint and Civil Action*

**VERIFICATION**

... are plaintiff in this action and that the ... document are true and correct to the best of ... information and belief. The undersigned understands that the statements herein are made subject to the penalties of 18 Pa. Cons. Stat. Ann. § 4904 relating to unsworn falsification to authorities.

DATE: 1/31/19          SEAN ROSE

DATE: 1/31/19          JAIME ROSE

# EXHIBIT A

Case ID: 190103305



June 25, 2018

Policy Number   602729932 633 1
Policy Period   07/28/18 - 07/28/19
                12:01 AM STANDARD TIME AT THE RESIDENCE PREMISES

SEAN & JAIME ROSE
500 CINDY CIR
BLUE BELL PA 19422-1152

# Welcome to Travelers!

Welcome!

Thank you for choosing Travelers for your homeowners insurance. We truly appreciate your business, and we're always available to assist you with claims, questions or additional insurance needs.



The enclosed, personalized policy package was created just for you. You will find important documents related to your Travelers policy and coverage:

**Your New Insurance Policy, which includes your Declarations, policy form and endorsements.** Please take a moment to review these important materials, especially your Declarations Page, which shows the coverages and limits you have selected.

**24/7/365 Claim Service - Doing More to Get Your Home Back In Order**
If you need us, we'll be there. Just call our toll-free claim service number  1.800.252.4633 (1.800.CLAIM33) 24 hours a day, 365 days a year. We have highly trained representatives nearby, ready to make the claim process as easy as possible for you.

On behalf of LINDSAY INS GROUP INC, we look forward to serving you.

Sincerely,

*Michael Klein*

Michael Klein
President
Personal Insurance

P.S. We offer other coverages designed to protect your assets, including car insurance, valuable items, additional liability (for lawsuits), boat, yacht and identity theft protection.  Contact your agent for more information.

PL-12746  03-14

Case ID: 190103305

Case ID: 190103305

# Water

## Water

### Everywhere ...

**Am I protected from Flood?  PROBABLY NOT!**

Flooding occurs in EVERY state!  Many people find out too late that they are at risk for
flooding, and even worse that their property insurance doesn't cover flood damage.

- Your Homeowners policy DOES NOT cover flood loss to your home and contents.
- In certain areas, the chance of a flood loss is 25% greater than a loss due to a fire during
  a 30-year mortgage.
- Six out of every ten declared disasters involve flooding!
- Homes in areas where there is new construction or where there have been other events,
  such as forest fires, may be in greater danger than in the past because of changes to the
  land around them.
- 25% of all floods occur outside of a high-risk flood area.
- Federally backed mortgages in certain areas require flood insurance policies for the life of
  the mortgage.

To ensure that your property and belongings are protected, call your independent insurance
agent.

Even if you already have a flood policy, you may want to discuss coverages with your agent to
ensure that your policy is up to date.





PL-8206 Rev. 09-08

Case ID: 190103305

Case ID: 190103305

# PRIVACY NOTICE

### Privacy Statement for Individual U.S. Personal Insurance Consumers

Your privacy is important to us. When we quote or sell an insurance policy to a person, we get information about the people and property that we're insuring. This Privacy Notice describes the types of information about you ("personal information") we collect, where we get it, and how we use, share and protect it. It applies to current and former Travelers personal insurance customers in the United States.

A few key points include:

- We collect personal information from you, your agent, and from third parties
- We will not share your personal information with others for their marketing purposes without your permission
- We maintain safeguards designed to help prevent unauthorized use, access and disclosure of personal information

| What type of information do we collect? | You give us most of what we need in the application process. To make sure what we have is correct, or to obtain additional information, we may need to check back with you. For example, you may be asked to give us more details in writing, via e-mail or over the phone. In addition, we may obtain other information, including but not limited to the following: |
|---|---|
| | - Information from consumer reporting agencies and other insurance support organizations to the extent permitted by law. This may include items such as credit history, credit-based insurance score, driving record, accident and motor vehicle conviction history, and claim history. Information given to us by an insurance support organization, including consumer reporting agencies, may be retained by them and disclosed to others. |
| | - Your past insurance history, including information about your policies and claims, from insurance support organizations or your former insurers. |
| | - Information regarding your property. We may obtain this through third party reports and through a property inspection. We or an independent inspector may visit the property to inspect its condition, or we may use an unmanned aircraft system. We may obtain geospatial information, and take pictures or video. If we need more details about the property, we may need to schedule an interior inspection. |
| | - Information from government agencies or independent reporting companies. |
| | - Other third party data relating to the insured risk, such as possible drivers and vehicles associated with your household and odometer readings associated with any vehicle(s). |
| | - In some instances, we may need to know about your health. For example, if we need to know whether a physical limitation will affect your ability to drive, we may ask for a statement from your doctor. |

PL-11952  08-17

| How do we use your personal information? | We use the personal information we collect to sell, underwrite and rate, service and administer insurance; to handle claims; to create and market products and services; to prevent and detect fraud; to satisfy legal or regulatory requirements; and for other business purposes and as otherwise allowed by law. |
|---|---|
| | Once you're insured with us, we will retain details about your policy(ies). This may include, among other things, bill payment, transaction or claim history and details, as well as other information. |
| | When you give us a telephone number, you consent to being contacted at that number, including if the number is for a cell phone or other wireless device. We may contact you in person, by recorded message, by the use of automated dialing equipment, by text (SMS) message, or by any other means your device is capable of receiving, to the extent permitted by law and for reasonable business purposes, including to service your policy or alert you to other relevant information. |
| **How do we share your personal information?** | We do not give or sell your personal information to nonaffiliated third parties for their own marketing purposes without your prior consent. |
| | We may give the personal information we collect to others to help us conduct, manage or service our business. When we do, we require them to use it only for the reasons we gave it to them. We may give, without your past permission and to the extent permitted by law, personal information about you to certain persons or organizations such as: your agent or insurance representative; our affiliated property and casualty insurance companies; independent claim adjusters or investigators; persons or organizations that conduct research; insurance support organizations (including consumer reporting agencies); third party service providers; another insurer; law enforcement; state insurance departments or other governmental or regulatory agencies; or as otherwise required or permitted by law. Information we share with insurance support organizations, such as your claims history, may be retained by them and disclosed to others. |
| | We may also share your personal information: to comply with legal process; to address suspected fraud or other illegal activities; or to protect our rights, privacy, safety or property, and/or that of you or others. |
| **How do we protect your personal information?** | We maintain physical, electronic and administrative safeguards designed to help protect personal information. For example, we limit access to personal information and require those who have access to use it only for legitimate business purposes. |

| How can I review and correct the personal information you have about me? | If you have questions about what personal information we maintain about you, please make your request in writing and include your full name, mailing address, phone number and policy number. When we receive your written request, we will respond within thirty (30) business days. We will describe the personal information we maintain, whom we know we've shared it with in the last two (2) years, and how you may request a correction, if necessary. If we requested a consumer report, we will tell you the name and address of the consumer reporting agency. |
| --- | --- |
| | You may also see and copy the information we have, except for certain documents about claims and lawsuits. If you believe our information is incorrect, let us know in writing. We will review it, and, if we agree, we will correct it, notify you, and send a correction letter to anyone who received the original information. If we do not agree, you are allowed to file a letter with your comments. |
| | For questions about the right of access or correction to your information, please write to: Travelers, One Tower Square, Hartford, CT 06183, Attn: Privacy Office. |

This notice is given by The Travelers Indemnity Company and its personal insurance property casualty affiliates.

This notice may be amended at any time. The most current version will be posted on Travelers.com.

A statement concerning our use of Insurance Score is available on request for Oregon residents.



PL-11952  08-17

Case ID: 190103305

## NOTICE

Thank you for trusting us with your insurance. We are committed to providing you excellent service at a competitive price. A lot of information is used to determine your price, including information about your credit and claim histories. We are required to tell you that based on the information we received, you did not receive our best rating classification. Your price is competitive and accurate based on your unique characteristics. Please refer to the reverse side of this page for the details from your credit history affecting your price.

The consumer reporting agency(ies) that provided information about you:

```
Insurance Score (Credit History) Information:
TransUnion National Disclosure Center
P.O. Box 1000
Chester, PA 19022
1-800-645-1938
www.transunion.com
```

**Remember:**

- You have the right to a free copy of the consumer report(s) listed above. Simply contact the agency(ies) listed above within 60 days of receipt of this notice.

- You have the right to dispute the accuracy or completeness of any information in a consumer report. Simply contact the agency to discuss or dispute any information in the report.

- The consumer reporting agency(ies) did not make the pricing determination and cannot answer questions regarding your Travelers policy.

- Notify us if your information changes. We will reevaluate your situation, which could save you money.



PL-11661  05-10

Case ID: 190103305

The information from your credit report is used to create an insurance score. Your insurance score was impacted by:

* Total balance to limit ratio on revolving accounts or no revolving info available.

* Number of new accounts opened within the past 3 years.

* Length of active revolving credit history or no revolving account information available.

To learn more about how your credit relates to your insurance policy please contact our Insurance Score Resource Center at 1-800-550-7717. For any other questions, please contact your Travelers agent or representative.

Please note: this information does not necessarily reflect a poor or average credit standing.

Case ID: 190103305

**IMPORTANT NOTICE**

### PENNSYLVANIA POLICYHOLDERS

**How do losses affect your Homeowners Policy premium?**

Many variables are considered when establishing a rate for policy coverage. One variable is losses. In Pennsylvania we have a Loss Surcharge Program. A Loss surcharge will be applied to your policy according to the following rule of application:

If a policyholder has one or more chargeable losses in the last three years, at the current or previous residence, including theft, for which the Travelers or any other company has paid a loss of $500 or more (excluding the deductible), a surcharge is applied to the policy at New Business and/or Renewal. The three year experience period will be calculated from the current new business and/or renewal process date. (Renewals are normally processed 67 days prior to the policy's renewal effective date.)

The following types of losses are not considered chargeable:
Designated Catastrophe losses;
Claims closed without payment;
Valuable Items Plus, Personal Liability Umbrella Supplement, Identity Fraud Coverage; and
Workers Compensation losses.

**Loss Factors for Chargeable Claims:**

| Total Combined Losses | Range of Loss Factors |
|-----------------------|-----------------------|
| 1 | 1.00 to 1.20 |
| 2 | 1.27 to 1.90 |
| 3 | 1.62 to 2.97 |
| 4 | 2.05 to 4.81 |
| 5 | 2.60 to 6.29 |
| 6 | 3.41 to 8.62 |
| 7 | 4.64 to 10.95 |
| 8 | 6.51 to 14.23 |
| 9 | 9.50 to 17.91 |
| 10 | 14.38 to 23.07 |
| 11 | 22.34 to 28.35 |
| 12 | 35.57 |

The above table is designed to provide a factor range based solely on the total number of losses. Arriving at the exact loss factor depends on the combination of causes. For instance, a risk with 1 Wind loss and 1 Water loss would receive a loss factor of 1.31 while a risk with 1 Fire loss and 1 Liability loss would receive a loss factor of 1.55.

**The applicable surcharge is applied to the total policy premium including all endorsements and upgraded coverage, but not including charges for Valuable Items Plus, Personal Liability Umbrella Supplement, Identity Fraud Coverage, Workers Compensation or any Regulatory or Governmental Assessments of any type.**

IL 09 10 06 02

## IMPORTANT NOTICE

### PENNSYLVANIA

**THIS FORM IS FOR INFORMATIONAL PURPOSES ONLY AND IS NOT A PART OF THE POLICY.**

An Insurance Company, its agents, employees, or service contractors acting on its behalf, may provide services to reduce the likelihood of injury, death or loss. These services may include any of the following or related services incident to the application for, issuance, renewal or continuation of, a policy of insurance:

1.  Surveys;

2.  Consultation or advice; or

3.  Inspections.

The "Insurance Consultation Services Exemption Act" of Pennsylvania provides that the Insurance Company, its agents, employees or service contractors acting on its behalf, is not liable for damages from injury, death or loss occurring as a result of any act or omission by any person in the furnishing of or the failure to furnish these services.

The Act does not apply:

1.  If the injury, death or loss occurred during the actual performance of the services and was caused by the negligence of the Insurance Company, its agents, employees or service contractors;

2.  To consultation services required to be performed under a written service contract not related to a policy of insurance; or

3.  If any acts or omissions of the Insurance Company, its agents, employees or service contractors are judicially determined to constitute a crime, actual malice, or gross negligence.

IL 09 10 06 02

Case ID: 190103305

## IMPORTANT NOTICE ABOUT BILLING OPTIONS AND DISCLOSURES

This notice contains important information about our billing options and charges.

You have chosen to have your insurance premium paid through your mortgage company.

If your billing needs change, you may pay your premium by:

| Bill Plan | Monthly | Pay In Full |
|---|---|---|
| Electronic Funds Transfer (EFT) | $ 2.00 | No Charge |
| Recurring Credit Card (RCC) | $ 2.00 | No Charge |
| Bill by Mail / Email | $ 5.00 | No Charge |

Late Charge: $10.00 per occurrence
Payments returned by your bank: $20.00 per occurrence

In the event two payments are returned during a 12 month period you will be required to pay with guaranteed funds for 182 days from the date of the last returned payment. Guaranteed funds are credit card, bank check, money order or home banking payments. Other forms of payment will be returned. You will not be eligible to use our Electronic Funds Transfer (EFT) or Recurring Credit Card (RCC) payment plans.

Visit www.amp.travelers.com if you would like to enroll in our Electronic Funds Transfer (EFT) or Recurring Credit Card (RCC) payment plan.

When you provide a check as payment, you authorize us either to use information from your check to make a one-time electronic fund transfer from your account or to process the payment as a check transaction.

If you have multiple policies with us you may be able to combine those policies into a single billing account. If you have selected one of our monthly billing options, and you combine your policies into a single billing account, you will be charged just one service charge per installment, and not per individual account.

To add this policy to an existing billing account or if you have other questions about this notice, please call your insurance representative at (215)540-2400.



PL-14216  Rev. 11-17

Case ID: 190103305

Case ID: 190103305

COVHO3



# Homeowners Policy Booklet
## from Travelers

**Especially for:**
**SEAN & JAIME ROSE**



**Prepared by:**
**LINDSAY INS GROUP INC**

PENNSYLVANIA
HOMEOWNERS - SPECIAL FORM HO-3 PA (10-07)

Case ID: 190103305

## *The Contents of This Booklet*

1. **Your Declarations:**

   A summary of your coverages, amounts of insurance, and premiums for those coverages under the policy.

2. **Homeowners Policy:**

   The policy contract describing coverages, rights, and obligations.

3. **Endorsements:**

   Additional coverages or policy provisions applicable to your policy.

4. **Important Notices:**

   Information required by your state but not part of your policy provisions.

PL-8671 9-96

Case ID: 190103305



NEW BUSINESS DECLARATIONS

# Homeowners Policy

## INSURED AND AGENT INFORMATION

**(Named Insured)**
**Name and Mailing Address**
SEAN & JAIME ROSE
500 CINDY CIR
BLUE BELL PA 19422-1152

**Agent Information**
LINDSAY INS GROUP INC
653 SKIPPACK PIKE STE 310
BLUE BELL, PA   19422

**The Residence premises is located at**
500 CINDY CIR
BLUE BELL PA 19422-1152

**Mortgagee Name and Address**
1. PNC BANK NA ISAOA
   PO BOX 7433
   SPRINGFIELD      OH 45501
   LOAN NUMBER 1000350131

## POLICY INFORMATION

**Homeowners Policy No.**
602729932 633 1

**Policy Period**
07/28/18 - 07/28/19    12:01 A.M.
Standard Time at the residence premises

**Your Insurer**
The Travelers Home and Marine Insurance Company
One of The Travelers Property Casualty Companies
One Tower Square, Hartford, CT 06183

**For Claim Service Call**        1-800-CLAIM33
**For Policy Service Call**       (215) 540-2400

**TOTAL POLICY PREMIUM**                                    **$  2,061.00**
This is not a bill; you will be invoiced separately.

Continued on next page
Case ID: 190103305

818/0FG201                                          PL-12630 2-11 Insured Copy Page 1 of 3



## POLICY COVERAGES AND LIMITS OF LIABILITY

LIMIT

**Section I - Property Coverages**

| | | |
|---|---|---|
| A - DWELLING............................................................. $ | 591,000 |
| B - OTHER STRUCTURES.................................................... $ | 59,100 |
| C - PERSONAL PROPERTY................................................... $ | 413,700 |
| D - LOSS OF USE......................................................... $ | 177,300 |

LIMITED FUNGI, OTHER MICROBES OR ROT REMEDIATION
Section I - Property Coverage........................................ $     5,000

**Section II - Liability Coverages**

E - Personal Liability (Bodily Injury and Property Damage) Each Occurrence.. $   300,000
F - Medical Payments to Others Each Person............................... $     5,000

## POLICY SAVINGS AND DEDUCTIBLES

**Your Savings**

The following credits or discounts reduced your premium: Account Discount,
Loss Free Discount, Protective Devices Discount, Early Quote Discount

**Deductibles**                                                              DEDUCTIBLE

Section I  Property Coverages Deductible (All Perils)................ $     1,000

In case of loss under section I, only that part of the loss over the stated
deductible is covered.

## OPTIONAL ENDORSEMENTS AND COVERAGES          LIMIT          PREMIUM

**Optional Endorsements**

| | | LIMIT | PREMIUM |
|---|---|---|---|
| HO-15 PA | (10-17) Special Personal Property Coverage................... | | Included* |
| HO-85 PA | (10-17) Enhanced Home Package............................... | | Included* |
| | Water Back Up And Sump Discharge Or...... | $10,000 | |
| | Overflow | | |
| | Additional Replacement Cost Protection... | 25% | |
| HO-99 | (04-91) Sinkhole Collapse....................................$ | | 207.00 |
| HO-455 | (08-10) Identity Fraud Expense Reimbursement Coverage......... $ | | 25.00 |

## MANDATORY FORMS AND ENDORSEMENTS

HO-3 PA   (10-07) Homeowners 3 Special Form
HO-300 PA (10-17) Special Provisions - Pennsylvania

Continued on next page



The Declarations with your Homeowners Policy, HO-3 PA(10-07), and the optional Endorsements and coverages listed above, form your Homeowners Insurance Policy.

**\*Note:**  The additional cost for any optional endorsement or coverage shown as "Included" is contained in the Total Policy Premium amount.

## For Your Information

For information about how Travelers compensates independent agents and brokers, please visit www.Travelers.com or call our toll free telephone number 1-866-904-8348. You may also request a written copy from Marketing at One Tower Square, 2GSA, Hartford, Connecticut 06183.

It is important that the information we used to rate your policy is correct. It is your responsibility to make sure that the information on these Declarations is accurate and complete, including checking that you are receiving all the discounts for which you are eligible. To see a full list of discounts offered, including discounts for having multiple policies with us, protecting your home with safety devices and being claim free, go to www.travelers.com/discounts. Once at the website, type in your policy number 6027299326331 and product code HO2 to view the discounts available. If any of the information on the Declarations has changed, appears incorrect, or is missing, please advise your Travelers agent or representative immediately. Your Travelers agent or representative is also available to review the information on the Declarations with you.

