## IN THE UNITED STATES DISTRICT COURT
## FOR THE EASTERN DISTRICT OF PENNSYLVANIA

|  |  |
|---|---|
| SEAN ROSE and JAIME ROSE,<br>*Plaintiffs,*<br><br>v.<br><br>THE TRAVELERS HOME AND<br>MARINE INSURANCE COMPANY and<br>the TRAVELERS INDEMNITY<br>COMPANY<br>*Defendants.* | CIVIL ACTION<br>NO. 19-977 |

**PAPPERT, J.**                                                      **July 20, 2020**

### MEMORANDUM

Sean and Jaime Rose, on behalf of themselves and a putative class, sued the

Travelers Home and Marine Insurance Company and the Travelers Indemnity

Company, alleging they improperly applied a long-term seepage/leakage exclusion in

certain of their insurance policies to claims for rot damage.  The parties settled their

claims and the Court granted Plaintiffs' unopposed preliminary approval motion.  (ECF

No. 48.)  After a telephonic final approval hearing[1] (ECF No. 62) and consideration of

objections to the settlement (ECF Nos. 54, 55 and 60), the Court grants Plaintiffs' final

approval motion (ECF No. 61) and their motion seeking attorneys' fees and an incentive

award for the named Plaintiffs.  (ECF No. 53.)

---

[1]     On March 18, 2020, the Chief Judge entered a Standing Order recognizing the recommendation that people not gather in groups of more than 10 people due to the COVID-19 pandemic.  On March 25, the Court rescheduled the final approval hearing for June 23, and explained that "[i]f the emergency associated with COVID-19 continues into June of 2020, the Court may decide to hold the final approval hearing by telephone . . . ."  (ECF No. 50.)  On June 8, the Court determined that the final approval hearing would take place only via a telephone conference and docketed an Order providing call-in information and directing the Settlement Administrator to make the information available to members of the settlement class by posting it on the settlement website.  (ECF No. 57; *see also* June 23, 2020 Final Approval Hearing Trans. at 11:4-17 (explaining that the call-in information was added to the front page of the settlement website in bold text).)  Sean Rose and three members of the class participated in the final approval hearing.

I

The Roses allege Travelers Home provided insurance coverage including coverage for rot damage for their Pennsylvania home. (Am. Compl., ECF No. 44, ¶¶ 8-10.) In August 2018, they discovered water damage on their kitchen ceiling and submitted an insurance claim. (*Id.* ¶ 12; see also, *id.*, Ex. B.) After Travelers Home denied their claim based on the existence of a long term leak, (*id.*, ¶ 15), they contacted an attorney who sought to reopen their claim, arguing that it was rot damage covered under a policy provision governing "Limited 'Fungi,' Other Microbes Or Rot Remediation." (*Id.* ¶¶ 9-10, 18-19.) During a subsequent visit to the Roses' home, a Travelers representative indicated that "there was no situation for which Travelers would pay for rot," even though the Roses had paid additional rot remediation coverage premiums. (*Id.* ¶¶ 11, 22.) The Roses subsequently filed this lawsuit, asserting claims on behalf of a putative class for breach of contract, bad faith and violation of the Pennsylvania Consumer Protection Act and other similar statutes nationwide. They claim Defendants wrongfully refused payment to all class members based on their "interpretation of the policy provision advertised as 'Rot Remediation Coverage' as not actually covering Rot Damage." (*Id.* ¶ 30(c).)

The parties began settlement discussions in May 2019 and shortly thereafter exchanged relevant data prior to a June in-person settlement conference with Magistrate Judge Elizabeth Hey. (Final Approval Mem., ECF No. 61-1 at 3.) At the conference they defined the scope of a potential settlement class and established a preliminary framework for class-wide relief. (*Id.*) After exchanging additional information at a July in-person meeting, Plaintiffs submitted a second settlement

proposal which Travelers countered.  (*Id.*)  Plaintiffs then made a third proposal.  (*Id.*)

Travelers responded with another proposal and the parties consulted with Judge Hey

again in October.  (*Id.* at 3-4.)  Plaintiffs provided Travelers a revised settlement offer

on October 23, and on October 30, at an in-person meeting with Judge Hey, the parties

resolved most substantive issues regarding class-wide relief and a claims filing process.

(*Id.* at 4.)  The parties asked to stay approaching class certification deadlines, but the

Court denied their request and established a new schedule for the case.  (*Id.*)  The

parties continued their settlement negotiations, exchanging offers and demands and

resolving outstanding issues and negotiated an award of attorneys' fees and costs after

the parties agreed on all essential terms regarding relief to class members.  (*Id.*)  At a

November 20 in-person meeting, the parties resolved all remaining issues, made final

revisions to a written Settlement Agreement and compiled notice materials.  The

parties filed a joint settlement notice with the Court on November 26.  (ECF No. 42.)