If you have recently replaced your roof it is important that you inform your Travelers Representative.

This is not a bill.  The mortgagee will be billed separately for this policy.

Thank you for insuring with Travelers. We appreciate your business. If you have any questions about your insurance, please contact your agent or representative.

These declarations with policy provisions HO-3 PA(10-07) and any attached endorsements form your Homeowners Insurance Policy.  Please keep them with your policy for future reference.

Countersignature:

818/0FG201

PL-12630 2-11 Insured Copy Page 2 of 3

Case ID: 190103305

Case ID: 190103305

# YOUR HOMEOWNERS POLICY QUICK REFERENCE
## PENNSYLVANIA

**DECLARATIONS PAGE**

**Your Name**
**Location of Your Residence**
**Policy Period**
**Policy Coverages**
**Limits of Liability**
**Deductible Amounts**

|  |  | Beginning On Page |
|---|---|---|
| AGREEMENT | | 1 |
| DEFINITIONS | | 1 |
| **SECTION I PROPERTY COVERAGES** | COVERAGES | 3 |
| | Coverage A - Dwelling | 3 |
| | Coverage B - Other Structures | 3 |
| | Coverage C - Personal Property | 4 |
| | Coverage D - Loss of Use | 5 |
| | Additional Coverages | 6 |
| | PERILS INSURED AGAINST | 10 |
| | EXCLUSIONS | 13 |
| | CONDITIONS | 14 |
| | Duties After Loss | 14 |
| | Loss Settlement | 15 |
| | Loss Deductible | 16 |
| | Policy Period | 17 |
| **SECTION II LIABILITY COVERAGES** | COVERAGES | 17 |
| | Coverage E - Personal Liability | 17 |
| | Coverage F - Medical Payments to Others | 18 |
| | ADDITIONAL COVERAGES | 18 |
| | EXCLUSIONS | 19 |
| | CONDITIONS | 23 |
| | Limit of Liability | 23 |
| | Duties After Occurrence | 23 |
| | Policy Period | 24 |
| **SECTION I and SECTION II CONDITIONS** | CONDITIONS | 24 |
| | Cancellation | 24 |
| | Nonrenewal | 25 |

HO-3 PA (10-07)

Case ID: 190103305

Case ID: 190103305

HO-3 PA (10-07)

# HOMEOWNERS 3 – SPECIAL FORM
# PENNSYLVANIA

## AGREEMENT

We will provide the insurance described in this policy in return for the premium and compliance with all applicable provisions of this policy.

## DEFINITIONS

In this policy, "you" and "your" refer to the named "insured" shown in the Declarations and the spouse if a resident of the same household. "We", "us" and "our" refer to the company providing this insurance.

Throughout this policy, the following is added to any provision which uses the term actual cash value:

Actual cash value means the amount it would cost to repair or replace covered property, at the time of loss or damage, with material of like kind and quality, subject to a deduction for deterioration, depreciation and obsolescence. Actual cash value applies to valuation of covered property regardless of whether that property has sustained partial or total loss or damage.

The actual cash value of the lost or damaged property may be significantly less than its replacement cost.

In addition, certain words and phrases are defined as follows:

1. "Aircraft Liability", "Hovercraft Liability", "Motor Vehicle Liability" and "Watercraft Liability", subject to the provisions in b. below, mean the following:

   a. Liability for "bodily injury" or "property damage" arising out of the:

      (1) Ownership of such vehicle or craft by an "insured";

      (2) Maintenance, occupancy, operation, use, loading or unloading of such vehicle or craft by any person;

      (3) Entrustment of such vehicle or craft by an "insured" to any person;

      (4) Failure to supervise or negligent supervision of any person involving such vehicle or craft by an "insured"; or

      (5) Vicarious liability, whether or not imposed by law, for the actions of a child or minor involving such vehicle or craft.

   b. For the purpose of this definition:

      (1) Aircraft means any contrivance used or designed for flight, except model or hobby aircraft not used or designed to carry people or cargo;

      (2) Hovercraft means a self-propelled motorized ground effect vehicle and includes, but is not limited to, flarecraft and air cushion vehicles;

      (3) Watercraft means a craft principally designed to be propelled on or in water by wind, engine power or electric motor; and

      (4) Motor vehicle means a "motor vehicle" as defined in 9. below.

2. "Bodily injury" means bodily harm, sickness or disease, including required care, loss of services and death that results.

3. "Business" means:

   a. A trade, profession or occupation engaged in on a full-time, part-time or occasional basis; or

   b. Any other activity engaged in for money or other compensation, except the following:

      (1) Volunteer activities for which no money is received other than payment for expenses incurred to perform the activity;

      (2) Providing home day care services for which no compensation is received, other than the mutual exchange of such services; or

      (3) Providing home day care services to a relative of an "insured".

4. "Employee" means an employee of an "insured", or an employee leased to an "insured" by a labor leasing firm under an agreement between an "insured" and the labor leasing firm, whose duties

HO-3 PA (10-07)

are other than those performed by a "residence employee".

5. "Fuel system" means:

   a. One or more containers, tanks or vessels which have a total combined fuel storage capacity of 100 or more U.S. gallons; and:

      (1) Are, or were, used to hold fuel; and

      (2) Are, or were, located on any one location;

   b. Any pumping apparatus, which includes the motor, gauge, nozzle, hose or pipes that are, or were, connected to one or more containers, tanks or vessels described in Paragraph a.;

   c. Filler pipes and flues connected to one or more containers, tanks or vessels described in Paragraph a.;

   d. A boiler, furnace or a water heater, the fuel for which is stored in a container, tank or vessel described in Paragraph a.;

   e. Fittings and pipes connecting the boiler, furnace or water heater to one or more containers, tanks or vessels described in Paragraph a.; or

   f. A structure that is specifically designed and built to hold escaped or released fuel from one or more containers, tanks or vessels described in Paragraph a.

   A "fuel system" does not include any fuel tanks that are permanently affixed to a motor vehicle or watercraft owned by an "insured", used for powering the motor vehicle or watercraft and not used at any time or in any manner for "business".

6. "Fungi"

   a. "Fungi" means any type or form of fungus, including mold or mildew, and any mycotoxins, spores, scents or by-products produced or released by "fungi".

   b. Under Section II, this does not include any "fungi" that are, on, or are contained in, a product or goods intended for consumption.

7. "Insured" means:

   a. You and residents of your household who are:

      (1) Your relatives; or

      (2) Other persons under the age of 21 and in the care of any person named above.

   b. A student enrolled in school full-time, as defined by the school, who was a resident of your household before moving out to attend

school, provided the student is under the age of:

   (1) 24 and your relative; or

   (2) 21 and in your care or the care of a person described in a.(1) above; or

   c. Any Additional Insured named in the Declarations, but only with respect to Coverages A, B, E and F and only for the "residence premises".

   d. Under Section II:

      (1) With respect to animals or watercraft to which this policy applies, any person or organization legally responsible for these animals or watercraft which are owned by you or any person included in a. or b. above. "Insured" does not mean a person or organization using or having custody of these animals or watercraft in the course of any "business" or without consent of the owner; or

      (2) With respect to any vehicle to which this policy applies:

         (a) Persons while engaged in your employ or that of any person included in a. or b. above; or

         (b) Other persons using the vehicle on an "insured location" with your consent.

   Under both Sections I and II, when the word an immediately precedes the word "insured", the words an "insured" together mean one or more "insureds".

8. "Insured location" means:

   a. The "residence premises";

   b. The part of other premises, other structures and grounds used by you as a residence which:

      (1) Which is shown in the Declarations; or

      (2) Which is acquired by you during the policy period for your use as a residence;

   c. Any premises used by you in connection with a premises described in a. and b. above;

   d. Any part of a premises:

      (1) Not owned by an "insured"; and

      (2) Where an "insured" is temporarily residing;

   e. Vacant land, other than farm land, owned by or rented to an "insured";

f.  Land owned by or rented to an "insured" on which a one or two family dwelling is being built as a residence for an "insured";

g.  Individual or family cemetery plots or burial vaults of an "insured";

h.  Any part of a premises occasionally rented to an "insured" for other than "business" use;

i.  Any premises owned by you and rented to others for use as a residence by not more than four families, if shown in the Declarations as an ADDITIONAL RESIDENCE RENTED TO OTHERS; or

j.  Any other structure on the "residence premises" rented to others as a private residence for which a limit of liability is shown in the Declarations for STRUCTURES RENTED TO OTHERS.

9.  "Motor vehicle" means:

a.  A self-propelled land or amphibious vehicle; or

b.  Any trailer or semi-trailer which is being carried on, towed by or hitched for towing by a vehicle described in a. above.

10.  "Occurrence" means an accident, including continuous or repeated exposure to substantially the same general harmful conditions, which results during the policy period, in:

a.  "bodily injury"; or

b.  "property damage".

11.  "Property Damage" means physical injury to, destruction of, or loss of use of tangible property.

12.  "Residence employee" means:

a.  An employee of an "insured", or an employee leased to an "insured" by a labor leasing firm under an agreement between an "insured" and the labor leasing firm, if the employee's duties are related to the maintenance or use of the "residence premises", including household or domestic services; or

b.  One who performs similar duties elsewhere not related to the "business" of an "insured".

A "residence employee" does not include a temporary employee who is furnished to an "insured" to substitute for a permanent "residence employee" on leave or to meet seasonal or short-term workload conditions.

13.  "Residence premises" means:

a.  The one family dwelling where you reside; or

b.  The two, three or four family dwelling where you reside in at least one of the family units;

and which is shown as the "residence premises" in the Declarations.

"Residence premises" also includes other structures and grounds at that location.

---

## SECTION I - PROPERTY COVERAGES

### COVERAGE A - DWELLING

1.  We cover:

a.  The dwelling on the "residence premises" shown in the Declarations, including structures attached to the dwelling; and

b.  Materials and supplies located on or next to the "residence premises" used to construct, alter or repair the dwelling or other structures on the "residence premises".

2.  We do not cover land, including land on which the dwelling is located.

### COVERAGE B - OTHER STRUCTURES

1.  We cover other structures on the "residence premises" set apart from the dwelling by clear space. This includes structures connected to the dwelling by only a fence, utility line, or similar connection.

2.  We do not cover:

a.  Land, including land on which the other structures are located;

b.  Other structures rented or held for rental to any person not a tenant of the dwelling, unless used solely as a private garage. However, we do cover other structures rented to others as a private residence for which a limit of liability is shown in the Declarations for STRUCTURES RENTED TO OTHERS;

c.  Other structures from which any "business" is conducted; or

d.  Other structures used to store "business" property. However, we do cover a structure

Case ID: 190103305

that contains "business" property solely owned by an "insured" or a tenant of the dwelling provided that "business" property does not include gaseous or liquid fuel, other than fuel in a permanently installed fuel tank of a vehicle or craft parked or stored in the structure.

## COVERAGE C - PERSONAL PROPERTY

1. **Covered Property.** We cover personal property owned or used by an "insured" while it is anywhere in the world. At your request, we will cover personal property owned by:

   a. Others while the property is on the part of the "residence premises" occupied by an "insured"; or

   b. A guest or a "residence employee", while the property is in any residence occupied by an "insured".

   This request may be made after a loss.

2. **Limit For Property At Other Residences.** Our limit of liability for personal property usually located at an "insured's" residence, other than the "residence premises", is 10% of the limit of liability for Coverage C, or $1,000, whichever is greater. However, this limitation does not apply to personal property:

   a. Moved from the "residence premises" because it is being repaired, renovated or rebuilt and is not fit to live in or store property in; or

   b. In a newly acquired principal residence for 30 days from the time you begin to move the property there.

3. **Special Limits of Liability.** The special limit for each category described below is the greater of the limit shown below or the special limit for such category, if any, shown in the Declarations. Such limit is the total limit for each loss for all property in that category. These special limits do not increase the Coverage C limit of liability.

   a. $200 on money, bank notes, bullion, gold other than goldware, silver other than silverware, platinum other than platinumware, coins, medals, scrip, stored value cards and smart cards.

   b. $1,500 on securities, accounts, deeds, evidence of debt, letters of credit, notes other than bank notes, manuscripts, personal records, passports, tickets and stamps. This dollar limit applies to these categories regardless of the medium (such as paper or computer software) on which the material exists.

   This limit includes the cost to research, replace or restore the information from the lost or damaged material.

   c. $1,500 on watercraft of all types, including their trailers, furnishings, equipment and outboard engines or motors.

   d. $1,500 on trailers or semitrailers not used with watercraft of all types.

   e. $1,500 for loss by theft of jewelry, watches, furs, precious and semiprecious stones.

   f. $2,500 for loss by theft of firearms and related equipment.

   g. $2,500 for loss by theft of silverware, silver-plated ware, goldware, gold-plated ware, platinumware, platinum-plated ware and pewterware. This includes flatware, hollowware, tea sets, trays and trophies made of or including silver, gold, platinum or pewter.

   h. $5,000 on property, on the "residence premises", used primarily for "business" purposes.

   i. $1,500 on property, away from the "residence premises", used primarily for "business" purposes. However, this limit does not apply to loss to electronic apparatus and accessories described in category j. below.

   j. $1,500 on electronic apparatus and accessories, while in or upon a "motor vehicle", but only if the apparatus is equipped to be operated by power from the "motor vehicle's" electrical system while still capable of being operated by other power sources.

   k. $250 on tapes, records, discs or other media that can be used with any electronic apparatus, while in or upon a "motor vehicle".

4. **Property Not Covered**

   We do not cover:

   a. Articles separately described and specifically insured, regardless of the limit for which they are insured, in this or other insurance;

   b. Animals, birds or fish;

   c. "Motor vehicles".

      (1) This includes:

         (a) Their accessories, equipment and parts; or

         (b) Electronic apparatus and accessories designed to be operated solely by power from the electrical system of the "motor vehicle".

Case ID: 190103305

The exclusion of property described in **(a)** and **(b)** above applies only while such property is in or upon the "motor vehicle".

(2) We do cover "motor vehicles" not required to be registered for use on public roads or property which are:

(a) Used to service an "insured's" residence; or

(b) Designed to assist the handicapped;

d. Aircraft meaning any contrivance used or designed for flight, including any parts whether or not attached to the aircraft.

We do cover model or hobby aircraft not used or designed to carry people or cargo;

e. Hovercraft and parts. Hovercraft means a self-propelled motorized ground effect vehicle and includes, but is not limited to, flarecraft and air cushion vehicles;

f. Property of roomers, boarders and other tenants, except property of roomers and boarders related to an "insured";

g. Property in an apartment regularly rented or held for rental to others by an "insured", except as provided under Additional Coverage 11. Landlord's Furnishings;

h. Property rented or held for rental to others off the "residence premises";

i. "Business" data, including such data stored in:

(1) Books of account, drawings or other paper records; or

(2) Computers and related equipment.

We do cover the cost of blank recording or storage media, and of prerecorded computer programs available on the retail market;

j. Credit cards, electronic fund transfer cards or access devices used solely for deposit, withdrawal or transfer of funds except as provided in Additional Coverage 7. Credit Card, Electronic Fund Transfer Card Or Access Device, Forgery And Counterfeit Money;

k. Grave markers, except as provided in Additional Coverage 13. Grave Markers; or

l. Water or steam.

## COVERAGE D - LOSS OF USE

The limit of liability for Coverage D is the total limit for the coverages in 1. Additional Living Expense, 2. Fair Rental Value and 3. Civil Authority Prohibits Use below.

1. **Additional Living Expense.** If a loss covered under Section I makes that part of the "residence premises" where you reside not fit to live in, we cover any necessary increase in living expenses incurred by you so that your household can maintain its normal standard of living. However, additional living expense due to "fungi", other microbes or rot remediation will not be paid in addition to any amounts paid or payable under Additional Coverage 16. Limited "Fungi", Other Microbes Or Rot Remediation.

Payment will be for the shortest time required to repair or replace the damage or, if you permanently relocate, the shortest time required for your household to settle elsewhere.

2. **Fair Rental Value.** If a loss covered under Section I makes that part of the "residence premises" rented to others or held for rental by you not fit to live in, we cover the fair rental value of such premises less any expenses that do not continue while it is not fit to live in. However, fair rental value due to "fungi", other microbes or rot remediation will not be paid in addition to any amounts paid or payable under Additional Coverage 16. Limited "Fungi", Other Microbes Or Rot Remediation.

Payment will be for the shortest time required to repair or replace such premises.

Written proof that part of the "residence premises" is rented, was held for rental at the time of loss or has been rented within the 24 months prior to the date of loss is required.

3. **Civil Authority Prohibits Use.** If a civil authority prohibits you from use of the "residence premises" as a result of direct physical damage to neighboring premises caused by a Peril Insured Against under this policy, we cover resulting 1. Additional Living Expense and 2. Fair Rental Value as provided above for no more than two weeks. Neighboring premises means a premises in sufficient proximity to the "residence premises" that there exists a reasonable risk that the peril affecting the neighboring premises could endanger either the "residence premises" or the safety of its occupants while in the "residence premises".

4. **Loss Or Expense Not Covered.** We do not cover loss or expense due to cancellation of a lease or agreement.

The periods of time under 1. Additional Living Expense, 2. Fair Rental Value and 3. Civil Authority Pro-

HO-3 PA (10-07)

hibits Use above are not limited by expiration of this policy.

## ADDITIONAL COVERAGES

Unless otherwise stated:
The following coverages are additional insurance; and They are subject to your deductible.

1. **Debris Removal.** We will pay your reasonable expense for the removal of:

   a. Debris of covered property if a Peril Insured Against that applies to the damaged property causes the loss; or

   b. Ash, dust or particles from a volcanic eruption that has caused direct loss to a building or property contained in a building.

   This expense is included in the limit of liability that applies to the damaged property. If the amount to be paid for the actual damage to the property plus the debris removal expense is more than the limit of liability for the damaged property, an additional 5% of that limit is available for such expense.

   We do not pay for the removal of trees except as provided under **2. Tree Removal** below.

2. **Tree Removal.** We will pay your reasonable expense, up to $1,000, for the removal of one or more trees fallen on the "residence premises" as a result of a Peril Insured Against, provided the tree(s):

   a. Damage(s) a covered structure; or

   b. Do(es) not damage a covered structure, but:

      (1) Block(s) a driveway on the "residence premises" which prevent(s) a "motor vehicle", that is registered for use on public roads or property, from entering or leaving the "residence premises"; or

      (2) Block(s) a ramp or other fixture designed to assist a handicapped person to enter or leave the dwelling building.

   c. Windstorm or Hail or Weight of Ice, Snow or Sleet causes damage to a structure covered under this policy and the Pennsylvania Governor declares the area in which the "residence premises" is located to be a disaster area as a result of such weather conditions.

   The $1,000 limit is the most we will pay in any one loss regardless of the number of fallen trees. No more than $500 of this limit will be paid for the removal of any one tree.