They executed the Settlement Agreement on January 10, 2020.  (*See* Agreement, ECF

No. 46-1.)

> The Settlement Class includes

> all homeowners, condominium and business insurance policy holders of
> Travelers and affiliates who satisfy the following requirements:  (a) the
> policyholder made a claim for Structural Damage to an Insured Structure
> located in the United States of America under a Policy; (b) the claim falls
> within the Settlement Class Period; (c) the Policy included Rot Remediation
> Coverage; (d) the claim included Rot Damage; and (e) the Rot Damage
> portion of the claim was denied by Travelers.[2]

(Agreement ¶ 3.)  The Settlement Class does not

> include policyholders whose insurance claims, as of the date of the
> Preliminary Approval Order:  (f) remained open according to Travelers'
> records; (g) were the subject of an assignment of right to payment by the

---

[2]    Capitalized terms are defined in the Settlement Agreement at ¶¶ 1-37.

policyholder to any third party; (h) were the subject of a pending lawsuit, other than the Civil Action; (i) were the subject of an ongoing or completed appraisal proceeding under the terms of an appraisal provision in a Policy.

(*Id.*)

The negotiated agreement is a claims-made settlement, with relief dependent on: (1) submission of a valid Claim Form, (2) when Class Members suffered injury; and (3) the jurisdiction in which they reside. Claims are divided into two categories. First, Policy Period claims are for insurance claims with Rot Damage "where the insurance claim falls within the identified applicable suit limitation period for a breach of contract claim." (Agreement ¶ 15.). Policy Period claimants can receive payments ranging from $200 to as much as $3,750, depending on how much rot damage is claimed, how much coverage the claimant had for rot damage, and whether the claimant submits loss documentation. (*Id.*) Specifically, recovery amounts for valid Policy Claims are as follows:

| Claimed Rot Damage | Settlement Payment |
| --- | --- |
| Less than $1,000.00 | $200 |
| $1,000 to $2,499.99 | $700 |
| $2,500.00 to $4,999.99 | $1,350 (without documentation) $1,750 (with documentation) |
| $5,000.00 or more without documentation | $1,750 |
| $5,000.00 or more with documentation (for Settlement Class Members who have Rot Remediation Coverage subject to a limit of $5,000) | $2,375 |
| $5,000.00 to $9,999.99 with documentation (for Settlement Class Members who have Rot Remediation Coverage subject to | $3,000 |

| | |
|---|---|
| a limit of $10,000 or more) | |
| $10,000 or more with documentation (for Settlement Class Members who have Rot Remediation Coverage subject to a limit of $10,000 or more) | $3,750 |

Approximately 21,932 insurance claims fit into this category, of which 1,580 are business claims.  (Fee Mot., Ex. A., Class Counsel Decl., ECF No. 53-2 at ¶ 11.)  Policy Period Claims were made using Claim Form A.  (Agreement Ex. B, ECF No. 46-3.)

Second, Statutory Period claims, made on Claim Form B (Agreement Ex. C, ECF No. 46-4), are for insurance claims with Rot Damage

> where the insurance claim does not fall within the identified applicable suit limitation period for breach of contract claims but falls within the longest potentially-applicable statute of limitations for common law bad faith, statutory bad faith, unfair trade practice, consumer protection law or other similar statutory claims against Travelers in the applicable jurisdiction.

(Agreement at ¶ 15.)  Approximately 10,313 claims fit within this category, of which 658 are business claims.  (Fee Mot., Ex. A at ¶ 11.)  Valid Statutory Period Claims will receive a $150 payment and do not require any additional documentation.  (Agreement at ¶ 51-52.)

Travelers has agreed to a $2,250,000 payment floor, such that "[i]f the total valid claims made for all Settlement Class members for both Policy Period Claims and Statutory Period Claims does not exceed $2,250,000 in the aggregate, the amounts to be paid on valid Policy Period Claims will be increased proportionally . . . ."  (Agreement at ¶ 52.)  Because of differences in state laws, the Settlement Class Period is defined by jurisdiction – specific time periods apply separately to Policy Period Claims and Statutory Period Claims in depending on the claim location.  (See Agreement at ¶ 27;

*id.*, Ex. G., ECF No. 46-8.)

In addition to the payments provided to the Settlement Class, the settlement provides a non-monetary benefit in the form of a change in practice.  Travelers has agreed to pay certain claims for Rot Damage and "not to apply the long-term seepage, leakage provision if the seepage/leakage and resulting damage were unknown to all insureds and hidden within the walls or ceilings or beneath the floors or above the ceilings of a structure." (Agreement at ¶ 59.)

In exchange for these benefits, Settlement Class Members, including the Roses, will release Travelers from all potential claims with respect to any and all past Rot Damage.  (Agreement at ¶ 18.)