3. **Reasonable Repairs.**

   a. We will pay the reasonable cost incurred by you for the necessary measures taken solely to protect covered property that is damaged by a Peril Insured Against from further damage.

   b. If the measures taken involve repair to other damaged property, we will pay only if that property is covered under this policy and the damage is caused by a Peril Insured Against.

   c. This coverage does not increase the limit of liability that applies to the covered property; or

   d. Relieve you of your duties, in case of a loss to covered property, described in **2.d.** under Section I – Conditions.

4. **Trees, Shrubs And Other Plants.** We cover trees, shrubs, plants or lawns, on the "residence premises", for loss caused by the following Perils Insured Against:

   a. Fire or Lightning;

   b. Explosion;

   c. Riot or Civil Commotion;

   d. Aircraft;

   e. Vehicles not owned or operated by a resident of the "residence premises";

   f. Vandalism or Malicious Mischief; or

   g. Theft.

   We will pay up to 5% of the limit of liability that applies to the dwelling for all trees, shrubs, plants or lawns. No more than $500 of this limit will be paid for any one tree, shrub or plant. We do not cover property grown for "business" purposes.

5. **Fire Department Service Charge.** We will pay up to $500 for your liability assumed by contract or agreement for fire department charges incurred when the fire department is called to save or protect covered property from a Peril Insured Against. We do not cover fire department service charges if the property is located within the limits of the city, municipality or protection district furnishing the fire department response.

   No deductible applies to this coverage.

6. **Property Removed.** We insure covered property against direct loss from any cause while being removed from a premises endangered by a Peril Insured Against and for no more than 30 days while removed. This coverage does not change

the limit of liability that applies to the property being removed.

**7. Credit Card, Electronic Fund Transfer Card Or Access Device, Forgery And Counterfeit Money.**

a. We will pay up to the greater of $1,000, or the higher amount, if any, shown in the Declarations for CREDIT CARD, for:

   (1) The legal obligation of an "insured" to pay because of the theft or unauthorized use of credit cards issued to or registered in an "insured's" name;

   (2) Loss resulting from theft or unauthorized use of an electronic fund transfer card or access device used for deposit, withdrawal or transfer of funds, issued to or registered in an "insured's" name;

   (3) Loss to an "insured" caused by forgery or alteration of any check or negotiable instrument; and

   (4) Loss to an "insured" through acceptance in good faith of counterfeit United States or Canadian paper currency.

   No deductible applies to this coverage.

b. All loss resulting from a series of acts:

   (1) Committed by any one person or group of persons acting in concert; or

   (2) In which any one person or group of persons acting in concert is concerned or implicated;

   Is considered to be one loss.

c. We do not cover:

   (1) Use of a credit card, electronic fund transfer card or access device:

      (a) By a resident of your household;

      (b) By a person who has been entrusted with either type of card or access device; or

      (c) If an "insured" has not complied with all terms and conditions under which the cards are issued or the devices accessed; or

   (2) Loss arising out of "business" use or dishonesty of an "insured".

d. If the coverage in a. applies, the following defense provisions also apply:

   (1) We may investigate and settle any claim or suit that we decide is appropriate. Our

duty to defend a claim or suit ends when the amount we pay for the loss equals our limit of liability.

   (2) If a suit is brought against an "insured" for liability under a.(1) or (2) above, we will provide a defense at our expense by counsel of our choice.

   (3) We have the option to defend at our expense an "insured" or an "insured's" bank against any suit for the enforcement of payment under a.(3) above.

**8. Loss Assessment.**

a. We will pay up to $1,000 for your share of loss assessment charged during the policy period against you, as owner or tenant of the "residence premises", by a corporation or association of property owners. The assessment must be made as a result of direct loss to property, owned by all members collectively, of the type that would be covered by this policy if owned by you, caused by a Peril Insured Against under Coverage A, other than:

   (1) Earthquake; or

   (2) Land shock waves or tremors before, during or after a volcanic eruption.

   The limit of $1,000 is the most we will pay with respect to any one loss, regardless of the number of assessments. We will apply only one deductible, per unit, to the total amount of any one loss to the property described above, regardless of the number of assessments.

b. We do not cover assessments charged against you or a corporation or association of property owners by any governmental body.

c. Section I Condition 17. Policy Period does not apply to this coverage.

**9. Collapse.**

a. With respect to this Additional Coverage:

   (1) Collapse means an abrupt falling down or caving in of a building or any part of a building with the result that the building or part of the building cannot be occupied for its current intended purpose.

   (2) A building or any part of a building that is in danger of falling down or caving in is not considered to be in a state of collapse.

   (3) A part of a building that is standing is not considered to be in a state of collapse



Case ID: 190103305

even if it has separated from another part of the building.

(4) A building or any part of a building that is standing is not considered to be in a state of collapse even if it shows evidence of cracking, bulging, sagging, bending, leaning, settling, shrinkage or expansion.

b. We insure for direct physical loss to covered property involving collapse of a building or any part of a building if the collapse was caused by one or more of the following:

(1) The Perils Insured Against named under Coverage C;

(2) Decay that is hidden from view, unless the presence of such decay is known to an "insured" prior to collapse or there are visible signs of water damage and the "insured" has not taken prompt action to prevent further damage;

(3) Insect or vermin damage that is hidden from view, unless the presence of such damage is known to an "insured" prior to collapse;

(4) Weight of contents, equipment, animals or people;

(5) Weight of rain which collects on a roof; or

(6) Use of defective material or methods in construction, remodeling or renovation if the collapse occurs during the course of the construction, remodeling or renovation.

c. Loss to an awning, fence, patio, deck, pavement, swimming pool, underground pipe, flue, drain, cesspool, septic tank, foundation, retaining wall, bulkhead, pier, wharf or dock is not included under b.(2) through (6) above, unless the loss is a direct result of the collapse of a building or any part of a building.

d. This coverage does not increase the limit of liability that applies to the damaged covered property.

10. **Glass Or Safety Glazing Material.**

a. We cover:

(1) The breakage of glass or safety glazing material which is part of a covered building, storm door or storm window;

(2) The breakage of glass or safety glazing material which is part of a covered building, storm door or storm window when caused directly by earth movement; and

(3) The direct physical loss to covered property caused solely by the pieces, fragments or splinters of broken glass or safety glazing material which is part of a building, storm door or storm window.

b. This coverage does not include loss:

(1) To covered property which results because the glass or safety glazing material has been broken, except as provided in a.(3) above; or

(2) On the "residence premises" if the dwelling has been vacant for more than 60 consecutive days immediately before the loss, except when the breakage results directly from earth movement as provided in a.(2) above. Vacant means substantially empty of personal property necessary to sustain normal occupancy. A dwelling being constructed is not considered vacant.

c. This coverage does not increase the limit of liability that applies to the damaged property.

11. **Landlord's Furnishings.** We will pay up to $2,500 for your appliances, carpeting and other household furnishings, in each apartment on the "residence premises" regularly rented or held for rental to others by an "insured", for loss caused by a Peril Insured Against in Coverage C, other than Theft.

This limit is the most we will pay in any one loss regardless of the number of appliances, carpeting or other household furnishings involved in the loss.

This coverage does not increase the limit of liability applying to the damaged property.

12. **Ordinance or Law.**

a. You may use up to the greater of 10%, or the higher percentage, if any, shown in the Declarations for ORDINANCE OR LAW, of the limit of liability that applies to Coverage A for the increased costs you incur due to the enforcement of any ordinance or law which requires or regulates:

(1) The construction, demolition, remodeling, renovation or repair of that part of a covered building or other structure damaged by a Peril Insured Against;

(2) The demolition and reconstruction of the undamaged part of a covered building or other structure, when that building or other structure must be totally demolished because of damage by a Peril Insured

HO-3 PA (10-07)

Against to another part of that covered building or other structure; or

(3) The remodeling, removal or replacement of the portion of the undamaged part of a covered building or other structure necessary to complete the remodeling, repair or replacement of that part of the covered building or other structure damaged by a Peril Insured Against.

b. You may use all or part of this ordinance or law coverage to pay for the increased costs you incur to remove debris resulting from the construction, demolition, remodeling, renovation, repair or replacement of property as stated in a. above.

c. We do not cover:

(1) The loss in value to any covered building or other structure due to the requirements of any ordinance or law; or

(2) The costs to comply with any ordinance or law which requires any "insured" or others to test for, monitor, clean up, remove, contain, treat, detoxify or neutralize, or in any way respond to, or assess the effects of, pollutants in or on any covered building or other structure.

Pollutants means any solid, liquid, gaseous or thermal irritant or contaminant, including smoke, vapor, soot, fumes, acids, alkalis, chemicals and waste. Waste includes materials to be recycled, reconditioned or reclaimed.

d. The most we will pay for any increased costs to comply with any ordinance or law that becomes effective after the date of loss is $5,000.

13. **Grave Markers.** We will pay up to $5,000 for grave markers, including mausoleums, on or away from the "residence premises" for loss caused by a Peril Insured Against in Coverage C.

This coverage does not increase the limits of liability that apply to the damaged covered property.



14. **Refrigerated Products Coverage.** We insure, up to $500, covered property stored in freezers or refrigerators on the "residence premises" for direct loss caused by:

a. Loss of power to the refrigeration unit. Loss of power means the complete or partial interruption of electric power due to conditions beyond an "insured's" control. Loss of power must be caused by damage to:

(1) Generating equipment; or

(2) Transmitting equipment; or

b. Mechanical failure of the unit which stores the property.

Coverage will apply only if you have maintained the refrigeration unit in proper working condition immediately prior to the loss.

This coverage does not increase the limit of liability for Coverage C.

We will pay only that part of the total of all loss payable that exceeds $100. No other deductible applies to this coverage.

The Power Failure exclusion does not apply to this coverage.

15. **Inflation Coverage.** We may adjust the limits of liability for Coverages A, B, C and D at the beginning of each successive policy term to reflect increases in the cost of insured property. The amount of such increase will be based on the data provided by the appraisal company shown in the Declarations. Payment of the required premium when due for the successive policy term will be sufficient to indicate your acceptance of the adjusted limits.

We will also adjust the limits of liability at the time of a loss by the same percentage pro rated from the effective date of the policy period or the effective date of change if you have requested a change to the limit of liability for Coverage A during the policy period.

16. **Limited "Fungi", Other Microbes Or Rot Remediation.**

a. If a loss caused by a Peril Insured Against results in "fungi", other microbes or rot, we will pay for:

(1) Remediation of the "fungi", other microbes or rot. This includes payment for the reasonable and necessary cost to:

(a) Remove the "fungi", other microbes or rot from covered property or to repair, restore or replace that property; and

(b) Tear out and replace any part of the building as needed to gain access to the "fungi", other microbes or rot;

(2) Any reasonable and necessary increase in living expense you incur:

(a) So that your household can maintain its normal standard of living; or

HO-3 PA (10-07)

Case ID: 190103305

(b)  Loss of fair rental value;

if the "fungi", other microbes or rot makes the "residence premises" not fit to live in; and

(3)  Any reasonable and necessary testing or monitoring of air or property to confirm the absence, presence or level of the "fungi", other microbes or rot, whether performed prior to, during or after removal, repair, restoration or replacement.

b.  We will pay under this additional coverage only if:

(1)  The covered loss occurs during the policy period;

(2)  All reasonable means were used to save and preserve the property at the time of and after the covered loss; and

(3)  We receive prompt notice of the covered cause of loss that is alleged to have resulted in "fungi", other microbes or rot.

c.  The most we will pay under this additional coverage is the limit of liability shown in the Declarations for Limited "Fungi", Other Microbes Or Rot Remediation. This is the most we will pay for the total of all loss or costs regardless of the:

(1)  Number of locations or items of property insured under this policy; or

(2)  Number of losses or claims made.

d.  This coverage does not increase the limit of liability that applies to the damaged property.

---

## SECTION I - PERILS INSURED AGAINST

### COVERAGE A – DWELLING AND COVERAGE B – OTHER STRUCTURES

1.  We insure against risk of direct physical loss to property described in Coverages A and B.

2.  We do not insure, however, for loss:

a.  Excluded under Section I – Exclusions;

b.  Involving collapse or danger of collapse, except as provided in Additional Coverage 9. Collapse under Section I – Property Coverages; or

c.  Caused by:

(1)  Freezing of a plumbing, heating, air conditioning or automatic fire protective sprinkler system or of a household appliance, or by discharge, leakage or overflow from within the system or appliance caused by freezing. This exclusion does not apply if you have used reasonable care to:

(a)  Maintain heat in the building; or

(b)  Shut off the water supply and drain all systems and appliances of water.

However, if the building is protected by an automatic fire protective sprinkler system, you must use reasonable care to continue the water supply and maintain heat in the building for coverage to apply.

For purposes of this provision a plumbing system or household appliance does not include a sump, sump pump or related equipment or a roof drain, gutter, downspout or similar fixtures or equipment;

(2)  Freezing, thawing, pressure or weight of water or ice, whether driven by wind or not, to a:

(a)  Fence, pavement, patio or swimming pool;

(b)  Footing, foundation, bulkhead, wall, or any other structure or device that supports all or part of a building, or other structure;

(c)  Retaining wall or bulkhead that does not support all or part of a building or other structure; or

(d)  Pier, wharf or dock;

(3)  Theft in or to a dwelling under construction, or of materials and supplies for use in the construction until the dwelling is finished and occupied;

(4)  Vandalism and malicious mischief, including arson, and any ensuing loss caused by any intentional and wrongful act committed in the course of the vandalism or malicious mischief, if the dwelling has been vacant for more than 60 consecutive days immediately before the loss. Vacant means substantially empty

Case ID: 190103305

of personal property necessary to sustain normal occupancy. A dwelling being constructed is not considered vacant;

(5) Constant or repeated seepage or leakage of water or steam, or the presence or condensation of humidity, moisture or vapor, that occurs over a period of 14 days or more; or

(6) Any of the following:

(a) Wear and tear, marring, deterioration;

(b) Mechanical breakdown, latent defect, inherent vice, or any quality in property that causes it to damage or destroy itself;

(c) Smog, rust or other corrosion;

(d) Smoke from agricultural smudging or industrial operations;

(e) Discharge, dispersal, seepage, migration, release or escape of pollutants unless the discharge, dispersal, seepage, migration, release or escape is itself caused by a Peril Insured Against named under Coverage C.

Pollutants means any solid, liquid, gaseous or thermal irritant or contaminant, including smoke, vapor, soot, fumes, acids, alkalis, chemicals and waste. Waste includes materials to be recycled, reconditioned or reclaimed;

(f) Settling, shrinking, bulging or expansion, including resultant cracking of bulkheads, pavements, patios, footings, foundations, walls, floors, roofs or ceilings;

(g) Birds, vermin, rodents, or insects; or

(h) Animals owned or kept by an "insured".

### Exception To c.(6)

Unless the loss is otherwise excluded, we cover loss to property covered under Coverage A or B resulting from an accidental discharge or overflow of water or steam from within a plumbing, heating, air conditioning or automatic fire protective sprinkler system or household appliance on the "residence premises". This includes the cost to tear out and replace any part of a building, or other structure, on the "residence premises", but only when necessary to repair the system or appli-

ance. However, such tear out and replacement coverage only applies to other structures if the water or steam causes actual damage to a building on the "residence premises".

We do not cover loss to the system or appliance from which this water or steam escaped.

For purposes of this provision, a plumbing system or household appliance does not include a sump, sump pump or related equipment or a roof drain, gutter, down spout or similar fixtures or equipment.

Under **2.b.** and **c.** above, any ensuing loss to property described in Coverages A and B not excluded by any other provision in this policy is covered.

### COVERAGE C – PERSONAL PROPERTY

We insure for direct physical loss to the property described in Coverage C caused by any of the following perils, unless the loss is excluded in Section I - Exclusions.

1. **Fire or lightning.**

2. **Windstorm or hail.**

This peril includes loss to watercraft of all types and their trailers, furnishings, equipment, and outboard engines or motors, only while inside a fully enclosed building.

This peril does not include loss to property contained in a building caused by rain, snow, sleet, sand or dust unless the direct force of wind or hail damages the building, causing an opening in a roof or wall and the rain, snow, sleet, sand or dust enters through this opening.

3. **Explosion.**

4. **Riot or civil commotion.**

5. **Aircraft.**

This peril includes self-propelled missiles and spacecraft.

6. **Vehicles.**

7. **Smoke.**

This peril means sudden and accidental damage from smoke, including the emission or puffback of smoke, soot, fumes or vapors from a boiler, furnace or related equipment.

This peril does not include loss caused by smoke from agricultural smudging or industrial operations.

8. **Vandalism or malicious mischief.**

9. **Theft.**

   a. This peril includes attempted theft and loss of property from a known place when it is likely that the property has been stolen.

   b. This peril does not include loss caused by theft:

   (1) Committed by an "insured";

   (2) In or to a dwelling under construction, or of materials and supplies for use in the construction until the dwelling is finished and occupied;

   (3) From that part of a "residence premises" rented by an "insured" to someone other than another "insured"; or

   (4) That occurs off the "residence premises" of:

   (a) Trailers, semitrailers and campers;

   (b) Watercraft of all types, and their furnishings, equipment and outboard engines or motors; or

   (c) Property while at any other residence owned by, rented to, or occupied by an "insured", except while an "insured" is temporarily living there. Property of an "insured" who is a student is covered while at the residence the student occupies to attend school as long as the student has been there at any time during the 60 days immediately before the loss.

10. **Falling Objects.**

    This peril does not include loss to property contained in a building unless the roof or an outside wall of the building is first damaged by a falling object. Damage to the falling object itself is not included.

11. **Weight Of Ice, Snow Or Sleet.**

    This peril means weight of ice, snow or sleet which causes damage to property contained in a building.

12. **Accidental Discharge Or Overflow Of Water Or Steam.**

    a. This peril means accidental discharge or overflow of water or steam from within a plumbing, heating, air conditioning or automatic fire protective sprinkler system or from within a household appliance.

    b. This peril does not include loss:

    (1) To the system or appliance from which the water or steam escaped;

    (2) Caused by or resulting from freezing except as provided in Peril Insured Against 14. Freezing; or

    (3) On the "residence premises" caused by accidental discharge or overflow which occurs off the "residence premises";

    c. In this peril, a plumbing system or household appliance does not include a sump, sump pump or related equipment or a roof drain, gutter, downspout or similar fixtures or equipment.

    d. Section I -- Exclusion 3. Water Damage, Paragraphs a. and c. that apply to surface water and water below the surface of the ground do not apply to loss by water covered under this peril.

13. **Sudden And Accidental Tearing Apart, Cracking, Burning Or Bulging.**

    This peril means sudden and accidental tearing apart, cracking, burning or bulging of a steam or hot water heating system, an air conditioning or automatic fire protective sprinkler system, or an appliance for heating water.

    We do not cover loss caused by or resulting from freezing under this peril.

14. **Freezing.**

    a. This peril means freezing of a plumbing, heating, air conditioning or automatic fire protective sprinkler system or of a household appliance but only if you have used reasonable care to:

    (1) Maintain heat in the building; or

    (2) Shut off the water supply and drain all systems and appliances of water.