The parties selected Epiq Class Action & Claims Solutions, Inc. to provide notice to the class and otherwise act as the Settlement Administrator.  (Agreement ¶ 23.) Within ten days after the Preliminary Approval Motion was filed, and consistent with Class Action Fairness Act requirements, 28 U.S.C. § 1715(b)(1)-(8), Epiq provided notice to the Attorney General of the United States and the primary insurance regulatory or supervisory official of each state and territory of the United States in which a Potential Class Member resides based on a preliminary list Defendants prepared.  (Agreement ¶ 41)   No governmental entity has objected to or otherwise responded to the Settlement in response to the CAFA notices.  (Final Approval Mem. at 7.)

Epiq provided direct mail and email notice to potential Settlement Class Members based on a list Defendants prepared from their records.  (*Id.*)  Notices provided a context-appropriate description of the settlement and its benefits for Policy Period and Statutory Period Class Members.  (Agreement, Ex. D, E and F, ECF Nos.

46-5 to 46-7.)  Settlement Notices also provided potential Settlement Class Members with information about how to participate in, object to or opt-out of the Settlement including relevant deadlines.  (*Id.*)  Notice packages had a 98.1 percent deliverable rate: out of 32,243 unique records, only 600 unique Settlement Class Members' notice packages were undeliverable as of June 11, 2020.  (Final Approval Mem. at 7.)  Epiq also established a settlement website (www.RoseSettlement.com) and a toll-free telephone number (866-977-0336) for potential Settlement Class Members to use to obtain notice and information about the Settlement.  (*Id.*)  Both were significantly accessed and utilized by Settlement Class Members.  (*Id.*)

The deadline for exclusion requests and objections was May 13, 2020.  (Final Approval Mot., Ex. B., Epiq Decl., ECF No. 61-3, ¶ 13.)  Requests for exclusion from the Settlement were sent directly to the Epiq (Agreement ¶¶ 41-46), and objections were filed with the Court.  (*Id.* ¶ 44.)  As of June 11, 2020, Epiq had received requests for exclusion from 39 Settlement Class Members.  (Final Approval Mem. at 8.)  Of all the claims possibly covered by the Settlement, only three objections were filed with the Court.  (ECF Nos. 54, 55 and 56.)

Defendants have agreed to pay Settlement Class Counsel $1,900,000 for attorneys' fees and expenses.  (Fee Mem., ECF No. 53-1 at 1; Agreement ¶ 60.)  The fees and costs are to be paid apart from the relief to be paid to the class.  (*Id.*)  In addition, Defendants will pay all costs reasonably incurred by the Settlement Administrator – estimated to be between $280,000 and $350,000 – separately from the settlement fund. (Agreement ¶ 53; *see also* Epiq Decl., at ¶ 15.)  Settlement Class Counsel have also requested a $10,000 service award to be paid jointly to Sean and Jamie Rose and

separately from the monetary relief available to the Settlement Class. (Fee Mem. at 9.) There have been no objections to the requested fees, costs, expenses or service award.

## II

Federal Rule of Civil Procedure 23(e) requires court approval of class action settlements. Fed. R. Civ. P. 23(e)(2). Approval is appropriate "only after a hearing and on finding that it is fair, reasonable, and adequate." *Id.* The Court must (1) determine if the requirements for class certification under Rule 23(a) and (b) are satisfied; (2) assess whether notice to the proposed class was adequate; and (3) evaluate if the proposed settlement is fair under Rule 23(e). *See In re Nat'l Football League Players Concussion Injury Litig.*, 775 F.3d 570, 581 (3d Cir. 2014).

## A

The Settlement Class must meet Rule 23(a)'s requirements: numerosity, commonality, typicality, and adequacy of representation. Fed. R. Civ. P. 23(a). "Rule 23(a) ensures that the named plaintiffs are appropriate representatives of the class whose claims they wish to litigate" and "effectively limit[s] the class claims to those fairly encompassed by the named plaintiff's claims." *Wal-Mart Stores, Inc. v. Dukes*, 564 U.S. 338, 349 (2011) (citation omitted). Because the numerosity requirement is generally met if the potential number of plaintiffs exceeds 40, the 247 Rule 23 Settlement Class Members are sufficiently numerous under Rule 23(a). *See Stewart v. Abraham*, 275 F.3d 220, 226–27 (3d Cir. 2001). 32,243 potential Settlement Class Members received notice of the settlement following targeted searches in Defendants' records. (Final Approval Mem. at 23.) The commonality bar "is not a high one." *Rodriguez v. National City Bank*, 726 F.3d 372, 382 (3d Cir. 2013). A single common