    However, if the building is protected by an automatic fire protective sprinkler system, you must use reasonable care to continue the water supply and maintain heat in the building for coverage to apply.

    b. In this peril, a plumbing system or household appliance does not include a sump, sump pump or related equipment or a roof drain, gutter, downspout or similar fixtures or equipment.

15. **Sudden And Accidental Damage From Artificially Generated Electrical Current.**

    This peril does not include loss to tubes, transistors, electronic components or circuitry that are a

part of appliances, fixtures, computers, home entertainment units or other types of electronic apparatus.

**16. Volcanic Eruption.**

This peril does not include loss caused by earthquake, land shock waves or tremors.

---

## SECTION I - EXCLUSIONS

A. We do not insure for loss caused directly or indirectly by any of the following. Such loss is excluded regardless of any other cause or event contributing concurrently or in any sequence to the loss. These exclusions apply whether or not the loss event results in widespread damage or affects a substantial area.

   1. **Ordinance or Law,** meaning any ordinance or law:

      a. Requiring or regulating the construction, demolition, remodeling, renovation or repair of property, including removal of any resulting debris. This exclusion A.1.a. does not apply to the amount of coverage that may be provided for under Additional Coverage 12. Ordinance or Law;

      b. The requirements of which result in a loss in value to property.

      c. Requiring any "insured" or others to test for, monitor, clean up, remove, contain, treat, detoxify or neutralize, or in any way respond to, or assess the effects of, pollutants.

         Pollutants means any solid, liquid, gaseous or thermal irritant or contaminant, including smoke, vapor, soot, fumes, acids, alkalis, chemicals and waste. Waste includes materials to be recycled, reconditioned or reclaimed.

      This exclusion A.1. applies whether or not the property has been physically damaged.

   2. **Earth Movement,** meaning:

      a. Earthquake including land shock waves or tremors before, during or after a volcanic eruption;

      b. Landslide; mudslide; or mudflow;

      c. Subsidence or sinkhole; or

      d. Any other earth movement including earth sinking, rising or shifting;

      caused by or resulting from human or animal forces or any act of nature, unless direct loss

by fire or explosion ensues and then we will pay only for the ensuing loss.

This Exclusion A.2. does not apply to loss by theft.

   3. **Water Damage,** meaning:

      a. Flood, surface water, waves, tidal water, overflow of a body of water, or spray from any of these, whether or not driven by wind;

      b. Water or water-borne material which backs up through sewers or drains or which overflows or is discharged from a sump, sump pump or related equipment; or

      c. Water or water-borne material below the surface of the ground, including water which exerts pressure on or seeps or leaks through a building, sidewalk, driveway, foundation, swimming pool or other structure;

      caused by or resulting from human or animal forces or any act of nature.

      Direct loss by fire, explosion or theft resulting from water damage is covered.

   4. **Power Failure,** meaning the failure of power or other utility service if the failure takes place off the "residence premises". But, if the failure results in a loss from a Peril Insured Against, on the "residence premises", we will pay for the loss caused by that peril.

   5. **Neglect,** meaning neglect of an "insured" to use all reasonable means to save and preserve property at and after the time of a loss.

   6. **War.** War includes the following and any consequence of any of the following:

      a. Undeclared war, civil war, insurrection, rebellion or revolution;

      b. Warlike act by a military force or military personnel; or

      c. Destruction, seizure or use for a military purpose.

Case ID: 190103305

HO-3 PA (10-07)

Discharge of a nuclear weapon will be deemed a warlike act even if accidental.

7. **Nuclear Hazard,** to the extent set forth in the Nuclear Hazard Clause of Section I - Conditions.

8. **Intentional Loss,** meaning any loss arising out of any act an "insured" commits or conspires to commit with the intent to cause a loss.

In the event of such loss, no "insured" is entitled to coverage, even "insureds" who did not commit or conspire to commit the act causing the loss.

9. **Governmental Action,** meaning the destruction, confiscation or seizure of property described in Coverage A, B or C by order of any governmental or public authority.

This exclusion does not apply to such acts ordered by any governmental or public authority that are taken at the time of a fire to prevent its spread, if the loss caused by fire would be covered under this policy.

10. **"Fungi", Other Microbes or Rot,** meaning any loss or cost resulting from, arising out of, caused by, consisting of, or related to, "fungi", other microbes or rot. This exclusion does not apply to:

    a. "Fungi", other microbes or rot remediation coverage that may be afforded under Ad-

ditional Coverage 16. Limited "Fungi", Other Microbes Or Rot Remediation; or

    b. "Fungi", other microbes or rot that results from fire or lightning.

B. We do not insure for loss to property described in Coverages A and B caused by any of the following. However, any ensuing loss to property described in Coverages A and B not excluded by any other provision in this policy is covered.

1. Weather conditions. However, this exclusion applies only if weather conditions contribute in any way with a cause or event excluded in A. above to produce the loss.

2. Acts or decisions, including the failure to act or decide, of any person, group, organization or governmental body.

3. Faulty, inadequate or defective:

    a. Planning, zoning, development, surveying, siting;

    b. Design, specifications, workmanship, repair, construction, renovation, remodeling, grading, compaction;

    c. Materials used in repair, construction, renovation or remodeling; or

    d. Maintenance;

of part or all of any property whether on or off the "residence premises".

## SECTION I - CONDITIONS

1. **Insurable Interest and Limit of Liability.** Even if more than one person has an insurable interest in the property covered, we will not be liable in any one loss:

    a. To an "insured" for more than the amount of such "insured's" interest at the time of loss; or

    b. For more than the applicable limit of liability.

2. **Duties After Loss.** In case of a loss to covered property, we have no duty to provide coverage under this policy if the failure to comply with the following duties is prejudicial to us. These duties must be performed either by you, an "insured" seeking coverage, or a representative of either.

    a. Give us prompt notice;

    b. Notify the police in case of loss by theft;

    c. Notify the credit card or electronic fund transfer card or access device company in case of loss as provided for in Additional Coverage 7.

Credit Card, Electronic Fund Transfer Card Or Access Device, Forgery And Counterfeit Money;

    d. Protect the property from further damage. If repairs to the property are required, you must:

       (1) Make reasonable and necessary repairs to protect the property; and

       (2) Keep an accurate record of repair expenses;

    e. Cooperate with us in the investigation of a claim;

    f. Prepare an inventory of damaged personal property showing the quantity, description, actual cash value and amount of loss. Attach all bills, receipts and related documents that justify the figures in the inventory;

    g. As often as we reasonably require:

HO-3 PA (10-07)

(1) Show the damaged property;

(2) Provide us with records and documents we request and permit us to make copies; and

(3) Submit to examination under oath, while not in the presence of another "insured", and sign the same;

h. Send to us, within 60 days after our request, your signed, sworn proof of loss which sets forth, to the best of your knowledge and belief:

(1) The time and cause of loss;

(2) The interest of all "insureds" and all others in the property involved and all liens on the property;

(3) Other insurance which may cover the loss;

(4) Changes in title or occupancy of the property during the term of the policy;

(5) Specifications of damaged buildings and detailed repair estimates;

(6) The inventory of damaged personal property described in f. above;

(7) Receipts for additional living expenses incurred and records that support the fair rental value loss; and

(8) Evidence or affidavit that supports a claim under Additional Coverage 7. Credit Card, Electronic Fund Transfer Card Or Access Device, Forgery And Counterfeit Money, stating the amount and cause of loss.

3. **Loss Settlement.** In this Condition 3., the terms "cost to repair or replace" and "replacement cost" do not include the increased costs incurred to comply with the enforcement of any ordinance or law, except to the extent that coverage for these increased costs is provided in Additional Coverage 12. Ordinance Or Law. Covered property losses are settled as follows:

a. Property of the following types:

(1) Personal property;

(2) Awnings, carpeting, household appliances, outdoor antennas and outdoor equipment, whether or not attached to buildings;

(3) Structures that are not buildings; and

(4) Grave markers, including mausoleums;

at actual cash value at the time of loss but not more than the amount required to repair or replace.

b. Buildings covered under Coverage A or B at replacement cost without deduction for depreciation, subject to the following:

(1) If, at the time of loss, the amount of insurance in this policy on the damaged building is 80% or more of the full replacement cost of the building immediately before the loss, we will pay the cost to repair or replace, after application of any deductible and without deduction for depreciation, but not more than the least of the following amounts:

(a) The limit of liability under this policy that applies to the building;

(b) The replacement cost of that part of the building damaged with material of like kind and quality and for like use; or

(c) The necessary amount actually spent to repair or replace the damaged building.

If the building is rebuilt at a new premises, the cost described in (b) above is limited to the cost which would have been incurred if the building had been built at the original premises.

(2) If, at the time of loss, the amount of insurance in this policy on the damaged building is less than 80% of the full replacement cost of the building immediately before the loss, we will pay the greater of the following amounts, but not more than the limit of liability under this policy that applies to the building:

(a) The actual cash value of that part of the building damaged; or

(b) That proportion of the cost to repair or replace, after application of any deductible and without deduction for depreciation, that part of the building damaged, which the total amount of insurance in this policy on the damaged building bears to 80% of the replacement cost of the building.

(3) To determine the amount of insurance required to equal 80% of the full replacement cost of the building immediately before the loss, do not include the value of:

(a) Excavations, footings, foundations, piers, or any other structures or devices that support all or part of the building, which are below the undersurface of the lowest basement floor;

(b) Those supports described in (a) above which are below the surface of the ground inside the foundation walls, if there is no basement; and

(c) Underground flues, pipes, wiring and drains.

(4) We will pay no more than the actual cash value of the damage until actual repair or replacement is complete. Once actual repair or replacement is complete, we will settle the loss as noted in **b.(1)** and **b.(2)** above.

However, if the cost to repair or replace the damage is less than $2,500, we will settle the loss as noted in **b.(1)** and **b.(2)** above whether or not actual repair or replacement is complete.

(5) You may disregard the replacement cost loss settlement provisions and make claim under this policy for loss to buildings on an actual cash value basis. You may then make claim for any additional liability according to the provisions of this Condition 3. Loss Settlement, provided you notify us of your intent to do so within 180 days after the date of loss.

4. **Loss Deductible.** Unless otherwise stated in this policy, the following deductible provision applies:

Subject to the policy limits that apply, we will pay only that part of the total of all loss payable under Section I that exceeds the deductible amount shown in the Declarations.

5. **Loss to a Pair or Set.** In case of loss to a pair or set we may elect to:

a. Repair or replace any part to restore the pair or set to its value before the loss; or

b. Pay the difference between actual cash value of the property before and after the loss.

6. **Loss Payment.** We will adjust all losses with you. We will pay you unless some other person is named in the policy or is legally entitled to receive payment. Loss will be payable 60 days after we receive your proof of loss and:

a. Reach an agreement with you;

b. There is an entry of a final judgment; or

c. There is a filing of an appraisal award with us.

7. **Appraisal.** If you and we fail to agree on the amount of loss, either may demand an appraisal of the loss. In this event, each party will choose a competent and impartial appraiser within 20 days after receiving a written request from the other. The two appraisers will choose an umpire. If they cannot agree upon an umpire within 15 days, you or we may request that the choice be made by a judge of a court of record in the state where the "residence premises" is located. The appraisers will separately set the amount of loss. If the appraisers submit a written report of an agreement to us, the amount agreed upon will be the amount of loss. If they fail to agree, they will submit their differences to the umpire. A decision agreed to by any two will set the amount of loss.

Each party will:

a. Pay its own appraiser; and

b. Bear the other expenses of the appraisal and umpire equally.

8. **Other Insurance and Service Agreement.** If a loss covered by this policy is also covered by:

a. Other insurance, we will pay only the proportion of the loss that the limit of liability that applies under this policy bears to the total amount of insurance covering the loss; or

b. A service agreement, the coverage provided under this policy is excess over any amounts payable under any such agreement. Service agreement means a service plan, property restoration plan, home warranty or other similar service warranty agreement, even if it is characterized as insurance.

9. **Suit Against Us.** No action can be brought against us unless there has been full compliance with all of the terms under Section I of this policy and the action is started within two years after the date of loss.

10. **Our Option.** If we give you written notice within 30 days after we receive your signed, sworn proof of loss, we may repair or replace any part of the damaged property with material or property of like kind and quality.

11. **Abandonment of Property.** We need not accept any property abandoned by an "insured".

12. **Mortgage Clause.**

a. If a mortgagee is named in this policy, any loss payable under Coverage A or B will be paid to the mortgagee and you, as interests appear. If more than one mortgagee is

HO-3 PA (10-07)

named, the order of payment will be the same as the order of precedence of the mortgages.

**b.** If we deny your claim, that denial will not apply to a valid claim of the mortgagee, if the mortgagee:

(1) Notifies us of any change in ownership, occupancy or substantial change in risk of which the mortgagee is aware;

(2) Pays any premium due under this policy on demand if you have neglected to pay the premium; and

(3) Submits a signed, sworn statement of loss within 60 days after receiving notice from us of your failure to do so. Policy conditions relating to Appraisal, Suit Against Us and Loss Payment apply to the mortgagee.

**c.** If we decide to cancel or not to renew this policy, the mortgagee will be notified at least 10 days before the date cancellation or nonrenewal takes effect.

**d.** If we pay the mortgagee for any loss and deny payment to you:

(1) We are subrogated to all the rights of the mortgagee granted under the mortgage on the property; or

(2) At our option, we may pay to the mortgagee the whole principal on the mortgage plus any accrued interest. In this event, we will receive a full assignment and transfer of the mortgage and all securities held as collateral to the mortgage debt.

**e.** Subrogation will not impair the right of the mortgagee to recover the full amount of the mortgagee's claim.

**13. No Benefit to Bailee.** We will not recognize any assignment or grant any coverage that benefits a person or organization holding, storing or moving property for a fee regardless of any other provision of this policy.

**14. Nuclear Hazard Clause.**

**a.** "Nuclear Hazard" means any nuclear reaction, radiation, or radioactive contamination,



all whether controlled or uncontrolled or however caused, or any consequence of any of these.

**b.** Loss caused by the nuclear hazard will not be considered loss caused by fire, explosion, or smoke, whether these perils are specifically named in or otherwise included within the Perils Insured Against.

**c.** This policy does not apply under Section I to loss caused directly or indirectly by nuclear hazard, except that direct loss by fire resulting from the nuclear hazard is covered.

**15. Recovered Property.** If you or we recover any property for which we have made payment under this policy, you or we will notify the other of the recovery. At your option, the property will be returned to or retained by you or it will become our property. If the recovered property is returned to or retained by you, the loss payment will be adjusted based on the amount you received for the recovered property.

**16. Volcanic Eruption Period.** One or more volcanic eruptions that occur within a 72-hour period will be considered as one volcanic eruption.

**17. Policy Period.** This policy applies only to loss which occurs during the policy period.

**18. Concealment or Fraud.** We provide coverage to no "insureds" under this policy if, whether before or after a loss, an "insured" has:

**a.** Intentionally concealed or misrepresented any material fact or circumstance;

**b.** Engaged in fraudulent conduct; or

**c.** Made false statements;

relating to this insurance.

**19. Premises Alarm or Fire Protection System.** (Applies only if PROTECTIVE DEVICES CREDIT is shown in the Declarations.)

We acknowledge the installation of an alarm system and/or an automatic sprinkler system approved by us on the "residence premises". You agree to maintain this system or systems in working order and to let us know promptly of any change, including removal, made to the system(s).

---

**SECTION II - LIABILITY COVERAGES**

---

**COVERAGE E - PERSONAL LIABILITY**

If a claim is made or a suit is brought against an "insured" for damages because of "bodily injury" or

"property damage" caused by an "occurrence" to which this coverage applies, we will:

HO-3 PA (10-07)

Case ID: 190103305

HO-3 PA (10-07)

1. Pay up to our limit of liability for the damages for which an "insured" is legally liable; and

2. Provide a defense at our expense by counsel of our choice, even if the suit is groundless, false or fraudulent. We may investigate and settle any claim or suit that we decide is appropriate. Our duty to settle or defend ends when our limit of liability for the "occurrence" is exhausted by the payment of a judgment or settlement.

### COVERAGE F - MEDICAL PAYMENTS TO OTHERS

We will pay the necessary medical expenses that are incurred or medically ascertained within three years from the date of an accident causing "bodily injury". Medical expenses means reasonable charges for medical, surgical, x-ray, dental, ambulance, hospital, professional nursing and prosthetic devices. Medical expenses do not include expenses for funeral services. This coverage does not apply to you or regular residents of your household except "residence employees". As to others, this coverage applies only:

1. To a person on the "insured location" with the permission of an "insured"; or

2. To a person off the "insured location", if the "bodily injury";

a. Arises out of a condition on the "insured location" or the ways immediately adjoining;

b. Is caused by the activities of an "insured";

c. Is caused by a "residence employee" in the course of the "residence employee's" employment by an "insured"; or

d. Is caused by an animal owned by or in the care of an "insured".

---

## SECTION II - ADDITIONAL COVERAGES

We cover the following in addition to the limits of liability:

1. **Claim Expenses.** We pay:

   a. Expenses we incur and costs taxed against an "insured" in any suit we defend;

   b. Premiums on bonds required in a suit we defend, but not for bond amounts more than the Coverage E limit of liability. We need not apply for or furnish any bond;

   c. Reasonable expenses incurred by an "insured" at our request, including actual loss of earnings (but not loss of other income) up to $250 per day, for assisting us in the investigation or defense of a claim or suit;

   d. Interest on the entire judgment which accrues after entry of the judgment and before we pay or tender, or deposit in court that part of the judgment which does not exceed the limit of liability that applies; and

   e. Prejudgment interest awarded against the "insured" on that part of the judgment we pay. Any prejudgment interest awarded against the "insured" is subject to the applicable Pennsylvania Rules of Civil Procedure.

2. **First Aid Expenses.** We will pay expenses for first aid to others incurred by an "insured" for "bodily injury" covered under this policy. We will not pay for first aid to an "insured".

3. **Damage to Property of Others.** We will pay, at replacement cost, up to $1,000 per "occurrence" for "property damage" to property of others caused by an "insured".

   We will not pay for "property damage":

   a. To the extent of any amount recoverable under Section I;

   b. Caused intentionally by an "insured" who is 13 years of age or older;

   c. To property owned by an "insured";

   d. To property owned by or rented to a tenant of an "insured" or a resident in your household; or

   e. Arising out of:

      (1) A "business" engaged in by an "insured";

      (2) Any act or omission in connection with a premises owned, rented or controlled by an "insured", other than the "insured location"; or

      (3) The ownership, maintenance, occupancy, operation, use, loading or unloading of aircraft, hovercraft, watercraft or "motor vehicles".

      This exclusion e.(3) does not apply to a "motor vehicle" that:

         (a) Is designed for recreational use off public roads;

Case ID: 190103305

HO-3 PA (10-07)

(b) Is not owned by an "insured"; and

(c) At the time and place of an "occurrence", is not required by law, or regulation issued by a government agency, to have been registered for it to be used at the place of the "occurrence".