issue is enough to satisfy the commonality requirement. *See Baby Neal v. Casey*, 43 F.3d 48, 56 (3d Cir. 1994). Typicality requires the Court to assess "whether the action can be efficiently maintained as a class and whether the named plaintiffs have incentives that align with those of absent class members so as to assure that the absentee's interests will be fairly represented." *Id.* at 57. Defendants insured the Roses' property and the properties of other Settlement Class Members. Plaintiffs and the Settlement Class Members filed claims for rot damage and Defendants denied the claims. Their claims arise from the same questions: including whether Defendants' insurance policies covered rot damage and whether Defendants' acted in bad faith when denying their claims for coverage. The commonality and typicality requirements are met. The final factor – whether "the representative parties will fairly and adequately protect the interests of the class" – is also met. Fed. R. Civ. P. 23(a)(4). On the record before the Court, the Named Plaintiffs' interests are not antagonistic to those of other Settlement Class Members and Class Counsel are qualified, experienced and capable of litigating the Class's claims. *See In re Warfarin Sodium Antitrust Litig.*, 391 F.3d 516, 532 (3d Cir. 2004).

B

The Settlement Class also "must satisfy at least one of the three requirements listed in Rule 23(b)." *Wal-Mart*, 564 U.S. at 345. Rule 23(b)(3) requires that "questions of law or fact common to class members predominate over any questions affecting only individual members, and that a class action is superior to other available methods for fairly and efficiently adjudicating the controversy." Fed. R. Civ. P. 23(b)(3).

Predominance "tests whether proposed classes are sufficiently cohesive to

warrant adjudication by representation." *Amchem Prods., Inc. v. Windsor*, 521 U.S. 591, 594 (1997). "[T]the focus of the predominance inquiry is on whether the defendant's conduct was common as to all of the class members, and whether all of the class members were harmed by the defendant's conduct." *In re Processed Egg Products Antitrust Litig.*, 284 F.R.D. 249, 263 (E.D. Pa. 2012) (citing *Sullivan v. DB Invs., Inc.*, 667 F.3d 273, 297 (3d Cir. 2011). The predominance requirement is met where the Plaintiffs' breach of contract and extra-contractual claims present a common question of law with respect to whether Defendants' rot damage coverage was illusory considering the long-term seepage/leakage exclusion.

Superiority requires the Court to "balance, in terms of fairness and efficiency, the merits of a class action against those of alternative available methods of adjudication." *In re Warfarin Sodium*, 391 F.3d at 534 (citation omitted). Rule 23(b)(3) directs the Court to consider the following factors:

> (A) the interest of members of the class in individually controlling the prosecution or defense of separate actions; (B) the extent and nature of any litigation concerning the controversy already commenced by or against members of the class; [and] (C) the desirability or undesirability of concentrating the litigation of the claims in the particular forum . . . .[3]

Fed. R. Civ. P. 23(b)(3). All these factors are satisfied. There are no evident interests favoring individual control. Absent class certification, potential class members would lack an incentive to pursue their individual claims due to the size of their individual damages claims.

Because all the relevant Rule 23(a) and (b) factors are met, the Settlement Class

---

[3]     In the class action settlement context, the Court "need not inquire whether the case, if tried, would present intractable management problems, . . . for the proposal is that there be no trial." *Amchem*, 521 U.S. at 620.

is certified for purposes of settlement approval.

C

"A court must determine that notice was appropriate before evaluating the merits of the settlement itself." *In re Am. Investors Life Ins. Co.*, 263 F.R.D. at 237 (citation omitted).  Notice must be given to potential class members by the best notice practicable under the circumstances for all classes certified under Rule 23(b)(3).  Fed. R. Civ. P. 23(c)(2)(B).

> The notice must clearly and concisely state in plain, easily understood language: (i) the nature of the action; (ii) the definition of the class certified; (iii) the class claims, issues or defenses; (iv) that a class member may enter an appearance through an attorney if the member so desires; (v) that the court will exclude from the class any member who requests exclusion; (vi) the time and manner for requesting exclusion; and (vii) the binding effect of a class judgment on members under Rule 23(c)(3).

*Id.*  The Settlement Administrator emailed and mailed Court-approved notice forms including the required information to Settlement Class Members as described above and ensured that returned notices were re-mailed as needed and to the extent possible.[4] (Final Approval Mem. at 6.)  Plaintiffs have complied with Rule 23's notice provisions.

D

"[A] class action cannot be settled without the approval of the court and a determination that the proposed settlement is 'fair, reasonable and adequate.'" *In re Prudential Ins. Co. Am. Sales Practice Litig. Agent Actions*, 148 F.3d 282, 316 (3d Cir. 1998) (quoting *In re Gen. Motors Corp. Pick-Up Truck Fuel Tank Prods. Liab. Litig.*, 55

---

[4]     At the Final Approval hearing, the Court asked whether COVID-19 had any impact on the notice process.  Settlement Class Counsel assured the Court that Epiq had confidence that its settlement notices were delivered in a timely manner despite the circumstances.  (June 23, 2020 Final Approval Hearing Trans. at 25:9-26:14.).