4. **Loss Assessment.** We will pay up to $1,000 for your share of loss assessment charged against you, as owner or tenant of the "residence premises", during the policy period by a corporation or association of property owners, when the assessment is made as a result of:

a. "Bodily injury" or "property damage" not excluded under Section II of this policy; or

b. Liability for an act of a director, officer or trustee in the capacity as a director, officer or trustee, provided such person:

(1) Is elected by the members of a corporation or association of property owners; and

(2) Serves without deriving any income from the exercise of duties which are solely on behalf of a corporation or association of property owners.

Section II Condition 9. Policy Period, does not apply to this coverage.

Regardless of the number of assessments, the limit of $1,000 is the most we will pay for loss arising out of:

a. One accident, including continuous or repeated exposure to substantially the same general harmful condition; or

b. A covered act of a director, officer or trustee. An act involving more than one director, officer or trustee is considered to be a single act.

We do not cover assessments charged against you or a corporation or association of property owners by any governmental body.

---

## SECTION II - EXCLUSIONS

**A. Coverage E - Personal Liability and Coverage F - Medical Payments to Others.**

Coverages E and F do not apply to "bodily injury" or "property damage":

1. Which is expected or intended by an "insured" even if the resulting "bodily injury" or "property damage":

a. Is of a different kind, quality or degree than initially expected or intended; or

b. Is sustained by a different person, entity, real or personal property, than initially expected or intended.

However, this exclusion A.1. does not apply to "bodily injury" resulting from the use of reasonable force by an "insured" to protect persons or property.

2. Arising out of or in connection with a "business" conducted from an "insured location" or engaged in by an "insured", whether or not the "business" is owned or operated by an "insured" or employs an "insured". This exclusion A.2. applies to, but is not limited to, an act or omission, regardless of its nature or circumstance, involving a service or duty rendered, promised, owed, or implied to be provided because of the nature of the "business".

This exclusion A.2. does not apply to:

a. The rental or holding for rental of an "insured location";

(1) On an occasional basis if used only as a residence;

(2) In part for use only as a residence, unless a single family unit is intended for use by the occupying family to lodge more than two roomers or boarders;

(3) In part, as an office, school, studio or private garage;

(4) Shown in the Declarations as an ADDITIONAL RESIDENCE RENTED TO OTHERS; or

(5) Shown in the Declarations as a STRUCTURE RENTED TO OTHERS.

b. An "insured" under the age of 21 years involved in a part-time or occasional, self-employed "business" with no employees; or

c. One or more activities, for which no "insured" receives more than $2,000 in total compensation for the consecutive 12 months before an "occurrence";

3. Arising out of the rendering of or failure to render professional services;

4. Arising out of a premises:



HO-3 PA (10-07)

Page 19 of 26

Case ID: 190103305

a. Owned by an "insured";

b. Rented to an "insured"; or

c. Rented to others by an "insured";

that is not an "insured location";

5. Caused directly or indirectly by war, including the following and any consequence of any of the following:

a. Undeclared war, civil war, insurrection, rebellion or revolution;

b. Warlike act by a military force or military personnel; or

c. Destruction, seizure or use for a military purpose.

Discharge of a nuclear weapon will be deemed a warlike act even if accidental;

6. Arising out of the transmission of a communicable disease by an "insured";

7. Arising out of sexual molestation, corporal punishment or physical or mental abuse;

8. Arising out of the use, sale, manufacture, delivery, transfer or possession by any person of a Controlled Substance(s) as defined by the Federal Food and Drug Law at 21 U.S.C.A. Sections 811 and 812. Controlled Substances include but are not limited to cocaine, LSD, marijuana and all narcotic drugs. However, this exclusion does not apply to the legitimate use of prescription drugs by a person following the orders of a licensed physician;

9. Arising out of, consisting of, caused by, contributed to, aggravated by or resulting from, whether directly or indirectly, by "fungi", other microbes or rot. This includes:

a. The cost of testing, monitoring, abating, mitigating, removing, remediating or disposing of "fungi", other microbes or rot;

b. Any supervision, instruction, disclosures, or failures to disclose, recommendations, warnings, or advice given, or that allegedly should have been given, in connection with "bodily injury" or "property damage" consisting of, arising out of, caused by, contributed to, aggravated by or resulting from, whether directly or indirectly, by "fungi", other microbes or rot, or the activities described in 9.a. above;

c. Any obligation to share with or repay another who must pay damages because of "bodily injury" or "property damage" damage of the type described in this exclusion. This applies regardless of any other cause that contributed

directly or indirectly, concurrently or in any sequence to the "bodily injury" or "property damage"; and

d. Liability imposed upon any "insured" by any governmental authority for "bodily injury" or "property damage" consisting of, arising out of, caused by, contributed to, aggravated by or resulting from, whether directly or indirectly, by "fungi", other microbes or rot; or

10. Arising out of, resulting from, caused by or contributed to by the escape or release of fuel from a "fuel system". This exclusion applies, but is not limited to:

a. Any supervision, instructions, recommendations, warnings or advice given in connection with the above;

b. Any obligation to share damages, losses, costs, payments or expenses with or repay someone else who must make payment because of such "bodily injury" or "property damage", damages, loss, cost, payment or expense; or

c. Any request, order or requirement to test for, monitor, abate, mitigate, remediate, contain, remove, dispose of, or in any way respond to or assess the effects of fuel in any form.

However, this exclusion does not apply to "bodily injury" or "property damage" arising out of fire or explosion that results from such escaped or released fuel.

11. Any loss, cost, payment or expense, including, but not limited to, defense and investigation, of any kind arising out of, resulting from, caused by or contributed to by the actual or alleged presence or actual, alleged or threatened dispersal, release, ingestion, inhalation or absorption of lead, lead pigment, lead compounds or lead in any form which is or was contained or incorporated into any material or substance. This exclusion applies, but is not limited to:

a. Any supervision, instructions, recommendations, warnings or advice given in connection with the above;

b. Any obligation to share damages, losses, costs, payments or expenses with or repay someone else who must make payment because of such "bodily injury" or "property damage", damages, loss, cost, payment or expense; or

c. Any request, order or requirement to test for, monitor, abate, mitigate, remediate, contain, remove, dispose of, or in any way respond to or assess the effects of lead, lead pigment,

Case ID: 190103305

lead compounds or materials or substances containing lead in any form.

**B. Coverage E- Personal Liability and Coverage F- Medical Payments to Others.**

Coverages E and F also do not apply to:

1. "Motor Vehicle Liability" unless, at the time of an "occurrence", the involved "motor vehicle" is:

   a. In dead storage on an "insured location";

   b. Used to service an "insured's" residence;

   c. Designed to assist the handicapped and, at the time of an "occurrence", it is:

      (1) Being used to assist a handicapped person; or

      (2) Parked on an "insured location";

   d. Designed for recreational use off public roads and:

      (1) Not owned by an "insured"; or

      (2) Owned by an "insured", provided the "occurrence" takes place on an "insured location" as defined in Definitions paragraphs 8.a., b., d., e. or h.; or

   e. A motorized golf cart that is owned by an "insured", designed to carry up to 4 persons, not built or modified after manufacture to exceed a speed of 25 miles per hour on level ground and, at the time of an "occurrence", is within the legal boundaries of:

      (1) A golfing facility and is parked or stored there, or being used by an "insured" to:

         (a) Play the game of golf or for other recreational or leisure activity allowed by the facility;

         (b) Travel to or from an area where "motor vehicles" or golf carts are parked or stored; or

         (c) Cross public roads at designated points to access other parts of the golfing facility; or

      (2) A private residential community, including its public roads upon which a motorized golf cart can legally travel, which is subject to the authority of a property owners association and contains an "insured's" residence.

   However this exception to the exclusion from coverage does not apply if, at the time and place of an "occurrence", the involved "motor vehicle":

   a. Is registered for use on public roads or property;

   b. Is not registered for use on public roads or property, but such registration is required by a law, or regulation issued by a government agency, for it to be lawfully used at the place of the "occurrence"; or

   c. Is being:

      (1) Operated in, or practicing for, any prearranged or organized race, speed contest or other competition;

      (2) Rented to others;

      (3) Used to carry persons or cargo for a charge; or

      (4) Used for any other "business" purpose except for a motorized golf cart used for incidental "business" entertainment while on a golfing facility.

2. "Watercraft liability" unless, at the time of an "occurrence", the involved watercraft:

   a. Is stored;

   b. Is a sailing vessel, with or without auxiliary power that is:

      (1) Less than 26 feet in overall length; or

      (2) 26 feet or more in overall length and not owned by or rented to an "insured";

   c. Is not a sailing vessel and is powered by:

      (1) An inboard or inboard-outdrive engine or motor, including those that power a water jet pump, of:

         (a) 50 horsepower or less and not owned by an "insured"; or

         (b) More than 50 horsepower and not owned by or rented to an "insured"; or

      (2) One or more outboard engines or motors with:

         (a) 25 total horsepower or less; or

         (b) More than 25 horsepower if the outboard engine or motor is not owned by an "insured";

         (c) More than 25 horsepower if the outboard engine or motor is owned by an "insured" who acquired it during the policy period; or

         (d) More than 25 horsepower if the outboard engine or motor is owned by an

Case ID: 190103305

"insured" who acquired it before the policy period, but only if:

(1) You declare them at policy inception; or

(2) Your intent to insure them is reported to us in writing within 45 days after you acquire them.

The coverages in (c) and (d) above apply for the policy period.

Horsepower means the maximum power rating assigned to the engine or motor by the manufacturer.

However this exception to the exclusion from coverage does not apply if, at the time and place of an "occurrence", the involved watercraft is being:

a. Operated in, or practicing for, any prearranged or organized race, speed contest or other competition. This exclusion does not apply to a sailing vessel or a predicted log cruise;

b. Rented to others;

c. Used to carry persons or cargo for a charge; or

d. Used for any other "business" purpose.

3. "Aircraft Liability".

4. "Hovercraft Liability".

Exclusions A.4., B.1., B.2., B.3. and B.4. do not apply to "bodily injury" to a "residence employee" arising out of and in the course of the "residence employee's" employment by an "insured".

C. Coverage E - Personal Liability.

Coverage E does not apply to:

1. Liability:

a. For any loss assessment charged against you as a member of an association, corporation or community of property owners, except as provided in Additional Coverage 4. Loss Assessment;

b. Under any contract or agreement entered into by an "insured". However, this exclusion does not apply to written contracts:

(1) That directly relate to the ownership, maintenance or use of an "insured location"; or

(2) In which the liability of others is assumed by the "insured" prior to an "occurrence";

unless excluded in a. above or elsewhere in this policy;

2. "Property damage" to property owned by the "insured". This includes costs or expenses incurred by an "insured" or others to repair, replace, enhance, restore or maintain such property to prevent injury to a person or damage to property of others, whether on or away from an "insured location".

3. "Property damage" to property rented to, occupied or used by or in the care of the "insured." This exclusion does not apply to "property damage" caused by fire, smoke or explosion;

4. "Bodily injury" to any person eligible to receive any benefits voluntarily provided or required to be provided by an "insured" under any:

a. Workers' compensation law;

b. Non-occupational disability law; or

c. Occupational disease law;

5. "Bodily injury" or "property damage" for which an "insured" under this policy:

a. Is also an insured under a nuclear energy liability policy issued by the:

(1) Nuclear Energy Liability Insurance Association;

(2) Mutual Atomic Energy Liability Underwriters;

(3) Nuclear Insurance Association of Canada;

or any of their successors; or

b. Would be an insured under that policy but for the exhaustion of its limit of liability;

6. "Bodily injury" to you or an "insured" as defined in Definition 7.a. or b.

This exclusion also applies to any claim made or suit brought against you or an "insured":

a. To repay; or

b. Share damages with;

another person who may be obligated to pay damages because of "bodily injury" to an "insured"; or

7. "Bodily injury" to an "employee", "residence employee" or a temporary employee furnished to the "insured" to substitute for a permanent "residence employee" arising out of or in the course of the employee's employment by any Additional Insured named in the Declarations.

Case ID: 190103305

HO-3 PA (10-07)

**D. Coverage F - Medical Payments to Others.**

Coverage F does not apply to "bodily injury":

1. To a "residence employee" if the "bodily injury":

   a. Occurs off the "insured location"; and

   b. Does not arise out of or in the course of the "residence employee's" employment by an "insured";

2. To any person eligible to receive benefits voluntarily provided or required to be provided under any:

   a. Workers' compensation law;

   b. Non-occupational disability law; or

   c. Occupational disease law;

3. From any:

   a. Nuclear reaction;

   b. Nuclear radiation; or

   c. Radioactive contamination;

   all whether controlled or uncontrolled or however caused; or

   d. Any consequence of any of these; or

4. To any person, other than a "residence employee" of an "insured", regularly residing on any part of the "insured location".

## SECTION II - CONDITIONS

1. **Limit of Liability.** Our total liability under Coverage E for all damages resulting from any one "occurrence" will not be more than the Coverage E limit of liability shown in the Declarations. This limit is the same regardless of the number of "insureds", claims made or persons injured. All "bodily injury" and "property damage" resulting from any one accident or from continuous or repeated exposure to substantially the same general harmful conditions shall be considered to be the result of one "occurrence".

   Our total liability under Coverage F for all medical expense payable for "bodily injury" to one person as the result of one "occurrence" will not be more than the Coverage F limit of liability shown in the Declarations.

2. **Severability of Insurance.** This insurance applies separately to each "insured". This condition will not increase our limit of liability for any one "occurrence".

3. **Duties After "Occurrence".** In case of an "occurrence", you or another "insured" will perform the following duties that apply. We have no duty to provide coverage under this policy if your failure to comply with the following duties is prejudicial to us. You will help us by seeing that these duties are performed:

   a. Give us written notice as soon as is practical, which sets forth:

      (1) The identity of the policy and the named "insured" shown in the Declarations;

      (2) Reasonably available information on the time, place and circumstances of the "occurrence"; and



      (3) Names and addresses of any claimants and witnesses;

   b. Cooperate with us in the investigation, settlement or defense of any claim or suit;

   c. Promptly forward to us every notice, demand, summons or other process relating to the "occurrence";

   d. At our request, help us:

      (1) To make settlement;

      (2) To enforce any right of contribution or indemnity against any person or organization who may be liable to an "insured";

      (3) With the conduct of suits and attend hearings and trials; and

      (4) To secure and give evidence and obtain the attendance of witnesses;

   e. With respect to Additional Coverage 3. Damage to Property of Others, submit to us within 60 days after the loss, a sworn statement of loss and show the damaged property, if in an "insured's" control;

   f. No "insured" shall, except at such "insured's" own cost, voluntarily make payment, assume obligation or incur expense other than for first aid to others at the time of the "bodily injury".

4. **Duties of an Injured Person - Coverage F - Medical Payments to Others.**

   a. The injured person or someone acting for the injured person will:

      (1) Give us written proof of claim, under oath if required, as soon as is practical; and

(2) Authorize us to obtain copies of medical reports and records.

b. The injured person will submit to a physical exam by a doctor of our choice when and as often as we reasonably require.

5. **Payment of Claim - Coverage F - Medical Payments to Others.** Payment under this coverage is not an admission of liability by an "insured" or us.

6. **Suit Against Us.** No action can be brought against us unless there has been full compliance with all of the terms under this Section II.

No one will have the right to join us as a party to any action against an "insured". Also, no action with respect to Coverage E can be brought against us until the obligation of such "insured" has been determined by final judgment or agreement signed by us.

7. **Bankruptcy of an Insured.** Bankruptcy or insolvency of an "insured" will not relieve us of our obligations under this policy.

8. **Other Insurance.** This insurance is excess over other valid and collectible insurance except insurance written specifically to cover as excess over the limits of liability that apply in this policy.

9. **Policy Period.** This policy applies only to "bodily injury" or "property damage" which occurs during the policy period.

10. **Concealment or Fraud.** We do not provide coverage to an "insured" who, whether before or after a loss, has:

a. Intentionally concealed or misrepresented any material fact or circumstance;

b. Engaged in fraudulent conduct; or

c. Made false statements;

relating to this insurance.

## SECTIONS I AND II - CONDITIONS

1. **Liberalization Clause.** If we make a change which broadens coverage under this edition of our policy without additional premium charge, that change will automatically apply to your insurance as of the date we implement the change in your state, provided that this implementation date falls within 60 days prior to or during the policy period stated in the Declarations.

This Liberalization Clause does not apply to changes implemented with a general program revision that includes both broadenings and restrictions of coverage, whether that general program revision is implemented through introduction of:

a. A subsequent edition of this policy form; or

b. An amendatory endorsement

2. **Waiver or Change of Policy Provisions.** A waiver or change of a provision of this policy must be in writing by us to be valid. Our request for an appraisal or examination will not waive any of our rights.

The coverage provided and the premium charged are based on information you have given us. You agree to cooperate with us in determining if this information is correct and complete and to inform us of any change in title, use or occupancy of the "residence premises".

You agree that, if within 60 days of the policy effective date this information changes, is incorrect or incomplete, we may adjust your coverage and premium accordingly by giving you notice. This notice may be delivered to you, or mailed to you at your mailing address shown in the Declarations. The notice will contain the changed, incorrect or incomplete information along with the resulting premium change.

3. **Cancellation.**

a. You may cancel this policy at any time by returning it to us or by letting us know in writing of the date cancellation is to take effect.

b. We may cancel this policy only for the reasons stated below by notifying the "insured" named in the Declarations in writing of the date cancellation takes effect. This cancellation notice may be delivered to or mailed to the "insured" named in the Declarations at the mailing address shown in the policy or at a forwarding address. Proof of mailing will be sufficient proof of notice.

(1) When this policy has been in effect for less than 60 days and is not a renewal with us, we may cancel for any reason by notifying the "insured" named in the Declarations at least 30 days before the cancellation takes effect.

HO-3 PA (10-07)

(2) When this policy has been in effect for 60 days or more, or at any time if it is a renewal with us, we may cancel only for one or more of the following reasons by notifying the "insured" named in the Declarations at least 30 days prior to the proposed cancellation date:

(a) This policy was obtained through material misrepresentation, fraudulent statements, omissions or concealment of fact material to the acceptance of the risk or to the hazard assumed by us;

(b) There has been a substantial change or increase in hazard in the risk assumed by us subsequent to the date the policy was issued;

(c) There is a substantial increase in hazard insured against by reason of willful or negligent acts or omissions by the "insured";

(d) The "insured" has failed to pay the premium by the due date, whether payable to us or to our agent or under any finance or credit plan; or

(e) For any other reason approved by the Pennsylvania Insurance Commissioner.

This provision shall not apply if the named "insured" has demonstrated by some overt action to us or to our agent that the "insured" wishes the policy to be cancelled.

Delivery of such written notice by us to the "insured" named in the Declarations at the mailing address shown in the policy or at a forwarding address shall be equivalent to mailing.

c. When this policy is canceled, the premium for the period from the date of cancellation to the expiration date will be refunded pro rata.

d. If the return premium is not refunded with the notice of cancellation or when this policy is returned to us, we will refund it within a reasonable time after the date cancellation takes effect.