11

F.3d 768, 785 (3d Cir. 1995)); *see also* Fed. R. Civ. P. 23(e).  Rule 23(e)(2) directs the

Court to consider whether:

> (A) the class representatives and class counsel have adequately represented the class; (B) the proposal was negotiated at arm's length; (C) the relief provided for the class is adequate, taking into account:  (i) the costs, risks, and delay of trial and appeal; (ii) the effectiveness of any proposed method of distributing relief to the class, including the method of processing class-member claims; (iii) the terms of any proposed award of attorney's fees, including timing of payment; and (iv) any agreement required to be identified under Rule 23(e)(3); and (D) the proposal treats class members equitably relative to each other.[5]

Fed. R. Civ. P. 23(e)(2).  "The purpose of Rule 23(e) is to protect the unnamed members

of the class."  *Ehrheart v. Verizon Wireless*, 609 F.3d 590, 593 (3d Cir. 2010); *see also In*

*re Pet Food Prods. Liab. Litig.*, 629 F.3d 333, 349 (3d Cir. 2010) ("Under Rule 23(e),

trial judges bear the important responsibility of protecting absent class members,

which is executed by the court's assuring that the settlement represents adequate

compensation for the release of the class claims.") (citation omitted).

 Class Counsel and the Named Plaintiffs adequately represented the class.  Fed.

R. Civ. P. 23(e)(2)(A).  After the Roses turned to counsel for assistance with their

insurance claim, Class Counsel were able to "develop enough information about the

[litigation] to appreciate sufficiently the value of the claims."  *In re NFL Players*

*Concussion Injury Litig.*, 821 F.3d 410, 439 (3d Cir. 2016).  Although settlement

negotiations began prior to formal discovery, the parties informally exchanged a

---

[5]  These factors are like the *Girsh* factors previously applied to decide whether a class action settlement is fair and reasonable in the Third Circuit.  *See Girsh v. Jepson*, 521 F.2d 153, 157 (3d Cir. 1975.); *see also Hall v. Accolade, Inc.*, No. 17-3423, 2019 WL 3996621, at *2 n.1 (E.D. Pa. Aug. 23, 2019) ("The Girsh factors predate the recent revisions to Rule 23, which now explicitly identifies the factors that courts should apply in scrutinizing proposed class settlements, and the discussion in Girsh substantially overlaps with the factors identified in Rule 23.")

substantial amount of information and data which allowed Class Counsel to evaluate the strengths and weaknesses of Plaintiffs' claims before agreeing on the Settlement's terms.

The Settlement Agreement was negotiated at arm's length.  Fed. R. Civ. P. 23(e)(2)(B).  It is the product of extensive negotiations with experienced counsel on both sides.  Settlement negotiations began in May 2019 and an agreement was not reached until November, after many meetings and calls between the parties and in-person mediation sessions and phone conferences with Magistrate Judge Hey.  "[T]he participation of an independent mediator in settlement negotiations virtually [e]nsures that the negotiations were conducted at arm's length and without collusion between the parties."  *Bellum v. Law Offs. of Frederic I. Weinberg & Assocs., P.C.*, No. 15-2460, 2016 WL 4766079, at *6 (E.D. Pa. Sept. 3. 2016)

The relief the Settlement is expected to provide to Participating Settlement Class Members is adequate when balanced against the cost and risk involved in pursuing a litigated outcome.  Fed. R. Civ. P. 23(e)(2)(C)(i).  Had an agreement not been reached, Defendants would have been required to engage in formal fact discovery, including depositions and the production, extraction and analysis of data from Defendants, raising the prospect of additional litigation arising from the discovery of potential third parties.  The parties might also have been required to litigate dispositive motions.  Defendants maintain there are circumstances under which the long-term seepage/leakage policy exception would be triggered and contend Plaintiffs might not be able to demonstrate that Rot Remediation Coverage was illusory, meaning they or some Class Members might be foreclosed from some or any recovery if litigation were to

proceed.  (*See* Final Approval Mem. at 15.)  In addition, the parties had not begun class

certification discovery or briefing when they reached their Settlement.  In litigating

class certification, Defendants could have argued that each insurance claim would

require an individual trial to determine applicability of Rot Remediation Coverage

provisions, and policy exclusions.  Defendants might also have argued that any

damages determination would require individual adjudication.  There is no guarantee

that the Court would have certified a litigation class.  Instead, the Settlement

Agreement ensures consideration of Settlement Class Members' claims by providing a

mechanism for Policy Period claimants with valid claims to account for the amount and

extent of their claimed rot damage and allowing Statutory Period claimants with valid

claims to recover a fixed amount.  Considering the costs and risks of continued

litigation, the Settlement Agreement provides substantial relief.