4. **Nonrenewal.** We will not fail to renew this policy except for one of the reasons referred to in the Cancellation condition. We may refuse to renew for one of the listed reasons by mailing to the "insured" named in the Declarations at the mailing address shown in the policy or at a forwarding address, written notice at least 30 days prior to the expiration date of this policy. We will also mail a

copy of the notice to any Additional Insured named in the Declarations.

This provision does not apply if:

a. We have indicated our willingness to renew and the "insured" has failed to pay the premium by the due date; or

b. The named "insured" has indicated to us or our agent that the "insured" does not wish the policy to be renewed.

Delivery of such written notice by us to the "insured" named in the Declarations at the mailing address shown in the policy or at a forwarding address shall be equivalent to mailing.

5. **Assignment.** Assignment of this policy will not be valid unless we give our written consent.

6. **Subrogation.** An "insured" may waive in writing before a loss all rights of recovery against any person. If not waived, we may require an assignment of rights of recovery for a loss to the extent that payment is made by us.

If an assignment is sought, an "insured" must sign and deliver all related papers and cooperate with us.

Subrogation does not apply under Section II to Medical Payments to Others or Damage to Property of Others.

7. **Death.** If any person named in the Declarations or the spouse, if a resident of the same household, dies:

a. We insure the legal representative of the deceased but only with respect to the premises and property of the deceased covered under the policy at the time of death;

b. Insurance under this policy will continue as provided in (1) or (2) below, whichever is later:

(1) For 180 days after your death regardless of the policy period shown in the Declarations, unless your premises and property, covered under the policy at the time of your death, is sold prior to that date; or

(2) Until the end of the policy period shown in the Declarations, unless your premises and property, covered under the policy at the time of your death, is sold prior to that date.

Coverage during the period of time after your death is subject to all the provisions of this policy including payment of any premium due for the policy period shown in the Declarations and any extension of that period;

HO-3 PA (10-07)

HO-3 PA (10-07)

c.  "Insured" includes:

    (1)  An "insured" who is a member of your household at the time of your death, but only while a resident of the "residence premises"; and

(2)  With respect to your property, the person having proper temporary custody of the property until appointment and qualification of a legal representative.

HO-85 PA (10-17)

THIS ENDORSEMENT CHANGES THE POLICY. PLEASE READ IT CAREFULLY.

## ENHANCED HOME PACKAGE
### FORMS HO-2 AND HO-3 ONLY

**DEFINITIONS**

Under **10.** "Occurrence", the following sentence is added:

"Occurrence" also means an offense, including a series of related offenses, committed during the policy period that results in "personal injury".

The following is added:

**14.** "Personal injury" means injury, other than "bodily injury", caused by any of the following offenses committed during the policy period:

    **a.** False arrest, detention or imprisonment;

    **b.** Malicious prosecution;

    **c.** The wrongful eviction from, wrongful entry into, or invasion of the right of private occupancy of a room, dwelling or premises that a person occupies, committed by or on behalf of its owner, landlord or lessor;

    **d.** Oral, written or electronic publication of material that slanders or libels a person or organization or disparages a person's or organization's goods, products or services; or

    **e.** Oral, written or electronic publication of material that violates a person's right of privacy.

**SECTION I – PROPERTY COVERAGES**

**COVERAGE C – PERSONAL PROPERTY**

The Coverage C limit shown on the Declarations is increased to 70% of the limit shown for COVERAGE A - DWELLING.

**Special Limits of Liability**

The special limits shown in the policy for each category are increased as follows:

    **a.** $100 additional on money, bank notes, bullion, gold other than goldware, silver other than silverware, platinum other than platinumware, coins, medals, scrip, stored value cards and smart cards.

    **b.** $1,500 additional on securities, accounts, deeds, evidence of debt, letters of credit, notes other than bank notes, manuscripts, personal records, passports, tickets and stamps. This dollar limit applies to these categories regardless of the medium (such as paper or computer software) on which the material exists.

This limit includes the cost to research, replace or restore the information from the lost or damaged material.

    **c.** $1,500 additional on watercraft of all types, including their trailers, furnishings, equipment and outboard engines or motors.

    **d.** $1,500 additional on trailers or semi-trailers not used with watercraft of all types.

    **e.** $1,500 additional for loss by theft, misplacing or losing of jewelry, watches, furs, precious and semiprecious stones.

    **f.** $1,000 additional for loss by theft, misplacing or losing of firearms and related equipment.

    **g.** $1,500 additional for loss by theft, misplacing or losing of silverware, silver-plated ware, goldware, gold-plated ware, platinumware, platinum-plated ware and pewterware. This includes flatware, hollowware, tea sets, trays and trophies made of or including silver, gold, platinum or pewter.

    **h.** $500 additional on property, on the "residence premises", used primarily for "business" purposes.

    **i.** $250 additional on property, away from the "residence premises", used primarily for "business" purposes. However, this limit does not apply to loss to electronic apparatus and accessories described in category j. below.

    **j.** $500 additional on electronic apparatus and accessories, while in or upon a "motor vehicle", but only if the apparatus is equipped to be operated by power from the "motor vehicle's" electrical system while still capable of being operated by other power sources.

    **k.** $250 additional on tapes, records, discs or other media that can be used with any electronic apparatus, while in or upon a "motor vehicle".

**SECTION I – ADDITIONAL COVERAGES**

The following Additional Coverages are added:

**Lock Replacement Coverage.** We will pay you an amount not to exceed $250 that you incur in changing the locks on your "residence premises" when your keys have been stolen. The theft of keys must be reported to the police for this additional coverage to apply.

No deductible applies to this additional coverage.

© 2017 The Travelers Indemnity Company. All rights reserved.
Includes copyrighted material of Insurance Services Office, Inc. with its permission.

HO-85 PA (10-17)

HO-85 PA (10-17)

**Reward Coverage.** We will pay you an amount, not to exceed $250, that you have incurred in the payment of rewards for information leading to the return of stolen articles or the arrest and conviction of any person(s) who have stolen articles and/or damaged any of your covered property.

**Water Back-Up And Sump Discharge Or Overflow.**

**A. Coverage**

We will pay up to the limit of liability shown in the Declarations for this coverage, for direct physical loss, to property covered under Section I caused by water, or water-borne material, which:

1. Enters through or backs up from a sewer or drain; or

2. Overflows or is discharged from a:
   a. Sump, sump pump;
   b. Related equipment; or
   c. Any other system designed to remove subsurface water which is drained from the foundation area

   located within the dwelling or other building structures on the "residence premises" even if such overflow or discharge results from mechanical breakdown.

   This Additional Coverage does not apply to:

   a. Direct physical loss of the sump, sump pump, related equipment, or other system designed to remove subsurface water which is caused by mechanical breakdown; or

   b. Loss caused as a direct or indirect result of flood, surface water, storm surge, waves, wave wash, tidal water, tsunami, seiche, overflow of a body of water, or spray from any of these, whether or not a result of precipitation or driven by wind.

   This Additional Coverage does not increase the limits of liability for Coverages A, B, C, or D stated in the Declarations.

**B. SECTION I – PERILS INSURED AGAINST**

With respect to the coverage described in A. above, in Form HO-3 paragraph 2.c.(6)(b) under Coverage A – Dwelling And Coverage B – Other Structures, and in Form HO-15 paragraph 1.c.(5)(b) is deleted and replaced by the following:

Latent defect, inherent vice, or any quality in property that causes it to damage or destroy itself;

**C. SECTION I – EXCLUSIONS**

3. **Water Damage.** Paragraph b. does not apply to the extent that coverage is afforded under this Additional Coverage.

4. **Power Failure** does not apply to the extent that coverage is afforded under this Additional Coverage.

The following Additional Coverages are changed as follows:

5. **Fire Department Service Charge.**

   We agree to increase the limit of liability that applies to this additional coverage by the amount of $250.

7. **Credit Card, Fund Transfer Card, Forgery and Counterfeit Money.**

   We agree to increase the limit of liability that applies to this additional coverage by the amount of $1,500.

8. **Loss Assessment.**

   We agree to increase the limit of liability that applies to this additional coverage by the amount of $4,000.

**SECTION I – CONDITIONS**

3. **Loss Settlement** is deleted and replaced by the following:

3. **Loss Settlement.** In this Condition 3., the terms "cost to repair or replace" and "replacement cost" do not include the "increased" costs incurred to comply with the enforcement of any ordinance or law, except to the extent that coverage for these increased costs is provided in Additional Coverage 12. Ordinance Or Law. Covered property losses are settled as follows:

   a. Property of the following type are settled at replacement cost at the time of loss:
      (1) Personal property; and
      (2) Awnings, carpeting, household appliances, outdoor antennas and outdoor equipment;
      whether or not attached to buildings;

   Replacement cost loss settlement will also apply to the following articles or classes of property if they are separately described and specifically insured in this policy and not subject to agreed value loss settlement:
      (1) Jewelry;
      (2) Furs and garments:
         (a) Trimmed with fur; or
         (b) Consisting principally of fur;
      (3) Cameras, projection machines, films and related articles of equipment;

© 2017 The Travelers Indemnity Company. All rights reserved.
Includes copyrighted material of Insurance Services Office, Inc. with its permission.

(4) Musical equipment and related articles of equipment;

(5) Silverware, silver-plated ware, goldware, gold-plated ware and pewterware, but excluding:

    (a) Pens or pencils;

    (b) Flasks;

    (c) Smoking implements; or

    (d) Jewelry; and

(6) Golfer's equipment meaning golf clubs, golf clothing and golf equipment.

Replacement cost loss settlement will not apply to other classes of property separately described and specifically insured.

We will pay no more than the least of the following amounts:

(1) Replacement cost at the time of loss without deduction for depreciation;

(2) The full cost of repair at the time of loss;

(3) The limit of liability that applies to Coverage C, if applicable;

(4) Any applicable special limits of liability stated in this policy; or

(5) For loss to any item separately described and specifically insured in this policy, the limit of liability that applies to the item.

If the cost to repair or replace the property described in a. above is more than $2,500, we will pay no more than the actual cash value for the loss until the actual repair or replacement is complete.

You may make a claim for loss on an actual cash value basis and then make claim for any additional liability in accordance with this endorsement provided you notify us of your intent to do so within 180 days after the date of loss.

Property listed below is not eligible for replacement cost settlement. We will not pay more than the actual cash value at the time of loss or the amount required to repair or replace, whichever is less, for any of the following:

(1) Antiques, fine arts, paintings and similar articles of rarity or antiquity which cannot be replaced.

(2) Memorabilia, souvenirs, collectors items and similar articles whose age or history contribute to their value.

(3) Articles not maintained in good or workable condition.

(4) Articles that are outdated or obsolete and are stored or not being used.

b. Structures that are not buildings; and

  Grave markers and mausoleums;

at actual cash value at the time of loss but not more than the amount required to repair or replace.

c. Buildings under Coverage A or B are settled at replacement cost without deduction for depreciation, subject to the following:

(1) We will pay the cost to repair or replace, after application of deductible and without deduction for depreciation, but not more than the least of the following amounts:

    (a) The limit of liability under this policy that applies to the building, plus any additional amount that may be provided under paragraph c.(2)(c) below;

    (b) The replacement cost of that part of the building damaged with material of like kind and quality and for like use; or

    (c) The necessary amount actually spent to repair or replace the damaged building.

If the building is rebuilt at a new premises, the cost described in (b) above is limited to the cost which would have been incurred if the building had been built at the original premises.

(2) If you have:

    (a) Allowed us to adjust the Coverage A limit of liability and the premium in accordance with:

      (i) The property evaluations we make; and

      (ii) Any increases in inflation; and

    (b) Notified us, within 30 days of completion, of any improvements, alterations or additions to the building which increase the replacement cost of the building by 5% or more;

Then, if there is a loss to the dwelling that exceeds the Coverage A limit of liability shown in the Declarations, for the purposes of settling that loss only,

    (c) We will provide an additional amount of insurance up to ____% of the Coverage A limit of liability, provided you elect to repair or replace the damaged or destroyed dwelling.

© 2017 The Travelers Indemnity Company. All rights reserved.
Includes copyrighted material of Insurance Services Office, Inc. with its permission.

HO-85 PA (10-17)

(3) We will pay no more than the actual cash value of the damage until actual repair or replacement is complete.

However, if the cost to repair or replace the damage is less than $2,500, we will settle the loss according to the provisions of b.(1) above whether or not actual repair or replacement is complete.

(4) You may disregard the replacement cost loss settlement provisions and make claim under this policy for loss or damage to buildings on an actual cash value basis. You may then make claim for any additional liability on a replacement cost basis, provided you notify us of your intent to do so within 180 days after the date of loss.

## SECTION II – LIABILITY COVERAGES
## COVERAGE E – PERSONAL LIABILITY

This section is deleted and replaced by the following:

If a claim is made or a suit is brought against any "insured" for damages because of "bodily injury", "personal injury" or "property damage" caused by an "occurrence" to which this coverage applies, we will:

1. Pay up to our limit of liability for the damages for which an "insured" is legally liable; and

2. Provide a defense at our expense by counsel of our choice, even if the suit is groundless, false or fraudulent. We may investigate and settle any claim or suit that we decide is appropriate. Our duty to settle or defend ends when our limit of liability is exhausted by the payment of a judgment or settlement.

## SECTION II – ADDITIONAL COVERAGES

Additional Coverages 3. and 4. are amended as follows:

3. **Damage To Property of Others.**

We agree to pay at replacement cost and to increase the limit of liability that applies to this additional coverage by $500 per "occurrence".

4. **Loss Assessment.**

We agree to increase the limit of liability that applies to this Additional Coverage by the amount of $4,000.

## SECTION II – EXCLUSIONS

Exclusion B.2.c.(2) is deleted and replaced by the following:

(2) One or more outboard engines or motors with:

(a) 50 total horsepower or less; or

(b) More than 50 horsepower if the outboard engine or motor is not owned by an "insured";

(c) More than 50 horsepower if the outboard engine or motor is owned by an "insured" who acquired it during the policy period, or;

(d) More than 50 horsepower if the outboard engine or motor is owned by an "insured" who acquired it before the policy period, but only if:

(1) You declare them at policy inception; or

(2) Your intent to insure them is reported to us in writing within 45 days after you acquire them.

The coverages in (c) and (d) above apply for the policy period.

Exclusion C.3. is deleted and replaced by the following:

3. "Property damage" to property rented to, occupied or used by or in the care of the "insured". This exclusion does not apply to "property damage" caused by fire, smoke, explosion, or water damage;

Exclusion C.8. is added as follows:

8. "Personal injury":

a. Arising out of an act an "insured" commits or conspires to commit with the knowledge that the act would violate the rights of another and would inflict "personal injury";

b. Arising out of oral, written or electronic publication of material, if done by or at the direction of an "insured" with knowledge of its falsity;

c. Arising out of oral, written or electronic publication of material whose first publication took place before the beginning of the policy period;

d. Arising out of a criminal act an "insured" commits or conspires to commit;

e. Arising out of liability assumed by an "insured" under any contract or agreement except any indemnity obligation assumed by an "insured" under a written contract directly relating to the ownership, maintenance or use of the premises;

f. Sustained by any person as a result of an offense directly or indirectly related to the employment of this person by the "insured";

g. Arising out of or in connection with a "business" conducted from an "insured location" or

© 2017 The Travelers Indemnity Company. All rights reserved.
Includes copyrighted material of Insurance Services Office, Inc. with its permission.

HO-85 PA (10-17)

engaged in by an "insured", whether or not the "business" is owned or operated by an "insured" or employs an "insured". This exclusion applies but is not limited to an act or omission, regardless of its nature or circumstance, involving a service or duty rendered, promised, owed, or implied to be provided because of the nature of the "business";

This exclusion does not apply to:

(1) The rental or holding for rental of an "insured location";

   (a) On an occasional basis if used only as a residence;

   (b) In part for use only as a residence, unless a single family unit is intended for use by the occupying family to lodge more than two roomers or boarders; or

   (c) In part, as an office, school, studio or private garage; and

(2) An "insured" under the age of 21 years involved in a part-time or occasional, self-employed "business" with no employees.

h. Arising out of civic or public activities performed for pay by an "insured";

i. To you or an "insured" as defined under Definition **7.a.** or **b.**

This exclusion also applies to any claim made or suit brought against you or an "insured":

(1) To repay; or

(2) Share damages with;

another person who may be obligated to pay damages because of "personal injury" to an "insured"; or

j. Arising out of the actual, alleged or threatened discharge, dispersal, seepage, migration, release or escape of pollutants at any time. This includes any loss, cost or expense arising out of any:

(1) Request, demand or order that an "insured" or others test for, monitor, clean

up, remove, contain, treat, detoxify or neutralize, or in any way respond to, or assess the effects of, pollutants; or

(2) Claim or suit by or on behalf of a governmental authority for damages because of testing for, monitoring, clean up, removing, containing, treating, detoxifying or neutralizing, or in any way responding to, or assessing the effects of pollutants.

Pollutants means any solid, liquid, gaseous or thermal irritant or contaminant, including smoke, vapor, soot, fumes, acids, alkalis, chemicals and waste. Waste includes materials to be recycled, reconditioned or reclaimed.

## SECTION II – CONDITIONS

**1. Limit of Liability** is deleted and replaced by the following:

**1. Limit of Liability.** Our total liability under Coverage E for all damages resulting from any one "occurrence" will not be more than the Coverage E limit of liability shown in the Declarations plus $100,000. This limit is the same regardless of the number of "insureds", claims made or persons injured. All "bodily injury" and "property damage" resulting from any one accident or from continuous or repeated exposure to substantially the same general harmful conditions shall be considered to be the result of one "occurrence". All "personal injury" resulting from a series of related offenses shall be considered to be the result of one offense.

Our total liability under Coverage F for all medical expense payable for "bodily injury" to one person as the result of one accident will not be more than the limit of liability for Coverage F as shown in the Declarations plus $1,000.

*Entry may be left blank if shown in the Declarations for this coverage.

All other provisions of this policy apply.

© 2017 The Travelers Indemnity Company. All rights reserved.
Includes copyrighted material of Insurance Services Office, Inc. with its permission.

HO-15 PA (10-17)

THIS ENDORSEMENT CHANGES THE POLICY. PLEASE READ IT CAREFULLY.

## SPECIAL PERSONAL PROPERTY COVERAGE
### Form HO-3 Only

**SECTION I – PROPERTY COVERAGES**
**COVERAGE C – PERSONAL PROPERTY**

**Special Limits of Liability** items e., f., and g., are deleted and replaced by the following:

e. $1,500 for loss by theft, misplacing or losing of jewelry, watches, furs, precious and semiprecious stones.

f. $2,500 for loss by theft, misplacing or losing of firearms and related equipment.

g. $2,500 for loss by theft, misplacing or losing of silverware, silver-plated ware, goldware, gold-plated ware, platinumware, platinum-plated ware and pewterware. This includes flatware, hollow-ware, tea sets, trays and trophies made of or including silver, gold, platinum or pewter.

**SECTION I – PERILS INSURED AGAINST**

The Perils Insured Against under Coverages A, B and C are deleted and replaced by the following:

We insure against risk of direct physical loss to property described in Coverages A, B and C.