The Settlement Agreement also provides for an effective method of distributing

relief to the Settlement Class.  Fed. R. Civ. P. 23(e)(C)(ii).  In considering this factor,

the Court "scrutinize[s] the method of [notice] processing" and "should be alert to

whether the . . . process is unduly demanding."  Fed. R. Civ. P. 23 Advisory Committee

Notes (Dec. 1, 2018.)  The claims process established by the Settlement Agreement and

implemented by Epiq is a fair and reasonable one for assessing and paying class

claimants.  Settlement Class Members with Statutory Period claims were required only

to submit Claim Form B to receive a payment.  Settlement Class Members with Policy

Period Claims for Rot Damage up to $2,499.99 can recover by submitting Claim Form A

without any supporting documentation.  Those with Policy Period Claims for Rot

Damage of $2,500 or more could elect to submit Claim Form A with documentation of

their loss or with no documentation in exchange for a reduced payment.  Because all
Settlement Class Members can recover for their claims without submitting any
documentation of their loss, the claims process is not unduly demanding.

No one has objected to the proposed award of attorneys' fees and costs after
receiving notice of the request and the amounts requested in the notice distributed to
the class.  As is further set forth below, it is reasonable.  Fed. R. Civ. P. 23(e)(2)(C)(iii).

The Settlement Agreement also treats class members equitably relative to each
other.  Fed. R. Civ. P. 23(e)(2)(D).  Because of variability in statutes of limitations for
breach of contract, bad faith and state consumer protection claims across jurisdictions[6],
Settlement Class Members with claims falling within the breach of contract statute of
limitations in their jurisdiction have more robust claims.  Thus, the Settlement was
structured to ensure that Settlement Class Members with Policy Period Claims
received favorable treatment when compared to Settlement Class Members who would
have been subject to statute of limitations defenses if their claims were to proceed to
trial – those with Statutory Claims.  Members with Policy Period Claims were
permitted to document the extent of their claimed damage and receive a payment based
on the extent of their estimated Rot Damage.  Because Statutory Claims would be more
difficult to litigate, they are eligible to recover only a flat $150 payment.

In addition, a low number of opt-outs and objections suggests the Settlement is
fair and reasonable.  *See In re Cendant Corp. Litig.*, 264 F.3d 201, 234-35 (3d Cir. 2001)
(finding that a low number of objectors and opt-outs strongly favors approval of the

---

[6]      The Third Circuit has held that "'variations [in state laws] are irrelevant to certification of a
settlement class' since a settlement would eliminate the principal burden of establishing the
elements of liability under disparate laws." *Sullivan*, 667 F.3d at 303 (quoting *In re Warfarin
Sodium*, 391 F.3d at 529).

settlement).  Only 39 members of the Settlement Class have excluded themselves from the settlement – about one tenth of one percent of the class.  (Final Approval Mem. at 19.)  And only three objections to the settlement were filed with the Court.  (ECF Nos. 54, 55 and 60.)  During the telephonic final approval hearing, one of the objectors, John Rockefeller (ECF No. 54), withdrew his objection.  (June 23, 2020 Final Approval Hearing Trans. at 19:13-20:12.)  The remaining objections do not warrant non-approval of the Settlement.

Objector Salvatore Azzolina contends a $150.00 payment for his Statutory Period claim is insufficient to address his losses.  He says he considered bringing a timely legal action but lacked the resources or experience to do so when his rot damage claim was denied.  (ECF No. 55.)  Class Counsel sent him a letter seeking to discuss his objection.  (Final Approval Mem. at 20.)  His wife called in response to the letter and expressed frustration with Defendants for the denial of the Azzolinas' Rot Damage Claim but ultimately said she understood why their compensation was limited to $150.00 because of their claim's date.  (*Id.*)  The Azzolinas have filed a Claim form B to receive $150.  (*Id.*)  Although Class Counsel reached out to them and told them about the dial-in information for the final approval hearing (*id.*), they did not participate in the call.  Salvatore Azzolina's objection is denied because the Settlement fairly and reasonably accommodates Statutory Period claims for which there might be no other recovery.

Objector Byrde King complains that Defendants denied her claim for rot damage to a shed even though she had Rot Damage coverage.  (ECF No. 60.)  Class counsel spoke to her on June 11, 2020.  (Final Approval Mem. at 21.)  Ms. King said she was never paid for her loss and that she has not yet had the shed repaired.  (*Id.*)  She has

never gotten a damage estimate and did not file a Claim Form A after receiving notice of the settlement. (*Id.*) Class Counsel understands her objection to be that she is unable to value her loss, but under the terms of the Settlement this is her obligation and she can satisfy it with either a free estimate from a contractor or her own approximation of the loss in exchange for a reduced payment. (*Id.* at 22.) Class Counsel provided her with the dial in information for the Final Approval hearing (*id.* at 21), but she did not participate in the call. King's objection is denied because she has not submitted a claim even though the Settlement gives her a way do so.