We do not insure, however, for loss:

1.  Under Coverages A, B and C:

    a.  Excluded under SECTION I – EXCLUSIONS;

    b.  Involving collapse or danger of collapse, except as provided in Additional Coverage 9. Collapse under Section I – Property Coverages; or

    c.  Caused by:

        (1) Freezing of a plumbing, heating, air conditioning or automatic fire protective sprinkler system or of a household appliance, or by discharge, leakage or overflow from within the system or appliance caused by freezing. This exclusion does not apply if you have used reasonable care to:

            (a) Maintain heat in the building; or

            (b) Shut off the water supply and drain the system and appliances of water;

        However, if the building is protected by an automatic fire protective sprinkler system, you must use reasonable care to continue the water supply and maintain heat in the building for coverage to apply.

For purposes of this provision a plumbing system or household appliance does not include a sump, sump pump or related equipment or a roof drain, gutter, downspout or similar fixtures or equipment;

(2) Freezing, thawing, pressure or weight of water or ice, whether driven by wind or not, to a:

    (a) Fence, pavement, patio or swimming pool;

    (b) Footing, foundation, bulkhead, wall, or any other structure or device that supports all or part of a building, or other structure;

    (c) Retaining wall or bulkhead that does not support all or part of a building or other structure; or

    (d) Pier, wharf or dock;

(3) Theft in or to a dwelling under construction, or of materials and supplies for use in the construction until the dwelling is finished and occupied;

(4) Constant or repeated seepage or leakage of water or steam, or the presence or condensation of humidity, moisture or vapor, that occurs over a period of weeks, months or years; or

(5) Any of the following:

    (a) Wear and tear, marring, deterioration;

    (b) Mechanical breakdown, latent defect, inherent vice, or any quality in property that causes it to damage or destroy itself;

    (c) Smog, rust or other corrosion;

    (d) Smoke from agricultural smudging or industrial operations;

    (e) Discharge, dispersal, seepage, migration, release or escape of pollutants unless the discharge, dispersal, seepage, migration, release or escape is itself caused by a Peril Insured Against.

    Pollutants means any solid, liquid, gaseous or thermal irritant or contaminant, including smoke, vapor, soot,

© 2017 The Travelers Indemnity Company. All rights reserved.
Includes copyrighted material of Insurance Services Office, Inc. with its permission.

0103305

HO-15 PA (10-17)

fumes, acids, alkalis, chemicals and waste. Waste includes materials to be recycled, reconditioned or reclaimed;

(f) Settling, shrinking, bulging or expansion, including resultant cracking, of pavements, patios, foundations, walls, floors, roofs or ceilings;

(g) Birds, vermin, rodents, or insects; or

(h) Animals owned or kept by an "insured".

**Exception To c.(5)**

Unless the loss is otherwise excluded, we cover loss to property covered under Coverage A, B or C resulting from an accidental discharge or overflow of water or steam from within a plumbing, heating, air conditioning or automatic fire protective sprinkler system or household appliance on the "residence premises". This includes the cost to tear out and replace any part of a building or other structure, on the "residence premises", but only when necessary to repair the system or appliance. However, such tear out and replacement coverage only applies to other structures if the water or steam causes actual damage to a building on the "residence premises".

We do not cover loss to the system or appliance from which this water or steam escaped.

For purposes of this provision, a plumbing system or household appliance does not include a sump, sump pump or related equipment or a roof drain, gutter, down spout or similar fixtures or equipment.

Under items **1. b.** and **c.,** any ensuing loss to property described in Coverages A, B and C not excluded by any other provision in this policy is covered.

2. Under Coverages A and B:

Caused by vandalism or malicious mischief, and any ensuing loss caused by any intentional and wrongful act committed in the course of the vandalism or malicious mischief, if the building containing the "residence premises" has been vacant for more than 60 consecutive days immediately before the loss. Vacant means substantially empty of personal property necessary to sustain normal occupancy. A dwelling being constructed is not considered vacant.

3. Under Coverage C caused by:

a. Breakage of:

(1) Eyeglasses, glassware, statuary, marble;

(2) Bric-a-brac, porcelains and similar fragile articles other than jewelry, watches, bronzes, cameras and photographic lenses.

There is coverage for breakage of the property by or resulting from:

(1) Fire, lightning;

(2) Windstorm, hail;

(3) Smoke, other than smoke from agricultural smudging or industrial operations;

(4) Explosion, volcanic eruption;

(5) Riot, civil commotion;

(6) Aircraft, vehicles;

(7) Vandalism and malicious mischief;

(8) Collapse of a building or any part of a building;

(9) Water not otherwise excluded;

(10) Theft or attempted theft; or

(11) Sudden and accidental tearing apart, cracking, burning or bulging of:

(a) A steam or hot water heating system;

(b) An air conditioning or automatic fire protective sprinkler system; or

(c) An appliance for heating water;

b. Dampness of atmosphere or extremes of temperature unless the direct cause of loss is rain, snow, sleet or hail;

c. Refinishing, renovating or repairing property other than watches, jewelry and furs;

d. Collision, other than collision with a land vehicle; sinking, swamping or stranding of watercraft, including their trailers, furnishings, equipment and outboard engines or motors;

e. Acts or decisions, including the failure to act or decide, of any person, group, organization or governmental body. However, any ensuing loss to property described in Coverage C not excluded or excepted in this policy is covered; or

f. Error in computer programming or instructions to any computer.

**SECTION I – EXCLUSIONS**

**A.3. Water Damage.** The following paragraphs are added:

© 2017 The Travelers Indemnity Company. All rights reserved.
Includes copyrighted material of Insurance Services Office, Inc. with its permission.

HO-15 PA (10-17)

Case ID: 190103305

HO-15 PA (10-17)

Water damage to property described in Coverage C away from a premises or location owned, rented, occupied or controlled by an "insured" is covered.

Water damage to property described in Coverage C on a premises or location owned, rented, occupied or controlled by an "insured" is excluded even if weather conditions contribute in any way to produce the loss.

Paragraph **B.** is deleted and replaced by the following:

**B.** We do not insure for loss caused by any of the following. However, any ensuing loss not excluded by any other provision in this policy is covered.

   **1.** Weather conditions. However, this exclusion applies only if weather conditions contribute in any way with a cause or event excluded in **A.** above to produce the loss.

   **2.** Acts or decisions, including the failure to act or decide, of any person, group, organization or governmental body.

   **3.** Faulty, inadequate or defective:

   **a.** Planning, zoning, development, surveying, siting;

   **b.** Design, specifications, workmanship, repair, construction, renovation, remodeling, grading, compaction;

   **c.** Materials used in repair, construction, renovation or remodeling; or

   **d.** Maintenance;

   of part or all of any property whether on or off the "residence premises".

All other provisions of this policy apply.

© 2017 The Travelers Indemnity Company. All rights reserved.
Includes copyrighted material of Insurance Services Office, Inc. with its permission.

HO-455 (08-10)

THIS ENDORSEMENT CHANGES THE POLICY. PLEASE READ IT CAREFULLY.

## IDENTITY FRAUD EXPENSE REIMBURSEMENT COVERAGE

The following Additional Coverage is added under Section I.

### IDENTITY FRAUD EXPENSE REIMBURSEMENT

We will reimburse up to $25,000 for "expenses" incurred by an "insured" as the direct result of any one "identity fraud". This coverage applies to any one "identity fraud" discovered during the policy period. Also you will have access to "resolution services" from a consumer fraud specialist. This specialist will assist you in the process of restoring your identity.

Any act or series of acts committed by any one person or group of persons acting in concert; or in which any one person or group of persons is concerned or implicated is considered to be one "identity fraud". This coverage applies even if a series of acts continues into a subsequent policy period.

### DEFINITIONS

With respect to the provisions of this endorsement only, the definitions below are added:

"Expenses" means:

1. Costs for notarizing fraud affidavits or similar documents for credit agencies, financial institutions, healthcare providers, merchants or other credit grantors that have required that such affidavits be notarized.

2. Costs for certified mail to:

    a. Law enforcement agencies;

    b. Credit agencies;

    c. Financial institutions;

    d. Healthcare providers;

    e. Merchants; or

    f. Other credit grantors.

3. Lost wages or salaried earnings, up to a maximum payment of $1,000 per week for a maximum period of five weeks, during absence from employment:

    a. To communicate with law enforcement agencies, legal counsel, credit agencies, financial institutions, healthcare providers, merchants or other credit grantors;

    b. To complete fraud affidavits or similar documents; or

    c. Due to wrongful incarceration arising solely from someone having committed a crime in

the "insured's" name. Lost wages shall not apply in the case of wrongful incarceration absent all charges being dropped or an acquittal of the "insured".

4. Loan application fees for re-applying for a loan or loans when the original application is rejected solely because the lender received incorrect credit information.

5. Reasonable attorney fees incurred, with our prior written consent, for:

    a. Defense of lawsuits brought against the "insured" by financial institutions, healthcare providers, merchants or other credit grantors or their collection agencies;

    b. The removal of any criminal or civil judgments wrongly entered against an "insured";

    c. Challenging the accuracy or completeness of any information in a consumer credit report;

    d. Pursuing the release of medical records solely for the purpose of investigating medical related "identity fraud", upon the exhaustion of the healthcare provider's medical record and personal information request and appeal process;

    e. Contesting wrongfully incurred tax liability; or

    f. Contesting the wrongful transfer of ownership of an "insured's" tangible property.

6. Charges incurred for long distance telephone calls, cellular telephone calls and facsimiles, to law enforcement agencies, credit agencies, financial institutions, healthcare providers, merchants or other credit grantors to report or discuss an actual "identity fraud".

7. Costs for daycare and eldercare incurred by an "insured". This coverage applies if charges incurred are solely as a direct result of any one "identity fraud".

8. Reasonable costs for travel and accommodations incurred by the "insured", up to a maximum payment of $1,000 per week for a maximum period of five weeks, to:

    a. Participate in the defense of lawsuits brought against the "insured" by financial institutions, healthcare providers, merchants, other credit grantors or their collection agencies;

    b. Challenge the accuracy or completeness of any information in a consumer credit report;



HO-455 (08-10)

GRsc#ID#: 20103305

HO-455 (08-10)

c. Participate in the criminal prosecution of the perpetrators of the "identity fraud"; or

d. File in person loss affidavits and civil or criminal complaints with local law enforcement in the jurisdiction in which the "identity fraud" occurred, as required by local law.

9. Fees for the re-application and re-issuance of government issued personal identification documentation, including passports, commercial and non-commercial drivers licenses, state and federal personal identification cards, and social security cards, compromised as a result of "identity fraud".

10. Fees charged for copies of medical records, including x-rays, obtained solely for the purpose of investigating medical-related "identity fraud".

"Identity fraud" means the act of knowingly transferring or using, without lawful authority, a means of identification of an "insured" with the intent to commit or to aid or abet; any illegal activity that constitutes a violation of federal law or a felony under any applicable state or local law.

"Resolution services" include:

a. Ordering your credit report;

b. Alerting credit reporting agencies;

c. Providing credit monitoring; and

d. Preparing documentation and letters.

You are limited to a maximum of three 6-month enrollments with the consumer fraud specialist we provide to you for any one "identity fraud".

"Resolution services" are not available to any person under 14 years old. Services are limited to those services not involved in the obtaining of credit report information for any person aged 14-17 years old.

## EXCLUSIONS

The following exclusions apply to this coverage. These exclusions are in addition to the Section I – Exclusions in the policy.

We do not cover:

1. Loss arising out of "business" pursuits of any "insured".

2. "Expenses" incurred due to any fraudulent or dishonest or criminal act by an "insured". We also do not cover any person acting in concert with an "insured" or by any authorized representative of an "insured". This exclusion applies whether acting alone or in collusion with others.

3. Loss other than "expenses" or "resolution services".

## DEDUCTIBLE

No deductible applies to **Identity Fraud Expense Reimbursement** coverage.

## DUTIES AFTER LOSS

The following is added under Section I – Condition 2. Duties After Loss, paragraph h.:

(9) Receipts or bills or other records that support your claim for "expenses" under **Identity Fraud Expense Reimbursement** coverage.

All other provisions of this policy apply.

HO-99 (04-91)

## SINKHOLE COLLAPSE

For an additional premium, we insure for direct physical loss to property covered under Section I caused by Sinkhole Collapse.

Sinkhole Collapse means actual physical damage arising out of, or caused by, sudden settlement or collapse of the earth supporting such property and only when such settlement or collapse results from subterranean voids created by the action of water on limestone or similar rock formations.

The Section I - **Earth Movement** exclusion does not apply to Sinkhole Collapse.

All other provisions of this policy apply.

HO-99 (04-91)                                                         Page 1 of 1 90103305

HO-300 PA (10-17)

THIS ENDORSEMENT CHANGES THE POLICY. PLEASE READ IT CAREFULLY.

## SPECIAL PROVISIONS - PENNSYLVANIA

**SECTION I – PROPERTY COVERAGES
ADDITIONAL COVERAGES**

8.  **Loss Assessment** is deleted and replaced with the following:

8.  **Loss Assessment.**

    a.  We will pay up to $1,000 for your share of loss assessment charged during the policy period against you, as owner or tenant of the "residence premises", by a corporation or association of property owners. The assessment must be made as a result of direct loss to the property, owned by all members collectively, of the type that would be covered by this policy if owned by you, caused by a Peril Insured Against under Coverage A (for Form HO-4, Peril Insured Against under Coverage C).

      This coverage does not apply to assessments made as a result of damage caused by:

      1.  Earthquake and earthquake aftershocks;

        or

      2.  Land shock waves or tremors which occur before, during or after volcanic activity.

      The limit of $1,000 is the most we will pay with respect to any one loss, regardless of the number of assessments. We will apply only one deductible, per unit, to the total amount of any one loss to the property described above, regardless of the number of assessments.

    b.  We do not cover assessments charged against you or a corporation or association of property owners by any government body.

    c.  Section I Condition 17. Policy Period does not apply to this coverage (for Form HO-4 Condition 16).

**SECTION I – PERILS INSURED AGAINST**

In Forms HO-3 and HO-6 Paragraph 2.c.(5) is deleted and replaced with the following:

    (5)  Constant or repeated seepage or leakage of water or stream, or the presence or condensation of humidity, moisture or vapor, that occurs over a period of weeks, months or years; or

In Form HO-2 Paragraph 12.b.(5) is deleted and replaced with the following:

    (5)  To a building caused by constant or repeated seepage or leakage that occurs over a period of weeks, months or years.

In Form HO-4 Paragraph 12.b.(4) is deleted and replaced with the following:

    (4)  Caused by constant or repeated seepage or leakage that occurs over a period of weeks, months or years.

In Forms HO-3 and HO-6 Coverage **C** – Personal Property, **16. Volcanic Eruption** is deleted. In Forms HO-2 and HO-4, **16. Volcanic Eruption** is deleted.

**SECTION I – EXCLUSIONS**

The first paragraph of this section is deleted and replaced by the following:

We do not cover any direct or indirect loss or damage caused by, resulting from, contributing to or aggravated by any of these excluded perils. Loss from any of these perils is excluded regardless of any other cause or event contributing concurrently or in any sequence to the loss.

These exclusions apply whether or not the loss event:

    (1)  Results in widespread damage;

    (2)  Affects a substantial area; or

    (3)  Occurs gradually or suddenly.

These exclusions also apply whether or not the loss event arises from:

    (1)  Any acts of nature;

    (2)  Any human action or inaction;

    (3)  The forces of animals, plants or other living or dead organisms; or

    (4)  Any other natural or artificial process.

2.  **Earth Movement** is deleted and replaced by the following:

2.  **Earth Movement,** meaning events that include but are not limited to the following:

    a.  Earthquake and earthquake aftershocks;

    b.  Volcano activity including but not limited to:

      (1)  Volcanic eruption;

      (2)  Volcanic explosion;

      (3)  Effusion of volcanic material; or

© 2017 The Travelers Indemnity Company. All rights reserved.
Includes copyrighted material of Insurance Services Office, Inc. with its permission.

Case ID: 190103305

HO-300 PA (10-17)

(4)   Lava flow;

c.   Mudslide, including mudflow, debris flow, landslide, avalanche, or sediment;

d.   Sinkhole;

e.   Subsidence;

f.   Excavation collapse;

g.   Erosion; or

h.   Any expansion, shifting, rising, sinking, contracting, or settling of the earth, soil or land.

This exclusion applies whether or not the earth, soil or land is combined or mixed with water or any other liquid or natural or man made material.

However, loss caused directly by the specific perils:

a.   Fire;

b.   Explosion;

c.   Breakage of building or dwelling glass or safety glazing material, including storm doors or windows; or

d.   Theft;

following any earth movement is covered.

3.   **Water Damage** is deleted and replaced by the following:

3.   **Water Damage**, meaning:

a.   Flood, surface water, ground water, subsurface water, storm surge, waves, wave wash, tidal water, tsunami, seiche, overflow of a body of water, or spray from any of these, whether or not a result of precipitation or driven by wind;

b.   Any water or water borne material that enters through or backs up from a sewer or drain, or which overflows or discharges from a sump, sump pump, related equipment, or other system designed to remove subsurface water which is drained from the foundation area;

c.   Any water or water borne material located below the surface of the ground including water or water borne material:

(1)   Which exerts pressure on, seeps, leaks or flows into:

(a)   Any part of the dwelling or other structures;

(b)   The foundation of the dwelling or other structures;

(c)   Any paved surface located on the "residence premises"; or

(d)   Any spa, hot tub, or swimming pool.

(2)   Which causes earth movement; or

d.   Any overflow, release, migration or discharge of water in any manner from a dam, levee, dike, hurricane barrier or any water or flood control device.

Direct loss by fire, explosion or theft resulting from water damage will be covered.

8.   **Intentional Loss** is deleted and replaced by the following:

8.   **Intentional Loss** meaning any loss arising out of any act an "insured" commits or conspires to commit with the intent to cause a loss.

In the event of such loss, no "insured" is entitled to coverage, even "insureds" who did not commit or conspire to commit the act causing the loss.

However, this exclusion will not apply to deny payment to the "insured" who did not cooperate in or contribute to the creation of the loss if the loss:

a.   Is otherwise covered property under Coverage A, B, or C of the policy; and

b.   Arises out of abuse to that innocent "insured" by another "insured".

With respect to this provision, abuse means:

a.   Abuse as defined in the Pennsylvania Protection From Abuse Act; or

b.   Attempting to cause or intentionally, knowingly, or recklessly causing damage to covered property so as to intimidate or attempt to control the behavior of another person.

If we pay a claim under this provision, our payment to the "insured" is limited to that "insured's" insurable interest in the property. In no event will we pay more than the Limit of Liability.

**SECTION I – CONDITIONS**

2.   **Duties After Loss.** Paragraph a. is deleted and replaced by the following:

a.   Give us prompt notice. With respect to a loss caused by the peril of windstorm or hail, that notice must occur no later than one year after the date of loss;

All other provisions of this policy apply.



© 2017 The Travelers Indemnity Company. All rights reserved.
Includes copyrighted material of Insurance Services Office, Inc. with its permission.

HO-300 PA (10-17)

Case ID: 190103305

Case ID: 190103305

This policy is signed for the company which is the insurer under this policy.