Rule 23(e)(3) requires settling parties to "file a statement identifying any agreement made in connection with the proposal." The Settlement Agreement is the only agreement in play in this litigation, and Plaintiffs have satisfied this requirement.

Because the necessary Rule 23 factors are met, the Court finally approves the Settlement of Plaintiffs' claims.

## III

Defendants have, subject to court approval, agreed to pay $1,900,000 in attorneys' fees and expenses apart from the relief to be paid to the class. (Agreement ¶ 60.) "In a certified class action, the court may award reasonable attorney's fees . . . that are authorized by law or by the parties' agreement." Fed. R. Civ. P. 23(h). Two calculation methods may be used to determine whether a requested fee award is reasonable: lodestar and percentage-of-recovery. *See In re Gen Motors*, 55 F.3d at 820-21. The lodestar method "uses the number of hours reasonably expended" to determine "an adequate fee irrespective of the monetary value of the final relief achieved for the class." *Id.* at 821. The percentage of recovery method "calculates the percentage of the

total recovery that the proposal would allocate to attorney[']s fees by dividing the amount of the requested fee by the total amount paid out by the defendant[.]" *In re Cendant*, 264 F.3d at 256.  This case does not involve a true common fund because Defendants are not paying the attorneys' fees and costs through the reimbursement fund.  "However, where the reality is that the fund and the fee are paid from the same source—in this case, [Defendants]—the arrangement 'is, for practical purposes, a constructive common fund,' and courts may still apply the percent-of-fund analysis in calculating attorney's fees." *Dewey v. Volkswagen Aktiengesellschaft*, 558 F. App'x 191, 197 (3d Cir. 2014) (quoting *In re Gen. Motors*, 55 F.3d at 820-21).

Factors to consider when determining whether an attorneys' fee award is appropriate using the percentage-of-recovery method include:  (1) the size of the fund and the number of persons who will benefit; (2) the presence or absence of objections to the settlement terms and/or fees requested; (3) the skill and efficiency of the attorneys involved; (4) the complexity of the litigation; (5) the risk of nonpayment; (6) the amount of time devoted by counsel; and (7) awards in similar cases.  *Gunter v. Ridgewood Energy Corp.*, 223 F.3d 190, 195 n.1 (3d Cir. 2000).  These factors "need not be applied in a formulaic way . . . and in certain cases, one factor may outweigh the rest." *Id*. District courts must "engage in robust assessments of the fee award reasonableness factors when evaluating a fee request." *In re Rite Aid Corp. Sec. Litig.*, 396 F.3d 294, 302 (3d Cir. 2005).  Applied here, the factors weigh in favor of granting Class Counsel's requested fee.

Settlement Class Counsel seek fees which would amount to a maximum of seventeen percent of the estimated Settlement value.  (Fee Mem. At 15-16.)  The

Settlement Class included 32,243 potential members, 39 of whom have requested exclusion.  Based on claims data as of the date of the final approval hearing, Settlement Class Counsel estimated that almost 7,000 Settlement Class Members would ultimately recover a payment.  (June 23, 2020 Final Approval Hearing Trans. at 30:19-31:5.) Participating Settlement Class Members with valid claims will each recover between $150 and $3,750.  The Settlement confers a significant benefit considering the size of the Settlement Class.  The first factor favors approval.

The second factor favors approval because no one objected to the fee request after dissemination of the Court-approved notices, which advised Settlement Class Members that Settlement Class Counsel would seek an award of attorney's fees and expenses of up to $1,900,000, to be paid separately by Travelers.  (Fee Mem., ECF No. 53-1 at 16.) Likewise, no objections to the fee were raised at the telephonic final approval hearing.

The third factor also favors approval.  The attorneys who negotiated the Settlement Agreement have substantial experience in class action and collective action litigation and have demonstrated their skill to the Court's satisfaction.

The fourth factor –the complexity and duration of the litigation – weighs in favor of the requested fee award.  No prior reported class action has involved the same theory or facts.  (Fee Mem. at 17.)  Settlement Class Counsel engaged in significant investigation and research before filing this class action.  (*Id.*)  They filed a complaint and an amended complaint and negotiated a protective order governing confidential information Defendants produced.  (Fee Mot., Class Counsel Decl., ECF No. 53-2, at ¶ 30.)  After filing the case, Settlement Class Counsel spent substantial time evaluating the strengths and weaknesses of Plaintiffs' claims before negotiating a settlement.  (Fee

Mem. at 18.)  Mediation took several months including negotiation sessions with Judge

Hey and preparation of settlement proposals and responses.  But for the Settlement,

litigation of the case's remaining issues would require substantial further discovery and

motion practice prior to any trial.

The fifth factor – risk of nonpayment – also supports the requested fee award.