*Wendy C. Skjerven*
Wendy C. Skjerven
Senior Vice President and
Corporate Secretary

*Michael Klein*
Michael Klein
President
Personal Insurance

**IN WITNESS WHEREOF, the Company has executed and attested these presents.**

PL-9107  8-97

Case ID: 190103305

Case ID: 190103305

# EXHIBIT B

Case ID: 190103305



**TRAVELERS**

The Travelers Home And Marine Insurance Company
PO Box 430
Buffalo, NY 14240-0430

10/17/2018

Sean & Jaime Rose
500 Cindy Cir
Blue Bell PA 19422

Insured:         Sean & Jaime Rose
Claim Number:    IAJ0766
Policy Number:   0FG201-602729932-633-1
Date of Loss:    08/17/2018
Loss Location:   500 Cindy Cir Blue Bell, PA

Dear Mr. & Mrs. Rose,

I am following up on our recent conversation about your claim. As we discussed, after researching this claim, The Travelers Home And Marine Insurance Company determined that your policy does not cover water damages that occur for a period of weeks, months or years. The reasons for this determination are outlined below.

You presented a claim for what damages to your master bathroom and kitchen. Our research found that water has been leaking from your shower long enough to cause extensive rot to the master bathroom framing and subfloor. You provided photos of the bathroom after the bathroom demolition was completed. The photos showed rot to wood around the shower. Rot is indicative of an ongoing presence of moisture for weeks, months and years. Since water damages that occur for a period of weeks, months or years are excluded, your policy does not provide coverage.

As a reference, I have provided the following section of your policy, (pages 6 & 9-11 of 26 of your HO3PA(10-07) Homeowners Policy and page 1 of 2 of your HO300PA(10-17) endorsement), which explains that this type of loss is excluded:

**"ADDITIONAL COVERAGES**
Unless otherwise stated:
The following coverages are additional insurance; and
They are subject to your deductible.
16. Limited "Fungi", Other Microbes Or Rot Remediation.
   a. If a loss caused by a Peril Insured Against results in "fungi", other microbes or rot, we will pay for:
      (1) Remediation of the "fungi", other microbes or rot. This includes payment for the reasonable and necessary cost to:
         (a) Remove the "fungi", other microbes or rot from covered property or to repair, restore or replace that property; and
         (b) Tear out and replace any part of the building as needed to gain access to the "fungi", other microbes or rot;
      (2) Any reasonable and necessary increase in living expense you incur:
         (a) So that your household can maintain its normal standard of living; or
         (b) Loss of fair rental value;
      if the "fungi", other microbes or rot makes the "residence premises" not fit to live in;

and
(3) Any reasonable and necessary testing or monitoring of air or property to confirm the absence, presence or level of the "fungi", other microbes or rot, whether performed prior to, during or after removal, repair, restoration or replacement.
   **b.** We will pay under this additional coverage only if:
   (1) The covered loss occurs during the policy period;
   (2) All reasonable means were used to save and preserve the property at the time of and after the covered loss; and
   (3) We receive prompt notice of the covered cause of loss that is alleged to have resulted in "fungi", other microbes or rot.
   **c.** The most we will pay under this additional coverage is the limit of liability shown in the Declarations for Limited "Fungi", Other Microbes Or Rot Remediation. This is the most we will pay for the total of all loss or costs regardless of the:
   (1) Number of locations or items of property insured under this policy; or
   (2) Number of losses or claims made.
   **d.** This coverage does not increase the limit of liability that applies to the damaged property.

**SECTION I - PERILS INSURED AGAINST**
**COVERAGE A – DWELLING AND COVERAGE B – OTHER STRUCTURES**
**1.** We insure against risk of direct physical loss to property described in Coverages A and B.
**2.** We do not insure, however, for loss:
   **c.** Caused by:
   (5) Constant or repeated seepage or leakage of water or steam, or the presence or condensation of humidity, moisture or vapor, that occurs over a period of 14 days or more; or
   (6) Any of the following:
      (a) Wear and tear, marring, deterioration

**SECTION I PERILS INSURED AGAINST**
In Forms HO-3 and HO-6 Paragraph 2.c.(5) is deleted and replaced with the following:
(5) Constant or repeated seepage or leakage of water or stream, or the presence or condensation of humidity, moisture or vapor, that occurs over a period of weeks, months or years."

This decision is based on the information and documentation we received during our research of this claim. If you are aware of any new or different information or documentation that might lead us to reconsider our decision, please contact me immediately.

Your policy may have other terms, conditions and exclusions that apply to this claim. We do not waive any rights, including our right to deny coverage, for any other valid reason under the policy or at law.

Please review the Suit Against Us condition of your policy as it contains important information about the period of time in which you may bring legal action.

If you have any questions, please contact me at (215)779-3143 or JLMORA@travelers.com.

Sincerely,

Jason L Mora
Claim Professional
Direct: (215)779-3143
Office: (215)779-3143
Fax: (888)570-4795
Email: JLMORA@travelers.com

FREEFORM                                         Case ID: 190103305

FREEFORM

Case ID: 190103305

JS 44 (Rev. 06/17)

# CIVIL COVER SHEET

The JS 44 civil cover sheet and the information contained herein neither replace nor supplement the filing and service of pleadings or other papers as required by law, except as provided by local rules of court. This form, approved by the Judicial Conference of the United States in September 1974, is required for the use of the Clerk of Court for the purpose of initiating the civil docket sheet. *(SEE INSTRUCTIONS ON NEXT PAGE OF THIS FORM.)*

| I. (a) PLAINTIFFS | DEFENDANTS |
|---|---|
| SEAN ROSE AND JAIME ROSE | THE TRAVELERS HOME AND MARINE INSURANCE COMPANY |

**(b)** County of Residence of First Listed Plaintiff   Montgomery
*(EXCEPT IN U.S. PLAINTIFF CASES)*

County of Residence of First Listed Defendant   Hartford
*(IN U.S. PLAINTIFF CASES ONLY)*
NOTE:   IN LAND CONDEMNATION CASES, USE THE LOCATION OF THE TRACT OF LAND INVOLVED.

**(c)** Attorneys *(Firm Name, Address, and Telephone Number)*
Anthony DiUlio, Esquire, Wheller, DiUlio and Barnabei
1617 JFK Blvd., Suite 1270, Phila., PA 19103
(215) 568-2900

Attorneys *(If Known)*
Daniel T. Fitch, Esquire, Stradley Ronon Stevens & Young, LLP
2005 Market Street, Suite 2600, Phila., PA 19103
(215) 564-8000

## II. BASIS OF JURISDICTION *(Place an "X" in One Box Only)*

- ☐ 1  U.S. Government Plaintiff
- ☐ 3  Federal Question *(U.S. Government Not a Party)*
- ☐ 2  U.S. Government Defendant
- ☒ 4  Diversity *(Indicate Citizenship of Parties in Item III)*

## III. CITIZENSHIP OF PRINCIPAL PARTIES *(Place an "X" in One Box for Plaintiff and One Box for Defendant)*
*(For Diversity Cases Only)*

| | PTF | DEF | | PTF | DEF |
|---|---|---|---|---|---|
| Citizen of This State | ☒ 1 | ☐ 1 | Incorporated *or* Principal Place of Business In This State | ☐ 4 | ☐ 4 |
| Citizen of Another State | ☐ 2 | ☐ 2 | Incorporated *and* Principal Place of Business In Another State | ☐ 5 | ☒ 5 |
| Citizen or Subject of a Foreign Country | ☐ 3 | ☐ 3 | Foreign Nation | ☐ 6 | ☐ 6 |

## IV. NATURE OF SUIT *(Place an "X" in One Box Only)*

Click here for: Nature of Suit Code Descriptions.

| CONTRACT | TORTS | | FORFEITURE/PENALTY | BANKRUPTCY | OTHER STATUTES |
|---|---|---|---|---|---|
| ☒ 110 Insurance | **PERSONAL INJURY** | **PERSONAL INJURY** | ☐ 625 Drug Related Seizure of Property 21 USC 881 | ☐ 422 Appeal 28 USC 158 | ☐ 375 False Claims Act |
| ☐ 120 Marine | ☐ 310 Airplane | ☐ 365 Personal Injury - Product Liability | ☐ 690 Other | ☐ 423 Withdrawal 28 USC 157 | ☐ 376 Qui Tam (31 USC 3729(a)) |
| ☐ 130 Miller Act | ☐ 315 Airplane Product Liability | ☐ 367 Health Care/ Pharmaceutical Personal Injury Product Liability | | | ☐ 400 State Reapportionment |
| ☐ 140 Negotiable Instrument | ☐ 320 Assault, Libel & Slander | | | **PROPERTY RIGHTS** | ☐ 410 Antitrust |
| ☐ 150 Recovery of Overpayment & Enforcement of Judgment | ☐ 330 Federal Employers' Liability | | | ☐ 820 Copyrights | ☐ 430 Banks and Banking |
| ☐ 151 Medicare Act | ☐ 340 Marine | ☐ 368 Asbestos Personal Injury Product Liability | | ☐ 830 Patent | ☐ 450 Commerce |
| ☐ 152 Recovery of Defaulted Student Loans (Excludes Veterans) | ☐ 345 Marine Product Liability | **PERSONAL PROPERTY** | | ☐ 835 Patent - Abbreviated New Drug Application | ☐ 460 Deportation |
| | | ☐ 370 Other Fraud | **LABOR** | ☐ 840 Trademark | ☐ 470 Racketeer Influenced and Corrupt Organizations |
| ☐ 153 Recovery of Overpayment of Veteran's Benefits | ☐ 350 Motor Vehicle | ☐ 371 Truth in Lending | ☐ 710 Fair Labor Standards Act | **SOCIAL SECURITY** | ☐ 480 Consumer Credit |
| ☐ 160 Stockholders' Suits | ☐ 355 Motor Vehicle Product Liability | ☐ 380 Other Personal Property Damage | ☐ 720 Labor/Management Relations | ☐ 861 HIA (1395ff) | ☐ 490 Cable/Sat TV |
| ☐ 190 Other Contract | ☐ 360 Other Personal Injury | ☐ 385 Property Damage Product Liability | ☐ 740 Railway Labor Act | ☐ 862 Black Lung (923) | ☐ 850 Securities/Commodities/ Exchange |
| ☐ 195 Contract Product Liability | ☐ 362 Personal Injury - Medical Malpractice | | ☐ 751 Family and Medical Leave Act | ☐ 863 DIWC/DIWW (405(g)) | ☐ 890 Other Statutory Actions |
| ☐ 196 Franchise | | | ☐ 790 Other Labor Litigation | ☐ 864 SSID Title XVI | ☐ 891 Agricultural Acts |
| | | | ☐ 791 Employee Retirement Income Security Act | ☐ 865 RSI (405(g)) | ☐ 893 Environmental Matters |
| **REAL PROPERTY** | **CIVIL RIGHTS** | **PRISONER PETITIONS** | | | ☐ 895 Freedom of Information Act |
| ☐ 210 Land Condemnation | ☐ 440 Other Civil Rights | **Habeas Corpus:** | | **FEDERAL TAX SUITS** | ☐ 896 Arbitration |
| ☐ 220 Foreclosure | ☐ 441 Voting | ☐ 463 Alien Detainee | | ☐ 870 Taxes (U.S. Plaintiff or Defendant) | ☐ 899 Administrative Procedure Act/Review or Appeal of Agency Decision |
| ☐ 230 Rent Lease & Ejectment | ☐ 442 Employment | ☐ 510 Motions to Vacate Sentence | | ☐ 871 IRS—Third Party 26 USC 7609 | ☐ 950 Constitutionality of State Statutes |
| ☐ 240 Torts to Land | ☐ 443 Housing/ Accommodations | ☐ 530 General | | | |
| ☐ 245 Tort Product Liability | ☐ 445 Amer. w/Disabilities - Employment | ☐ 535 Death Penalty | **IMMIGRATION** | | |
| ☐ 290 All Other Real Property | ☐ 446 Amer. w/Disabilities - Other | **Other:** | ☐ 462 Naturalization Application | | |
| | ☐ 448 Education | ☐ 540 Mandamus & Other | ☐ 465 Other Immigration Actions | | |
| | | ☐ 550 Civil Rights | | | |
| | | ☐ 555 Prison Condition | | | |
| | | ☐ 560 Civil Detainee - Conditions of Confinement | | | |

## V. ORIGIN *(Place an "X" in One Box Only)*

- ☐ 1 Original Proceeding
- ☒ 2 Removed from State Court
- ☐ 3 Remanded from Appellate Court
- ☐ 4 Reinstated or Reopened
- ☐ 5 Transferred from Another District *(specify)*
- ☐ 6 Multidistrict Litigation - Transfer
- ☐ 8 Multidistrict Litigation - Direct File

## VI. CAUSE OF ACTION

Cite the U.S. Civil Statute under which you are filing *(Do not cite jurisdictional statutes unless diversity)*:
28 U.S.C. §§ 1332, 1446
Brief description of cause:
Alleged breach of insurance contract, bad faith.

## VII. REQUESTED IN COMPLAINT:

☒ CHECK IF THIS IS A CLASS ACTION UNDER RULE 23, F.R.Cv.P.

DEMAND $
Excess of $50,000

CHECK YES only if demanded in complaint:
JURY DEMAND:   ☒ Yes   ☐ No

## VIII. RELATED CASE(S) IF ANY

*(See instructions):*
JUDGE _____   DOCKET NUMBER _____

DATE
03/07/2019

SIGNATURE OF ATTORNEY OF RECORD

**FOR OFFICE USE ONLY**

RECEIPT # _____   AMOUNT _____   APPLYING IFP _____   JUDGE _____   MAG. JUDGE _____

**UNITED STATES DISTRICT COURT**
**FOR THE EASTERN DISTRICT OF PENNSYLVANIA**

**DESIGNATION FORM**
*(to be used by counsel or pro se plaintiff to indicate the category of the case for the purpose of assignment to the appropriate calendar)*

Address of Plaintiff: _500 Cindy Circle, Blue Bell, PA   19422_

Address of Defendant: _One Tower Square, Hartford, CT 06183_

Place of Accident, Incident or Transaction: _Blue Bell, PA_

---

**RELATED CASE, IF ANY:**

Case Number: __N/A__     Judge: _____     Date Terminated: _____

Civil cases are deemed related when *Yes* is answered to any of the following questions:

1. Is this case related to property included in an earlier numbered suit pending or within one year previously terminated action in this court?   Yes [ ]   No [✓]

2. Does this case involve the same issue of fact or grow out of the same transaction as a prior suit pending or within one year previously terminated action in this court?   Yes [ ]   No [✓]

3. Does this case involve the validity or infringement of a patent already in suit or any earlier numbered case pending or within one year previously terminated action of this court?   Yes [ ]   No [✓]

4. Is this case a second or successive habeas corpus, social security appeal, or pro se civil rights case filed by the same individual?   Yes [ ]   No [✓]

I certify that, to my knowledge, the within case [ ] is / [•] is not   related to any case now pending or within one year previously terminated action in this court except as noted above.

DATE: _03/07/2019_     PA 53717
*Attorney-at-Law / Pro Se Plaintiff*     *Attorney I.D. # (if applicable)*

---

**CIVIL:** (Place a √ in one category only)

**A.** *Federal Question Cases:*
1. [ ] Indemnity Contract, Marine Contract, and All Other Contracts
2. [ ] FELA
3. [ ] Jones Act-Personal Injury
4. [ ] Antitrust
5. [ ] Patent
6. [ ] Labor-Management Relations
7. [ ] Civil Rights
8. [ ] Habeas Corpus
9. [ ] Securities Act(s) Cases
10. [ ] Social Security Review Cases
11. [ ] All other Federal Question Cases *(Please specify):* ____

**B.** *Diversity Jurisdiction Cases:*
1. [✓] Insurance Contract and Other Contracts
2. [ ] Airplane Personal Injury
3. [ ] Assault, Defamation
4. [ ] Marine Personal Injury
5. [ ] Motor Vehicle Personal Injury
6. [ ] Other Personal Injury *(Please specify):* ____
7. [ ] Products Liability
8. [ ] Products Liability – Asbestos
9. [ ] All other Diversity Cases *(Please specify):* ____

---

**ARBITRATION CERTIFICATION**
*(The effect of this certification is to remove the case from eligibility for arbitration.)*

I, _Daniel T. Fitch_, counsel of record *or pro se plaintiff*, do hereby certify:

[✓] Pursuant to Local Civil Rule 53.2, § 3(c) (2), that to the best of my knowledge and belief, the damages recoverable in this civil action case exceed the sum of $150,000.00 exclusive of interest and costs:

[ ] Relief other than monetary damages is sought.

DATE: _03/07/2019_     PA 53717
*Attorney-at-Law / Pro Se Plaintiff*     *Attorney I.D. # (if applicable)*

NOTE: A trial de novo will be a trial by jury only if there has been compliance with F.R.C.P. 38.

*Civ. 609 (5/2018)*

## IN THE UNITED STATES DISTRICT COURT
## FOR THE EASTERN DISTRICT OF PENNSYLVANIA

### CASE MANAGEMENT TRACK DESIGNATION FORM

SEAN ROSE, et al.                                                          CIVIL ACTION
                                              :
                        v.                    :
                                              :
THE TRAVELERS HOME AND MARINE                 :
INSURANCE COMPANY                             :                            NO.

In accordance with the Civil Justice Expense and Delay Reduction Plan of this court, counsel for plaintiff shall complete a Case Management Track Designation Form in all civil cases at the time of filing the complaint and serve a copy on all defendants. (See § 1:03 of the plan set forth on the reverse side of this form.)  In the event that a defendant does not agree with the plaintiff regarding said designation, that defendant shall, with its first appearance, submit to the clerk of court and serve on the plaintiff and all other parties, a Case Management Track Designation Form specifying the track to which that defendant believes the case should be assigned.

**SELECT ONE OF THE FOLLOWING CASE MANAGEMENT TRACKS:**

(a) Habeas Corpus – Cases brought under 28 U.S.C. § 2241 through § 2255.                  (  )

(b) Social Security – Cases requesting review of a decision of the Secretary of Health
     and Human Services denying plaintiff Social Security Benefits.                         (  )

(c) Arbitration – Cases required to be designated for arbitration under Local Civil Rule 53.2.  (  )

(d) Asbestos – Cases involving claims for personal injury or property damage from
     exposure to asbestos.                                                                 (  )

(e) Special Management – Cases that do not fall into tracks (a) through (d) that are
     commonly referred to as complex and that need special or intense management by
     the court. (See reverse side of this form for a detailed explanation of special
     management cases.)                                                                    (  )

(f) Standard Management – Cases that do not fall into any one of the other tracks.          ( x )


March 7, 2019                 Daniel T. Fitch              The Travelers Home and Marine Insurance Company
_____              _____      _____
**Date**                     **Attorney-at-law**          **Attorney for**

215-564-8063                 215-564-8120                 dfitch@stradley.com
_____              _____      _____

**Telephone**                **FAX Number**               **E-Mail Address**


(Civ. 660) 10/02