There was a real possibility that Defendants would have been able to defeat some or all

of the claims.  Throughout the litigation, Defendants maintained their right to deny

claims for Rot Damage and raised affirmative defenses to the Complaint in support of

their position.  (*Id.* at 20.)  Defendants would also have opposed class certification had

this case proceeded to trial.  (*Id.*)  Settlement Class Counsel handled this case on a

contingent-fee basis without any guarantee of payment and have not received any

compensation for their efforts to date.  (Fee Mot., Class Counsel Decl., ¶ 34.)  *See*

*O'Keefe v. Mercedes-Benz USA, LLC*, 214 F.R.D. 266, 309 (E.D. Pa. 2003).  ("Any

contingency fee [arrangement] includes a risk of no payment.")

The amount of time spent by counsel, the sixth factor, also supports approval.

Settlement Class Counsel have spent significant time on all aspects of the litigation:

investigating the facts and law related to Plaintiffs' claims; drafting the Complaint and

an Amended Complaint; preparing mediation statements and settlement proposals;

attending meetings and mediation settings; negotiating the details of the Settlement

Agreement; preparing the Preliminary Approval Motion; managing the efforts of the

Settlement Administrator; reviewing the notice documents, the settlement website and

scripts for the settlement telephone number; responding to class members who directly

contacted them or who the Settlement administrator directed to them; communicating

with the named plaintiffs;  responding to settlement objections; preparing the final approval motion and the fee motion; participating in the final approval hearing; and monitoring claims processing and Settlement Administrator's distribution of settlement payments.  Their time was reasonably spent to prepare for this litigation and weighs in favor of the requested fee award.

The percentage requested here – 17% of the Settlement's estimated gross monetary value – is in line with fee awards in other class cases with common fund settlements, supporting approval of the requested fee award.  (Fee Mem. at 23-24.)  In common fund cases, fee awards generally range from 19% to 45% of the settlement fund.  *See In re Cendant*, 243 F.3d at 736 (citation omitted).  The percentage is less than the 30% fee that would be negotiated in a standard contingent fee arrangement.  *See Glaberson v. Comcast Corp.*, No. 03-6604, 2015 WL 5582251, at *14 (E.D. Pa. Sept. 22, 2015).

In addition, the Settlement provides unique relief.  *C.f. Cullen v. Whitman Med. Corp.*, 197 F.R.D. 136, 148 (E.D. Pa. 2000) (approving a fee award where "[t]he complexity of litigating th[e] case was increased because of few similar cases for counsel to rely on as precedent").  It is structured to provide Settlement Class Members with benefits tailored to the circumstances of their individual claims, including when they were made, their insurance coverage details, and the extent of their loss and their proof.  Also, the agreed-upon change in Defendants' practices with respect to claims for Rot Damage benefits all of Defendants' policyholders with Rot Damage coverage, not just Settlement Class Members.

The Third Circuit has "suggested that district courts cross-check the percentage

award at which they arrive against the 'lodestar' award method." *Gunter*, 223 F.3d at
195 n.1. But a lodestar cross-check is "not necessarily determinative." *In re Baby Prod.
Antitrust Litig.,* 708 F.3d 163, 179-80 (3d Cir. 2013); *see also Moore v. GMAC Mortg.,*
No. 07-4296, 2014 WL 12538188, at *2 (E.D. Pa. Sept. 19, 2014) ("The lodestar cross-
check is 'suggested,' but not mandatory."). The Court's mandate is simply to "determine
whether the level of distribution provided to the class by the settlement reflects a
failure of class counsel to represent adequately the interest of the entire class." *In re
Baby Prod.,* 708 F.3d at 179. "[T]he percentage method . . . permits courts to reward
success and penalize failure more directly." *In re Ikon Office Sols., Inc., Sec. Litig.*, 194
F.R.D. 166, 193 (E.D. Pa. 2000). Given the details of the settlement and the absence of
objections to the motion for fees, which "bakes in" Settlement Class Counsel's expenses
(Fee Mot. at 27-28), Settlement Class Counsel's efforts satisfactorily support the
requested award.

## VI

The requested $10,000 incentive payment to the Roses is reasonable. Approving
contribution or incentive awards to class representatives is routine. *See Sullivan*, 667
F.3d at 333 n.65. "The purpose of these payments is to compensate named plaintiffs for
the services they provided and the risks they incurred during the course of class action
litigation, and to reward the public service of contributing to the enforcement of
mandatory laws." *Id.* Since the damage to their house occurred in 2018, the Roses had
no way to predict that Defendants would ultimately settle their claims yet continued to
insure their home with Travelers. They gathered information during the investigation
of potential claims, reviewed and produced documents, met with class counsel, reviewed

the Complaint, and attended mediations.  Absent their participation, there would have been no case, and Settlement Class Members would have had to pursue their Rot Damage Claims alone.  The Court awards the requested service award.

An appropriate Order follows.

BY THE COURT:


 _/s/ Gerald J. Pappert_
GERALD J. PAPPERT, J.